IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **Safari Club International**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14-cv-00670-ABJ |
| v. ) | |
| ) | |
| **S.M.R. Jewell,** in her official capacity as ) | |
| Secretary of the United States Department of ) | |
| Interior, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

## REPLY IN SUPPORT OF FEDERAL DEFENDANTS' CROSS-MOTION TO DISMISS

**INTRODUCTION**

Federal Defendants S.M.R. Jewell, *et al.*, respectfully submit the following Reply in Support of their Cross-Motion to Dismiss. The Complaint filed by Plaintiffs Safari Club International and the National Rifle Association (collectively "Plaintiff")[1] suffers from a number of jurisdictional flaws that require dismissal of their case. The Court lacks jurisdiction to review Plaintiff's claims challenging the U.S. Fish and Wildlife Service's ("Service") April 2014 findings regarding importation of sport-hunted African elephant trophies from Tanzania because Plaintiff has failed to demonstrate standing to bring these claims. Some of Plaintiff's Tanzania claims also are barred by the applicable six-year statute of limitations. The Court also lacks jurisdiction to review Plaintiff's claims challenging the Service's April 2014 enhancement finding for sport-hunted African elephant trophies from Zimbabwe because they are unripe. Some of Plaintiff's Zimbabwe claims also are barred by the applicable six-year statute of limitations and some are moot.[2]

---

[1] After Federal Defendants filed their motion to dismiss, the Complaint was amended to add the National Rifle Association as a party. *See* Am. Compl., ECF No. 13 at ¶ 1. None of the claims were amended. *Compare* Compl. ¶¶ 77-111 *with* Am. Compl. ¶¶ 84-118. Although the Amended Complaint has superseded the original complaint (and Federal Defendants will respond to the Amended Complaint by June 27, 2014 if the Court has not yet addressed the motion to dismiss, *see* Fed. R. Civ. P. 15(a)), Federal Defendants' arguments apply equally to the Amended Complaint, and Plaintiffs have responded to them in the context of the Amended Complaint. *See* Plaintiff's Opposition to Motion to Dismiss ("Pl.'s MTD Opp."), ECF No. 22 at 16-17. Thus Federal Defendants respectfully request that the Court exercise its discretion to consider their Motion to Dismiss addressed to the Amended Complaint, rather than deny the motion as moot. *See*, *e.g.*, *Roller Bearing Co. v. Am. Software*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (explaining that "[w]hen 'a plaintiff amends its complaint while a motion to dismiss is pending,' which happens 'frequently,' the 'court then has a variety of ways in which it may deal with the pending motion [to dismiss], from denying the motion as moot to considering the merits of the motion in light of the amended complaint'"); *Adams v. FedEx Ground Package Sys.*, No. 11-CV-02333-LTB-CBS, 2013 WL 61448 (D. Colo. Jan. 4, 2013); *cf. Gray v. D.C. Pub. Sch.*, 688 F. Supp. 2d 1, 6 (D.D.C. 2010) ("When a plaintiff amends her complaint, it renders a motion to dismiss that complaint moot.") (citations omitted).

[2] Federal Defendants recognize that they are raising some additional jurisdictional arguments for the first time on reply. These new arguments are being made in response to Plaintiff's

For all these reasons, the Court lacks subject-matter jurisdiction to review Plaintiff's claims. Consequently, the Court should dismiss the Amended Complaint.

## ARGUMENT

## I.   PLAINTIFF LACKS STANDING TO CHALLENGE THE SERVICE'S TANZANIA FINDINGS.

Federal Defendants have already shown that Plaintiff lacks standing because it has not demonstrated any imminent injury from the Service's challenged findings given that none of Plaintiff's members has applied for a sport-hunted elephant trophy import permit ("import permit") for Tanzania. Plaintiff has presented no evidence to rebut this conclusion. Plaintiff claims an injury-in-fact based on the Service's "importation ban" for Tanzania. But because Plaintiff's members have not even applied for an import permit, they have not been subject to the alleged "importation ban" and thus they can claim no injury. Moreover, Plaintiff has alleged no concrete intention to apply for such a permit. *See* Plaintiff's Brief in Support of Motion for Preliminary Injunction ("Pl.'s PI Br."), Ex. TT-ZZ, ECF No. 4. Because Plaintiff's members are bystanders to the Tanzania elephant trophy import process, the many cases Plaintiff cites, all of which discuss standing for those who *are currently participating* in a regulatory scheme, are inapposite.

In this Section, we refute Plaintiff's attempt to distinguish the standing cases cited in Federal Defendants' opening brief, respond to Plaintiff's arguments regarding the *Fund for Animals* argali sheep litigation, and explain why Plaintiff's Tanzania claims are not redressable.

---

clarification in its opposition brief that it characterizes some of its claims solely as procedural claims. Because these are jurisdictional issues, they "can never be waived or forfeited." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012). Nevertheless, Federal Defendants would not oppose allowing Plaintiff to file a short surreply limited to these new arguments. *See Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003).

A.    **Plaintiff Has Not Meaningfully Distinguished Federal Defendants'
Cited Cases Demonstrating that Plaintiff Lacks Standing Because
None of its Members Has Applied for an Import Permit.**

To prove an injury-in-fact under Article III Plaintiff must show "an invasion of a legally
protected interest which is (a) concrete and particularized, and (b) actual or imminent, not
conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (internal
citations and quotations omitted). The "imminence" requirement for an injury-in-fact depends on
"the imminence of the [defendants'] application of the challenged provisions of the policy." *Scott
v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 655 n.12 (9th Cir. 2002). To demonstrate standing,
a plaintiff must indicate precisely when he or she intends to "expose *himself* to the injury" that
supports his standing. *See Defenders of Wildlife*, 504 U.S. at 562 & n.2. Here, Plaintiff has failed
to satisfy this standard because it admits that none of its members has applied for a permit and no
member has averred that he intends to apply for a permit in the near future.

Federal Defendants' opening brief cited a number of cases in support of their argument
that Plaintiff's members had to apply for an import permit to demonstrate standing. Plaintiff
dismisses those cases as "rely[ing] exclusively on aspirational harms," and argues that "the
plaintiffs had not similarly conducted themselves in ways that demonstrated their commitments
to the opportunities to which they claimed they had been deprived." Pl.'s MTD Opp. at 9-10.
This characterization does not accurately describe the cases or the standard developed by this
line of precedent, and Plaintiff fails in its attempt to distinguish this body of case law.

For example, in *Scott v. Pasadena*, the Ninth Circuit held that, to establish injury-in-fact
from a challenged discriminatory policy, a plaintiff must provide a specific plan to violate the
challenged law. Part of the necessary "plan" to subject oneself to the challenged policy was a
concrete intent to apply to the challenged system, there, by applying to the school lottery system.
306 F.3d at 657; *see also id.* at 661. Here, Plaintiff's members have not subjected themselves to

the challenged Tanzania findings by applying for an import permit, nor have they announced a concrete intention to do so.

Plaintiff characterizes *Hightower v. City of Boston* as involving a former police officer who "had not applied for any types of firearms licenses, [but] the Court acknowledged the plaintiffs' standing concerning a type of license that she had previously held and that had been revoked in the past." Pl.'s MTD Opp. at 10. *Hightower*, however, was a challenge to the revocation of the plaintiff's Class A gun license. *See* 693 F.3d 61, 69-70 (1st Cir. 2012). The First Circuit found she had standing to challenge the revocation by noting that a license or permit denial is an Article III injury. *Id.* at 70. Directly relevant to Plaintiff's claims here, the First Circuit held that the plaintiff lacked standing to challenge *other* types of gun licenses because "she ha[d] never applied for such a license, been denied one, or had such a license revoked." *Id.* Like Ms. Hightower, Plaintiff's members have never applied for a permit under the challenged findings, nor have they had a permit denied or revoked.

As Plaintiff claims, in the *Parker* litigation, the D.C. Circuit did suggest that there were other, more stringent methods of establishing standing, *cf.* Pl.'s MTD Opp. at 10, but the Court found none of the *Parker* plaintiffs met those more stringent tests. *See Parker v. Dist. of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007), *aff'd sub nom. D.C. v. Heller*, 554 U.S. 570 (2008) (holding that none of the plaintiffs had standing under precedent about preenforcement challenges to statutes that required them to show "a 'special priority' for preventing *these* appellants from violating the gun laws, or a particular interest in punishing *them* for having done so"). The D.C. Circuit therefore denied standing to all the plaintiffs except Mr. Heller, who established standing because his application for a gun registration certificate was denied. *See Parker*, 478 F.3d at 376; *see also Parker v. Dist. of Columbia*, NO. 04-7041, 2007 WL 2892852,

at *1 (D.C. Cir. Sept. 25, 2007) (In *Parker v. Dist. of Columbia* "the only plaintiff we concluded had standing under our precedent was Dick Heller.").

Next, Plaintiff attempts, unsuccessfully, to distinguish *Pedreira v. Kentucky Homes for Baptist Children*, 579 F.3d 722 (6th Cir. 2009) by suggesting that, when the Sixth Circuit held that one of the plaintiffs lacked standing because she had not applied for a job at the defendant, the holding was actually based on the plaintiff's failure to show she had a "concrete investment" in obtaining the job. Pl.'s MTD Opp. at 10. But the Sixth Circuit did not rely on any lack of "investment" (nor could it have: the plaintiff was a social worker who had invested years of education to qualify for such a job, *id.* at 725); it simply noted that, without subjecting herself to the challenged discriminatory policy, the plaintiff lacked standing. *Id.* at 727. The Court so held even though the defendant's "formal and well-publicized policy prohibit[ed] gays and lesbians from employment" and the plaintiff argued that to apply was futile. 579 F.3d at 725.

Finally, Plaintiff characterizes *Warth v. Seldin* as involving only plaintiffs who lacked standing because they failed to show any interest in the property regulated by the defendant. Pl.'s MTD Opp. at 11. In that case, developers who sought to build multi-family housing in Penfield, and residents who could not find homes in Penfield because there was insufficient multi-family housing challenged a purportedly exclusionary zoning ordinance. 422 U.S. 490, 503 (1975). Although the plaintiffs intended to live in Penfield and had taken steps to do so, including undertaking home searches, and suffered hardship because they could not live in Penfield, incurring significant commuting expenses, *id.* at 503 n.13, the Court found that interest insufficient because they were not subject to the discriminatory ordinance as they had not themselves sought to construct low income housing or to live in a particular proposed building. *See id.* at 516 ("The complaint refers to no specific project of any of its members that is currently precluded either by the ordinance or by respondents' action in enforcing it."). The Court likewise

denied standing to trade association plaintiffs even though one of the association's members alleged that it was then "actively attempting to develop moderate income housing in … Penfield." *Id.* at 529 (Brennan, J., dissenting). The Court held that, despite this alleged active interest, the association lacked standing because:

> [t]here is no averment that any member has applied to respondents for a building permit or a variance with respect to any current project. Indeed, there is no indication that respondents have delayed or thwarted any project currently proposed by Home Builders' members, or that any of its members has taken advantage of the remedial processes available under the ordinance.

422 U.S. at 516. For the same reason, despite Plaintiff's alleged harms and inconveniences, like the plaintiffs in *Warth*, it lacks standing because its members have not applied for a permit.

### B.    Plaintiff Fails to Show That Applying for an Import Permit is Futile.

Plaintiff contends that it would be futile to apply for an import permit, because the Service will necessarily deny its members permits on the basis of the "same illegal process" that the Service has been using for years. The standard for futility is whether "following the administrative remedy would be futile *because of certainty of an adverse decision.*" *Freedom Watch v. C.I.A.*, 895 F. Supp. 2d 221, 227 (D.D.C. 2012) (citation omitted). Decisions to grant or deny applications for trophy import permits are made on a case-by-case basis after the Service examines the content of the application. Defs.' Ex. 1 at ¶¶ 13, 21. Although Plaintiff appears to believe it has information to demonstrate that allowing sport hunting is "a significant if not the primary source of funding for African elephant conservation," and, therefore sport-hunting trophy importation should be allowed, Plaintiff's Reply to Motion for Preliminary Injunction ("Pl.'s PI Reply"), ECF No. 14, at 21, it now contends that there is no information it could provide that would convince the Service of these points, such that the Service's permit decision would necessarily be adverse. Pl.'s MTD Opp. at 15-16. However, as described in our motion to dismiss, the Service has repeatedly explained that it has left the door open for future permit

applications to convince it to change its mind. *See* Pl.'s Ex. I, ECF No. 4, at 1-2; Defendants' Motion to Dismiss ("Defs.' MTD"), ECF No. 11, at 7. Plaintiff's members therefore retain the ability to apply for an import permit and, in that context are free to provide any information they think applicable to the Service's decision-making process. Plaintiff has not shown that submitting a future permit application would be futile, sufficient to support standing as to its Tanzania claims.

Indeed, similar plaintiffs interested in sport hunting African elephants have raised challenges to permit denials based on arguments similar to those raised here, suggesting that the Service is well-suited to address these arguments in the first instance before involving this Court. For this reason, we argued in our Motion to Dismiss that Plaintiff's Tanzania claims are not final agency action and are unripe. *See* Defs.' MTD at 13 n.4; *see also Marcum v. Salazar*, 694 F.3d 123, 129 (D.C. Cir. 2012) (dismissing plaintiffs' challenge to African elephant import permit denials as unripe because plaintiffs had not exhausted all of the levels of administrative review before filing suit). In *Marcum v. Salazar*, the D.C. Circuit dismissed a case challenging sport-hunted elephant trophy import permit denials because the plaintiffs had not completed the administrative appeal process until after the appeal was filed. *Id.* at 129. It would be odd indeed if Plaintiff was able to pursue this litigation now when it has not even *begun* the administrative process of applying for a permit. It cannot be that, by simply avoiding the administrative system, Plaintiff may have its day in Court now when, had it initiated the import permit process its claims would be unripe.

Plaintiff contends that "[t]he causes of action that [it] raises in this suit would not be resolved by a challenge to an individual permit denial." Pl.'s PI Reply at 1. It also suggests that Plaintiff would not have an opportunity to meaningfully participate in the decision-making process related to the "import ban." *Id.* These claims are not necessarily true, and they do not

excuse Plaintiff's complete failure to engage in the trophy import permitting process. Moreover, in a lawsuit challenging an elephant trophy import permit denial for Mozambique, a D.C. district court addressed and rejected arguments echoed in Plaintiff's Tanzania-related arguments. *See Franks v. Salazar*, 816 F. Supp. 2d 49 (D.D.C. 2011).[3]

First, Plaintiff contends that notice and comment was required before the Service advised the public that it was, at the time, unable to make a non-detriment finding or positive enhancement finding on a country-wide basis for Tanzania. *See* Pl.'s PI Br. at 38-39. The *Franks* court rejected a similar argument in the context of a challenge to the Service's denial of a group of permit applications for Mozambique determinations which were made on a country-wide basis. *Franks*, 816 F. Supp. 2d at 59 (holding that the Service was not required to undertake notice and comment before it addressed a group of permit applications for Mozambique because permit denials are an adjudication, not rulemaking). The Court reasoned:

> "[t]hese decisions do not bind future permit applicants and do not even bar the specific plaintiffs in this case from filing new applications. Thus, they simply are not "rules" under the APA, since they are not intended to have "future effect." 5 U.S.C. § 551(4). Nor did the concerns articulated in the permit denial letters become "rules" simply because the Service relied on them in reaching its decisions.

*See* 816 F. Supp. 2d at 59. Likewise, Plaintiff's Count V challenges the enhancement finding required under the Service's special rule, and a similar challenge has been rejected by the *Franks*

---

[3] As discussed further below, Plaintiff also incorrectly argues that "[a]fter the implementation of the importation bans, individuals who want to import elephants from Tanzania now bear the burden themselves of producing new information" to satisfy the non-detriment and enhancement findings criteria. *See* Pl.'s PI Reply at 3; *see also* Pl.'s MTD Opp. at 15. Permit applicants have always borne this burden of proof. *See, e.g.*, *Franks*, 816 F. Supp. 2d at 61 ("Importantly, the permit applicant bears the burden of providing sufficient information to support a non-detriment finding. [50 C.F.R.] § 23.61(c)."). More broadly, of course, there is no right to an Appendix I elephant trophy import permit, which is why an individual must apply to the Service to receive one. And it appears that U.S. hunters have been submitting applications with additional information for years. *See, e.g.*, *Franks*, 816 F. Supp. 2d at 65 (discussing the hundreds of pages of expert testimony submitted to the Service in support of an application for a sport-hunted elephant trophy import permit).

court. *See Franks*, 816 F. Supp. 2d at 64 (rejecting the plaintiff's argument "that the 'enhancement' rule is contrary to [the Convention on International Trade in Endangered Species ("CITES")] Resolution 2.11, or that Resolution 2.11 somehow 'repealed' [the special rule]" because the special rule was properly promulgated under the Endangered Species Act ("ESA") for protection of a threatened species); *compare* Pl.'s PI Br. at 39-40 (arguing under Count V that retaining the enhancement requirement after CITES Resolution 2.11 removed it for Appendix I species means that 50 C.F.R. § 17.40(e)(3)(iii) contravenes the ESA). Finally, Plaintiff's third claim with respect to Tanzania, Count VI, addresses whether the Service applied an incorrect standard to its non-detriment finding for Tanzania, and arguments about the standards the Service applies in its non-detriment findings have also been addressed in the context of a challenge to a permit denial. *Cf. Franks*, 816 F. Supp. 2d at 62-64 (rejecting argument challenging the Service's non-detriment finding, including arguments suggesting that the Service considered the wrong factors in reaching this conclusion and explaining the non-detriment standard for import permits for African elephants).

In short, Plaintiff's members are clearly able to apply for trophy import permits for Tanzania and to exhaust arguments just like the ones Plaintiff is raising in this litigation through the permitting process, allowing for a fuller development of the issues in this litigation before they reach the Court. It is not futile for Plaintiff's members to apply for an import permit.

## C.     Plaintiff's Additional Standing Cases Are Inapposite.

Plaintiff next argues that it has suffered harm because its members are subject to new uncertainty and new administrative burdens. Pl.'s MTD Opp. at 11-15. However, in other cases where courts have found plaintiffs to lack standing for failure to submit themselves to the challenged policy or administrative scheme, the plaintiffs have certainly suffered burdens more substantial than an "identifiable trifle" of inconvenience, *see* Pl.'s MTD Opp. at 14-15, and, as

discussed above in Section A, "demonstrated their commitments to the opportunities to which they claimed they had been deprived." *Id.* at 10. Those courts dismissed the plaintiffs' cases for lack of standing despite those harms and sincere behavior because they were simply not cognizable as an injury-in-fact sufficient to support Article III standing.

For example, in *Jackson-Bey v. Hanslmaier*, the Second Circuit reaffirmed the principle that to establish standing, a plaintiff must "submit to the challenged policy." *See* 115 F.3d 1091, 1096 (2d Cir. 1997). In *Jackson-Bey*, the plaintiff, a member of an Islamic sect, was prohibited by prison staff from attending his father's funeral in the clothing prescribed by his religion, so he declined to attend and thereby failed to fulfill a religious obligation to perform a final prayer at the service. *Id.* at 1094. He believed that, were he to have attended the funeral improperly dressed he would have "disgrace[d] his father's memory." *See id.* The Court found that these obvious harms were not cognizable as an injury-in-fact because the plaintiff had failed to petition the prison to change his religious registration, a petition which, if granted, would have permitted the prison to allow him to wear the appropriate clothing. *Id.* at 1096. The Court listed other cases in which plaintiffs who suffered prejudice and injustices were unable to sue because, for example, they had not applied for the relevant handicap parking permits or submitted applications to segregated private schools at issue. *See id.* (collecting cases). The Second Circuit also rejected the plaintiff's argument that he declined to submit the petition because it would have been futile even though, at the relevant time, the prison's directives and policy manual did not recognize his Islamic sect. *Id.* at 1097.

Thus, to establish standing, Plaintiff must establish that its members suffered harm because the challenged agency action will imminently be applied to them. For this reason, the standing cases cited by Plaintiff, Pl.'s MTD Opp. at 15, are distinguishable because those plaintiffs or their members were regulated by the applicable administrative schemes, subject to

adverse agency orders, or sought and held permits and licenses. In *Iowa League of Cities v. EPA*, for example, members of the plaintiff's organization "are currently operating under permits" and would have to comply with what the Court deemed were new, mandatory rules that affected their wastewater treatment facilities. *See* 711 F.3d 844, 870 (8th Cir. 2013). Likewise, in *Lutheran Church-Missouri Synod v. FCC*, the plaintiff applied to renew its radio license and, in resolving a petition filed by a third party to deny the application, the FCC issued an order finding it in violation of regulations. *See* 141 F.3d 344, 349 (D.C. Cir. 1998). The plaintiff-Church challenged both the FCC's order and the regulations as applied through the order. *Id.* And, in *Investment Co. Inst. v. U.S. Commodity Futures Trading Comm'n*, business association plaintiffs had standing because they represented companies whose trading activity was regulated by the Commission after it eliminated regulatory exclusions. 891 F. Supp. 2d 162, 166-68, 185 (D.D.C. 2012), *aff'd,* 720 F.3d 370 (D.C. Cir. 2013); *see also Idaho Power Co. v. FERC*, 312 F.3d 454, 460 (D.C. Cir. 2002) (standing for a power company that was subject to a FERC order); *N.Y. Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 325 (2d Cir. 2003) ("*NYPIRG*") (plaintiff had standing to challenge adverse order and administrative decision of the EPA); *Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 70 F.3d 1345, 1349 (D.C. Cir. 1995) (finding standing for mining operators to challenge rule that allowed the Department to issue notices of violations because the rule subjected them to costly, inconsistent regulation by state and federal authorities); *cf. Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cnty.*, 325 F.3d 879, 882-83 (7th Cir. 2003) (addressing ripeness of a business association's suit and finding that the association had suffered hardship because other parties had already refused to enter into contracts or delayed payment on existing contracts with the association until it complied with the challenged new ordinance).

Because Plaintiff's cases involve entities that are directly participating in the regulatory scheme at issue, whether through direct regulation, licensing schemes, or as the subject of

adverse agency orders, they are distinguishable. Although Plaintiff's members may have, in practice, experienced inconveniences or believe they will incur costs, those inconveniences and costs are not cognizable because they have not availed themselves of the regulatory scheme such that they have a justiciable injury.[4]

### D.    The *Fund for Animals* Case is Distinguishable and Does Not Control the Question of Standing Here.

Plaintiff argues that *Fund for Animals v. Norton* is materially indistinguishable from this case and therefore dictates a finding that Plaintiff has standing. *See* Pl.'s MTD Opp. at 5-8.[5] That litigation involved a challenge to a withdrawal of a rulemaking under the ESA to redesignate the

---

[4] Plaintiff also argues that its members are injured because the Service has created new uncertainties in the permitting process. Pl.'s MTD Opp. at 11-15 (citing, *inter alia*, *NYPIRG*). In addition to the arguments in text, this argument fails because the "uncertainty" is created by Plaintiff. Plaintiff states that before April 2014, its members could "rely" on the positive non-detriment and enhancement findings for Tanzania, *id.* at 13, but now they suffer "insecurities" based on doubts about whether they will be able to import their elephant trophies. *Id.* at 14. To reconcile *NYPIRG* with the Supreme Court's more recent holding in *Clapper v. Amnesty Int'l USA*, the Second Circuit distinguished *NYPIRG* by explaining that while an "increased health-related uncertainty" is sufficient, a "highly attenuated chain of possibilities," including uncertainty about possible government conduct, is insufficient. *See Natural Res. Def. Council v. FDA*, 710 F.3d 71, 83 (2d Cir. 2013), *as amended* (Mar. 21, 2013) (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013)). Here, Plaintiff's members are facing uncertainty about possible government conduct because they have chosen to avoid applying for a sport-hunted trophy permit. Plaintiff wrongly suggests that prior to April 4, 2014, "Safari Club members had no reason to feel uncertain about their ability to import their legally hunted elephants or that the [Service] would make a different [non-detriment finding] or enhancement finding regarding elephant hunting in Tanzania." Pl.'s MTD Opp. at 13. Their confidence was unfounded. Nothing in the ESA regulations relating to CITES or to sport-hunted African elephants guarantees a particular finding regarding import trophies. Plaintiff's members are still free to apply for an import permit and, as always, bear the burden to support their application.

[5] Plaintiff responds to arguments made in Federal Defendants' preliminary injunction opposition regarding irreparable harm. *See* Pl.'s MTD Opp. at 5-7. The burden to establish irreparable harm is higher than standing and these arguments, placed in the wrong brief, do not rebut Federal Defendants' arguments on irreparable harm. *See In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) (to show irreparable harm "[a] plaintiff must do more than merely allege ... harm sufficient to establish standing") (citations omitted). As explained in text, they also do not respond to Federal Defendants' standing arguments.

threatened argali sheep as an endangered species and a challenge to the Service's issuance of import permits for sheep trophies. *See Fund for Animals v. Norton*, 295 F. Supp. 2d 1, 6 (D.D.C. 2003), *dismissed, Fund for Animals v. Norton*, NO. 03-5373, 2004 WL 1562891 (D.C. Cir. July 9, 2004). The D.C. Circuit, addressing an appeal of an intervention decision, held that the Natural Resources Department of Mongolia's Ministry of Nature and Environment ("NRD") had standing because "sheep that Mongolia regards as its national property and natural resource plainly are [the challenged action's] subject." *Fund for Animals v. Norton*, 322 F.3d 728, 734 (D.C. Cir. 2003). In contrast, here Plaintiff is challenging the Service's issuance of findings that were used to deny other hunters' import permits for Tanzania, but which have not been applied to Plaintiff or its members, because they have not applied for permits to import elephant trophies from Tanzania.[6] The *Fund for Animals* plaintiffs requested a ban on importation of sport-hunted sheep in their Complaint. Had they succeeded in receiving all the relief they requested, the Court would have banned the Service from issuing import permits for argali sheep or, at minimum, if the sheep were listed as endangered, import permits would have proceeded under a different regulatory scheme than the permitting scheme for threatened sheep. This is unlike the situation here, where the Service has stated numerous times that it is still processing import permits for sport-hunted elephant trophies from Tanzania. Thus, to subject themselves to the challenged action, Plaintiff's members must actually apply for a permit. Standing on the sidelines of the permitting process, Plaintiff and its members have incurred no injury-in-fact, nor is any injury

---

[6] As noted, Plaintiff Safari Club International has not substantiated its claim for organizational standing. *See* Defs.' PI Opp. at 25 n.10. Likewise, in the Amended Complaint, Plaintiff has not adequately explained how the NRA has organizational standing or how any purported injuries arising from the Service's actions are "germane to the [NRA's purpose]," in defending hunting as a shooting sport and as a method for fostering conservation such that they can demonstrate associational standing. *See* Am. Compl. at ¶ 19. The Service has not reduced opportunities for hunting. The NRA has therefore also failed to establish organizational standing or associational standing on behalf of its members. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977) (test for associational standing); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (test for organizational standing).

imminent, as they state no intention of applying for a permit. In the recent *Clapper v. Amnesty Int'l USA* opinion, the Supreme Court reaffirmed that plaintiffs had to show that the challenged government action was "certainly impending." *See* Pl.'s MTD Opp. at 8-9. Here, Plaintiff has simply not shown that its members are subject to the challenged government action and therefore lack standing.

### E.     Plaintiff is Unable to Demonstrate Redressability Even if it Has Alleged a Proper Injury-in-Fact.

Plaintiff is, in part, seeking Court intervention to enjoin what it calls the "importation ban." Pl.'s MTD Opp. at 16, 18-19. However, the Service has not banned the importation of sport-hunted elephant trophies and has certainly not done so for Tanzania. All it has done is conclude, in April 2014, with the information available to the Service at that time, that it was unable to make positive enhancement and non-detriment findings for Tanzania and therefore denied several applications for import permits. It has not prohibited anyone from applying for an import permit, or from supplying information and argumentation to support that permit application. Thus, as there is no importation ban, Plaintiff is unable to enjoin it.

Additionally, Plaintiff suggests that the Court could provide effective injunctive relief by ordering the Service to restore the "importation status quo" that existed before December 2013 for Tanzania. *See* Pl.'s MTD Opp. at 18-19. Plaintiff contends, by analogy to cases involving a court-ordered remand without vacatur, the Court could order the Service to "reinstate" the 2013 non-detriment and enhancement findings for Tanzanian elephants. *Id.* The difference between a remand without vacatur, however, and what Plaintiff asks for is that, unlike a rule, which is operative when challenged, the 2013 findings *already* expired on their own terms, so no finding exists for the Service to apply. *See also* Defs.' MTD at 14-15. Unlike a vacated rule, which is automatically replaced by the prior rule, there are no findings to spring back into place. Thus, what Plaintiff is requesting is, instead, a Court order that the Service issue positive non-detriment

and enhancement findings for 2014 for Tanzania, presumably on the basis of facts found by the Court, not by the Service. This is not a proper request because the discretion to make the findings is statutorily committed to the Service, not to Article III courts. *See* Defs.' MTD Opp. at 14. Thus, Plaintiff has failed to show that its injuries can be redressed through this lawsuit.

And, even if Plaintiff could request that the Court make findings statutorily delegated to the Service, Plaintiff's members still will not be able to import sport-hunted trophies without applying for an import permit. *See* Defs' MTD at 13-15; *cf. Baca v. King*, 92 F.3d 1031, 1037 (10th Cir. 1996) (holding that the plaintiff lacked standing because the Court was unable to order the agency to issue grazing permits).

Plaintiff also claims that its injuries are redressable because it challenges purportedly illegal components of the decision-making process for the challenged permit findings. Pl.'s MTD Opp. at 16-17. Thus, Plaintiff claims that its injuries would be redressed if the Service simply applied the correct non-detriment standard and no longer required an enhancement finding. *Id.* But, given that Plaintiff has not applied for an import permit, any declaration that the Service erred in the procedures used to make the findings would also not redress its injuries because, regardless of what the Service concludes on remand, the Plaintiff's members would still be in the same position they are today—hunters without import permits.

If, however, Plaintiff is indeed seeking only declaratory relief, i.e., a declaration that the Service violated the law in requiring an enhancement finding as a predicate to import permits, that there should have been notice and comment on the Tanzania findings, and that the Service has applied an incorrect non-detriment standard, all of these claims are time barred, as discussed further below in the Zimbabwe argument section.[7] Statutes of limitation are jurisdictional in the

---

[7] As explained further in the Zimbabwe argument section, Plaintiff has now clarified the procedural nature of its claims in its Opposition to the Motion to Dismiss and has highlighted the applicability of these additional jurisdictional bars to its lawsuit. Should the Court not act on the

D.C. Circuit and, therefore, Plaintiff's late filing of its claims is another reason the Court lacks subject matter jurisdiction. As to Count IV, the Service has been issuing findings for Tanzania without notice and comment for at least 20 years. *Cf.* Pl.'s MTD Reply at 14 (describing 20 years of consistent non-detriment and enhancement findings for Tanzania); *see also Proposed Rule, Revision of Regulations for the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES)*, 71 Fed. Reg. 20,168, 20,194-95 (Apr. 19, 2006) (rejecting commenters' request for public comment on non-detriment findings). And, as to Count V, as explained further below, the special rule for African elephants has consistently included an enhancement finding in evaluating applications for ESA permits, and the Service retained that requirement even after the CITES parties amended Conference Resolution 2.11 in 1994 and removed the enhancement of survival finding for hunting trophies for Appendix I species. *Cf.* Am. Compl. at ¶ 109. Relevant to Plaintiff's Count VI, the Service's current approach to making non-detriment findings has been defined by regulation and consistently applied to African elephants since August 23, 2007. *See* 72 Fed. Reg. 48,402, 48,482. Thus, even if Plaintiff has standing to raise them, all of Plaintiff's Tanzania-related claims are time barred.

For all of the foregoing reasons, Plaintiff lacks standing to bring Counts IV through VI and therefore, the Court must dismiss them. Additionally, the claims are time barred.

## II.   PLAINTIFF'S CHALLENGE TO THE ZIMBABWE ENHANCEMENT FINDING IS UNRIPE.

Federal Defendants demonstrated in their motion to dismiss that Plaintiff's claims challenging the Service's April 2014 enhancement finding for Zimbabwe (Counts I-III) are prudentially unripe for judicial review.[8] Defs.' MTD at 15-20. These claims are not fit for review

---

pending motion to dismiss before the deadline to answer Plaintiff's Amended Complaint, Federal Defendants will reassert these arguments in the context of a motion to dismiss that Complaint.

[8] Federal Defendants have also demonstrated that Plaintiff's Zimbabwe claims are constitutionally unripe since none of Plaintiff's declarants has indicated that he is currently ready

at this time because the April finding was an interim decision based primarily on a lack of information and the Service is working toward making a final finding by July based on new information it has received after issuance of the April finding. Plaintiff will not suffer hardship by waiting to challenge the final finding because its members can choose to continue to hunt elephants in Zimbabwe and will be allowed to import any trophies taken after April 4, 2014 if the Service is able to make a positive enhancement finding.

### A.    Plaintiff's Zimbabwe Claims Are Not Fit for Judicial Decision.

The fitness prong of prudential ripeness requires the Court to consider whether Plaintiff's claims challenging the April 2014 Zimbabwe enhancement finding "would benefit from further factual development" and "whether judicial intervention would inappropriately interfere with further administrative action." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998). Plaintiff contends that some of its claims challenging the Zimbabwe enhancement finding are fit for review because those claims challenge the Service's decision-making processes as opposed to the substance of the finding. By contending that only some of its Zimbabwe claims are procedural, Plaintiff concedes that its other Zimbabwe claims are substantively challenging the merits of the Service's interim finding. For all the reasons already provided in Federal Defendants' Motion to Dismiss, these claims are not fit for review at this time. Since the substantive claims are unripe, the Court can and should exercise its discretion to also dismiss the procedural claims as unripe. Moreover, Plaintiff's clarification that some of its claims are

---

to import an elephant trophy from Zimbabwe taken after April 4, 2014. Defs.' MTD at 15 n.6. In support of this argument, Federal Defendants cited, in part, to statements in the declaration of Timothy Van Norman regarding the amount of time it can take before an elephant trophy is ready for importation. *Id.* Plaintiff claims that Mr. Van Norman's statements are "irrelevant to the issue of Zimbabwe elephant importation" for a number of reasons. Pl.'s PI Reply at 6 n.3; *see also* Pl.'s MTD Opp. at 29 n.16. Setting aside the relevance of Mr. Van Norman's statements, neither of Plaintiff's two declarants who hunted elephants in Zimbabwe after April 4, 2014 has stated that he is currently ready to import his elephant trophy. That these declarants "wish to import their trophies," Pl.'s Reply Br. at 6 n.3, does not show that the trophies are ready for importation now.

procedural highlights the fact that these claims are subject to dismissal for the additional reason that they are barred by the applicable statute of limitations. Lastly, part of Count II is now moot. For all of these reasons, the Court should dismiss all of Plaintiff's Zimbabwe claims.

Plaintiff argues that at least some of its Zimbabwe claims are procedural in nature, and that those claims are fit for review because there is no indication that the Service will change its procedures in making its final finding. Pl.'s MTD Opp. at 25. Plaintiff does not explain which of its three counts challenging the Zimbabwe finding are procedural and which are not. Instead, Plaintiff simply says that its "challenge to Federal Defendants' illegal decisions 1) to require an enhancement of survival finding for the importation of Zimbabwe's elephants; and 2) not to subject the importation determination to [Administrative Procedure Act ("APA")] notice and comment procedures before finalizing that decision are presently fit and ripe for review." Pl.'s MTD Opp. at 25. From this statement, it appears that Plaintiff contends that part of Count II (paragraph 94, alleging a failure to provide notice and comment pursuant to the APA) and Count III (alleging that the Service improperly retained the enhancement requirement in the special rule without notice and comment after a similar requirement was dropped from CITES and Zimbabwe's elephants were moved from Appendix I to Appendix II) are procedural and fit for review.

By characterizing part of Count II and Count III as procedural, Plaintiff implicitly concedes that Count I is a substantive challenge to the interim Zimbabwe enhancement finding. For all the reasons already provided, this count is not fit for review because the finding is an interim suspension of imports of elephant trophies from Zimbabwe.[2] The Service explained that

---

[2]   In Plaintiff's Preliminary Injunction Reply brief, Plaintiff argued that the Service's interim enhancement finding is a final agency action. ECF No. 14 at 6-10. Plaintiff has dropped this argument from its Opposition to the Motion to Dismiss. For this reason, and because the D.C. Circuit does not consider the final agency action requirement jurisdictional, *see Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006), Federal Defendants do not address the final agency action

it lacked sufficient data to make a positive finding, but the Service has since gathered additional data on which it will make a final enhancement finding for Zimbabwe by July.[10] If the Service is able to make a positive final finding, judicial review of Count I will be unnecessary. If the Service is not able to make a positive final finding, the Court will benefit from deciding the issues in a more concrete setting.

Since at least one of its Zimbabwe claims is a substantive claim that is not fit for review, the Court can and should still dismiss Plaintiff's procedural claims challenging the Zimbabwe finding as unripe because "judicial economy favors considering all challenges to the [finding], both substantive and procedural, in one proceeding." *Nat'l Ass'n of Regulatory Util. Comm'rs v. U.S. Dep't of Energy*, 851 F.2d 1424, 1430 (D.C. Cir. 1988). Plaintiff appears to acknowledge that the Court has discretion to dismiss its related procedural claims when it notes that if the Court agrees that "some of Safari Club's claims might not yet be 'fit' for review, that does not deprive the Court of its jurisdiction to review Safari Club's other related claims." Pl.'s MTD Opp. at 25 n.12. The cases Plaintiff cites are distinguishable and do not support partial review of Plaintiff's procedural claims in this case. In contrast to the situation in those cases, here the

---

argument herein. However, as noted, Federal Defendants have reserved their right to provide argument on final agency action should this case proceed to the merits. Defs.' MTD at 2 n.2.

[10] Plaintiff mistakenly contends that the Service has conceded that having information from Zimbabwe is necessary for the agency to make an enhancement finding. Pl.'s MTD Opp. at 23-24. In support of its contention, Plaintiff points to a statement in the Service's May 12, 2014 Federal Register notice that "[t]he Service has requested the information *necessary* to make a final decision from the Government of Zimbabwe." *Id.* (quoting 79 Fed. Reg. 26,986, 26,987). Plaintiff has misconstrued this statement. As is clear from the context and other surrounding statements, the Service's intent was to state that it had requested information from Zimbabwe with which it might make a positive finding. Because the ESA special rule for African elephants requires a positive enhancement finding as a condition of importation, the Service can legitimately suspend imports where it lacks sufficient information with which to make a positive enhancement finding. In other words, the Service needs information from Zimbabwe in order to make a positive enhancement finding, not a negative one (though the agency may still be unable to make a positive finding even with information from Zimbabwe).

Service is undertaking a substantive review of its decision that could impact all of the Zimbabwe claims by making judicial review unnecessary. Moreover, the agency's final decision is scheduled to be completed in the next month, well before the Court would even have time to review the merits of Plaintiff's procedural claims.[11]

Even if the Court determines not to dismiss Plaintiff's procedural claims as unripe, there is another jurisdictional reason to dismiss these claims. Plaintiff's clarification that it views the part of Count II alleging a violation of the APA's notice and comment requirement and Count III as procedural highlight that these claims are time barred. Any action pursuant to the APA is subject to the limitations period established in 28 U.S.C. § 2401(a), which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." *P & V. Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1023 (D.C. Cir. 2008). "The right of action first accrues on the date of the final agency action." *Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004). The D.C. Circuit has consistently held that § 2401(a) is jurisdictional. *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 218 (D.C. Cir. 2013) ("The court lacks subject matter jurisdiction to hear a claim barred by section 2401(a).") (citing *Spannaus v. DOJ*, 824 F.2d 52, 56-57 (D.C. Cir. 1987)).

Here, the ability to challenge the Service's decisions to require an enhancement of survival finding in the special rule and to not provide notice and comment for enhancement findings expired in 2004 and 2005, respectively. The Service added the enhancement

---

[11] Indeed, the Court could also dismiss these claims as prudentially moot. Prudential mootness addresses "not the power to grant relief but the court's discretion in the exercise of that power." *Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980). In some circumstances, a controversy, though not moot in the Article III sense, is "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (quoting *Chamber of Commerce*, 627 F.2d at 291). Here, for the reasons provided, it would be prudent for the Court to "stay its hand" and dismiss all of Plaintiff's Zimbabwe claims.

requirement to the special rule for African elephants in 1992. 57 Fed. Reg. 35,473, 35,485 (Aug. 10, 1992). At that time, all African elephants were listed on CITES Appendix I and the parties to CITES required that an enhancement of survival determination be made by the importing country for species listed on Appendix I. In 1994, the parties to CITES amended Conf. Res. 2.11 and removed the enhancement of survival finding requirement from the resolution. In 1998, the Service adopted the decision of the parties to CITES to transfer African elephants in Zimbabwe to Appendix II, so even if the parties to CITES had not removed the enhancement of survival requirement, it would not have applied to elephants from Zimbabwe any longer. 63 Fed. Reg. 63,210 (Nov. 12, 1998). The Service did not amend the ESA special rule after 1992 to remove the enhancement requirement or explain why it was retaining that requirement in the special rule despite the change under CITES. Thus, Plaintiff had six years from 1998 at the latest (and arguably from 1992 or 1994) to challenge the Service's decision to require an enhancement of survival finding for African elephants from Zimbabwe. Plaintiff's failure to bring such a challenge before now means Count III is time barred. *NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 196 (D.C. Cir. 1987) ("A petitioner's contention that a regulation suffers from some *procedural* infirmity, such as an agency's unjustified refusal to allow affected parties to comment on a rule before issuing it in final form, will not be heard outside of the statutory limitations period."). For the same reasons, Plaintiff's Count IV for Tanzania accrued in 1994 and has been time barred since 2000.

The Service first issued an enhancement finding for Zimbabwe in 1997 and for Tanzania in 1997. 62 Fed. Reg. 44,627 (Aug. 22, 1997); Exhibit 4. The Service did not provide notice of a proposed finding in the Federal Register, nor did the Service solicit or respond to comments before implementing its decision. Instead, just as it did recently, the Service simply published a notice in the Federal Register of the Zimbabwe finding and simply issued the Tanzania finding

without publishing it in the Federal Register. If Plaintiff believed that the Service was required to go through a notice and comment process with respect to its enhancement findings for Zimbabwe and Tanzania, it could and should have challenged the Service's decision not to do so within the six-year limitations period after those decisions. *JEM Broad. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) ("the failure to provide notice and comment is a ground for complaint that is or should be fully known to all interested parties at the time the rules are promulgated").[12] Plaintiff's failure to do so bars its ability to challenge the Service's identical decision not to provide notice and comment for its April enhancement findings. *NLRB Union*, 834 F.2d at 196.

Furthermore, part of Count II is moot. In addition to alleging that the Service failed to provide notice and an opportunity to comment pursuant to the APA, Count II alleges that the Service failed to comply with its 1997 notice announcing that the positive enhancement finding for Zimbabwe "would 'remain in effect until the Service finds, based on new information, that the conditions of the special rule are no longer met and has published a notice of any change in the Federal Register.'" Am. Compl. ¶ 92 (quoting 62 Fed. Reg. 44,627); *see also id.* ¶ 93 (alleging that the Service's failure to publish a Federal Register notice announcing the April 4 decision was arbitrary and capricious, not in accordance with law, and an abuse of discretion). These parts of Count II are moot because the Service published a notice in the Federal Register announcing the interim April 4 finding on May 12, 2014 and because the Service has collected new data with which it will make a final enhancement finding. Defs.'s MTD Ex. 3 (79 Fed. Reg. 26,986). There is no longer any relief the Court can provide Plaintiff for these parts of Count II.

---

[12] Although Federal Defendants do not agree that the Service's enhancement findings are "rules," the principle enunciated in the *JEM Broad.* case applies equally here, as Plaintiff has indicated that it has long been aware of the Service's enhancement findings. *See, e.g.*, Pl.'s PI Br. at 5 (stating that before April 2014 the Service "never changed or showed signs of changing its long-held position that the sport-hunting of elephants in Zimbabwe and Tanzania enhanced the survival of the species.").

Consequently, the Court should dismiss these parts of Count II as moot.[13] *Conservation Force v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (courts lack jurisdiction to decide a case that becomes moot because the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome).

### B.      Plaintiff Will Not Suffer Hardship if the Court Withholds Consideration of the Zimbabwe Claims.

Where, as here, there are strong "institutional interests in the deferral of review," Plaintiff must demonstrate that postponement of review will impose a hardship on it that is "immediate and significant." *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 427 (D.C. Cir. 2007). Plaintiff argues that this is the "wrong standard to assess Safari Club's potential hardship" because some of its claims are procedural and so there is no question about the fitness of these claims. Pl.'s MTD Opp. at 27. The problem with this argument is that, even if Plaintiff's procedural claims do not have to meet the "immediate and significant" hardship standard, the same is not true of Plaintiff's substantive claims. Plaintiff fails to address the "immediate and significant" standard, asserting only that it has shown sufficient hardship by demonstrating Article III standing. By failing to address whether it will suffer "immediate and significant" hardship if the Court defers review of its substantive claims Plaintiff essentially concedes that it has not met the standard.

Plaintiff claims hardship to its hunter members based on their inability to import their successfully hunted elephant trophies. Pl.'s MTD Opp. at 28. With respect to those hunters that have already taken an elephant after April 4, 2014, however, none has asserted that his trophy is

---

[13] Plaintiff incorrectly argues that it "has already prevailed on these two claims and will seek attorneys' fees and costs accordingly." Pl.'s MTD Opp. at 26 n.13. The Supreme Court has firmly rejected the "catalyst" theory as a basis for an award of attorneys' fees under fee-shifting statutes, such as the Equal Access to Justice Act, 28 U.S.C. § 2412, that require a party to "prevail" in litigation. *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

imminently ready for importation. Thus, these hunters will suffer no hardship by having to wait the short amount of time the Service requires to complete its final finding, which potentially could allow them to import their trophies. With respect to the other hunters that have yet to take an elephant, Plaintiff argues that these hunters are harmed by the uncertainty of not knowing whether they will be able to import any elephant trophy. Pl.'s MTD Opp. at 29. If these hunters proceed with their hunt, Plaintiff claims their enjoyment will be diminished, and if they cancel their trips or the elephant portion of their hunts, they "are greatly harmed because they could not wait to see whether Federal Defendants will revise their importation ban decision." Pl.'s MTD Opp. at 30. Plaintiff argues that such harms are sufficient for standing and thus also demonstrate sufficient hardship for ripeness purposes. *Id.* However, this argument is based on Plaintiff's false premise that it need not show "imminent and significant" hardship. Any such hardship does not rise to the level of "significant" because these hunters can go on their hunts, will know in another month whether they will be able to import any trophies, and can challenge the final finding if it continues to be negative.

Plaintiff next asserts hardship to hunters "whose hunts have lessened in economic value as well as those whose hunting businesses are suffering as a result of the loss in the economic value of those hunts." Pl.'s MTD Opp. at 31. Plaintiff argues that the D.C. Circuit "has acknowledged standing based on economic loss that undermines conservation." *Id.* (citing *Fund for Animals v. Norton*, 322 F.3d at 733). Again, Plaintiff's argument is based on its incorrect premise that it must merely show that it has standing to demonstrate hardship for ripeness purposes. However, as established above, the standard is actually "imminent and significant" hardship. In addition, Plaintiff has not demonstrated that elephant conservation in Zimbabwe will be undermined as a result of the Service's interim enhancement finding. To that end, Plaintiff contends that the Court is required to take the statements from its declarations as true and "must

conclude that the money generated by U.S. elephant hunters in Zimbabwe helps to combat elephant poaching and that even a small decrease in these funds will undermine anti-poaching efforts and will therefore harm elephant conservation." Pl.'s MTD Opp. at 33. Although Plaintiff is correct that the Court must accept as true factual allegations in the Amended Complaint and its supporting materials for the purposes of deciding a motion to dismiss, speculative allegations are not entitled to an assumption of truth. *Mead v. Holder*, 766 F. Supp. 2d 16, 38 n.13 (D.D.C. 2011) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."). As demonstrated already, Plaintiff's declarants have provided only speculation, not facts, regarding the impact of the Service's April 2014 enhancement finding on elephant conservation in Zimbabwe. Defs.' MTD at 20. Consequently, the Court need not accept such allegations as true and should find that Plaintiff has not met its burden to demonstrate sufficient hardship based on such allegations.

In sum, Plaintiff's substantive Zimbabwe claim (Count I) should be dismissed because it is concededly not fit for review and Plaintiff has not demonstrated that it will suffer "imminent and significant" hardship if judicial review is delayed. Plaintiff's procedural Zimbabwe claims (part of Count II and Count III) can also be dismissed as unripe or prudentially moot. Alternatively, these claims should be dismissed as time barred. The remainder of Count II is subject to dismissal as moot.

## **CONCLUSION**

For all the foregoing reasons, as well as the reasons provided in Federal Defendants' Motion to Dismiss, the Court lacks subject matter jurisdiction over Plaintiff's claims and therefore should dismiss this case.

Dated: June 5, 2014

Respectfully submitted,

SAM HIRSCH,
Acting Assistant Attorney General
SETH M. BARSKY, Chief
KRISTEN L. GUSTAFSON, Assistant Chief

_____/s/ Meredith L. Flax_____
MEREDITH L. FLAX, Senior Trial Attorney
(D.C. Bar No. 468016)
CHRISTINE HILL, Trial Attorney
(D.C. Bar No. 461048)
ANDREA GELATT, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 305-0404
Fax: (202) 305-0275
meredith.flax@usdoj.gov

*Counsel for Federal Defendants*

Of Counsel:
Holly Wheeler
Russell Husen
U.S. Department of the Interior
Office of the Solicitor
Washington, D.C.