# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAFARI CLUB INTERNATIONAL | ) | |
| and | ) | |
| NATIONAL RIFLE ASSOCIATION OF | ) | |
| AMERICA | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civ. No. 14-cv-00670 (ABJ) |
| SALLY M. R. JEWELL, in her official | ) | |
| capacity as Secretary of the U.S. | ) | |
| Department of the Interior; | ) | |
| U.S. DEPARTMENT OF THE INTERIOR, | ) | |
| an agency of the United States; | ) | |
| DANIEL ASHE, in his official capacity as | ) | |
| Director of the U.S. Fish and Wildlife Service; and | ) | |
| U.S. FISH AND WILDLIFE SERVICE, | ) | |
| an agency of the United States | ) | |
| | ) | |
| Defendants. | ) | |

**SAFARI CLUB INTERNATIONAL AND NATIONAL RIFLE ASSOCIATION OF AMERICA'S (1) REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE A SECOND AMENDED AND SUPPLEMENTED COMPLAINT AND (2) OPPOSITION TO FEDERAL DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 3

     A.    SCI/NRA's Claims Concerning the Tanzania Importation Ban Challenge Final
           Agency Action and State a Viable Cause of Action .................................................... 3

           1.    Standard of Review ....................................................................................... 3

           2.    The Tanzania Importation Ban Qualifies as Final Agency Action ............. 4

                  a.    The Tanzania Ban Marked the Consummation of Federal
                        Defendants' Decision-Making Process and Qualifies as a
                        Binding Norm ............................................................................... 5

                  b.    The Tanzania Importation Ban Determines the Rights and
                        Obligations of Those Who Seek to Import Sport Hunted
                        Elephants ...................................................................................... 8

                  c.    The Existence of a Permit Process Does Not Negate the
                        Finality of the Import Ban Decision ............................................. 9

                  d.    The Tanzania Ban Is Having a Direct Effect on the
                        Day-to-Day Businesses of SCI/NRA Members Who Do
                        Not Want or Require Permits ....................................................... 11

                  e.    Federal Defendants Have Made it Futile for Hunter/Importers to
                        Attempt to Exhaust Administrative Remedies Applicable to
                        Obtaining Importation Permits .................................................... 12

     B.    SCI/NRA's Claims Against the April 4 Importation Ban for Zimbabwe Are
           Viable and Not Moot ............................................................................................... 16

            1.    Federal Defendants Bear a Heavy Burden to Prove Mootness and the
                 Court Must Assume that SCI/NRA Will Prevail on the Merits of Their
                 Legal Claims .............................................................................................. 17

            2.    Federal Defendants Lack Authority to Implement Decisions With
                 Retroactive Impact, So the April 4 Decision Continues to Govern the
                 Importation of Elephants Hunted Before the July 31 Importation Ban
                 Went Into Effect ......................................................................................... 19

            3.    Federal Defendants Have Not Proven that the April 4 Illegal Conduct
                 Will Not Recur and, Even if Moot, SCI/NRA's Zimbabwe Claims
                 Are Capable of Repetition Yet Will Evade Review ................................... 24

III.     CONCLUSION ............................................................................................................ 27

I.      INTRODUCTION

In one way, this case is about how the arbitrary actions of the federal government have harmed elephant conservation and the U.S. hunters who are among those who do the most for elephant conservation.  In other ways, it is about a federal agency taking drastic actions without any public input and striving in court to avoid all judicial review of those actions.  In this brief, Plaintiffs Safari Club International and the National Rifle Association of America ("SCI/NRA") seek to prevent those harms to elephant conservation and to defend the justiciability of their challenges to the government's drastic actions.

On April 4, 2014, Defendants Sally M. R. Jewell *et al.* ("Federal Defendants"), without warning or public input, abruptly terminated the importation of sport-hunted elephants from Tanzania and Zimbabwe.  SCI/NRA promptly sued to challenge those importation bans.  Federal Defendants filed multiple motions to dismiss SCI/NRA's claims and to limit SCI/NRA's ability to seek judicial review of their challenges.

In their latest motion, Federal Defendants claim that this Court cannot consider SCI/NRA's challenges to the Tanzania ban until SCI/NRA members unsuccessfully apply for permits and then exhaust all administrative appeals.  Federal Defendants' defenses fail because although those who apply for permits *could* seek administrative review, the importation ban decision is itself final agency action and does not require administrative review as a prerequisite to judicial consideration.  In addition, SCI/NRA members harmed by the importation ban decisions include individuals whose injuries do not arise from the inability to obtain permits for the importation of elephants.  Finally, Federal Defendants have made administrative review futile by establishing impossible standards for obtaining importation permits.

When SCI/NRA challenged Federal Defendants' original April 4, 2014 decision for Zimbabwe, Federal Defendants attacked the ripeness of those claims, arguing that Federal Defendants *might* render a new decision after analyzing information they had belatedly sought from Zimbabwe.  Now that they have confirmed the ban for Zimbabwe by making a new importation ban decision and by publishing that decision in a Federal Register notice, Federal Defendants argue that what was previously unripe has become moot.

This attempt to avoid judicial review fails because Federal Defendants cannot meet their heavy burden to establish the mootness of the April 4, 2014 Zimbabwe decision.  Because Federal Defendants lack authority to implement the new decision with retroactive effect, the April 4, 2014 decision continues to govern the importation of elephants that were hunted while that decision was in place.  Moreover, even if challenges to that decision are moot, the illegalities of the April 4, Zimbabwe decision are capable of repetition yet would evade review.

Federal Defendants do not, in their Supplemental Motion to Dismiss and Partial Opposition to Motion to Amend/Correct ("Supp. MTD") (Dkt. 37), seek to prevent SCI/NRA from adding to their existing Amended Complaint challenges to the July 31, 2014 decision to ban elephant importation from Zimbabwe.[1]  In addition, SCI/NRA's claims challenging the April 4, 2014 Tanzania and Zimbabwe ban decisions all remain viable.

This Court should exercise its discretion to grant SCI/NRA leave to amend and supplement its existing Amended Complaint to both add the new claims and present the latest

---

[1] The July importation ban decision was not published in the Federal Register until July 31, 2014.  According to the commitment Federal Defendants published in the Federal Register in 1997, the pre-existing finding would "remain in effect until the Service finds, based on new information, that the conditions of the special rule are no longer met and has published a notice of any change in the Federal Register."  62 Fed. Reg. 44627, 44633 (Aug. 22, 1997).  For this reason, SCI/NRA will refer to Federal Defendants' most recent importation ban decision for Zimbabwe as the "July 31, 2014 decision."

amended versions of SCI/NRA's challenges to the April 4, 2014 importation ban decisions for

Tanzania and Zimbabwe.[2]  The Court can then cleanly and efficiently address all of Federal

Defendants' alleged grounds for dismissal in light of the latest articulation of SCI/NRA's

claims.[3]  However, Federal Defendants should not prevail as they cannot support any of their

varied grounds for dismissal.

For all these reasons, this Court should exercise its discretion to grant SCI/NRA's

Motion for Leave to File a Second Amended and Supplemented Complaint ("Mot. To Amend")

(Dkt. 34), deny Federal Defendants' motions to dismiss, and expeditiously resolve this litigation

in SCI/NRA's favor.

## II.    ARGUMENT

### A.    SCI/NRA's Claims Concerning the Tanzania Importation Ban Challenge Final Agency Action and State a Viable Cause of Action

#### 1.    Standard of Review

In their latest challenge to SCI/NRA's claims concerning the Tanzania importation ban,

Federal Defendants allege that the Tanzania decision does not constitute final agency action and

that consequently SCI/NRA fail to state a claim.  SCI/NRA's burden to overcome that challenge

is relatively minimal.  Rules applicable to notice pleadings are "not meant to impose a great

---

[2] Under Fed. R. Civ. P. 15(a), "[t]he court should freely give leave when justice so requires." "The grant or denial of an opportunity to amend is within the discretion of the District Court …." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "When a plaintiff amends its complaint while a motion to dismiss is pending, which happens frequently, the court then has a variety of ways in which it may deal with the pending motion [to dismiss], from denying the motion as moot to considering the merits of the motion in light of the amended complaint." *Roller Bearing Co. of Am. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Ct. 2008).  SCI/NRA agree that the pending motion to dismiss would apply to their Second Amended and Supplemented Complaint should the Court adopt the second approach.

[3] Federal Defendants appear to agree that the Court could take this approach.  Supp. MTD at 2 n.1 ("this Supplemental Motion to Dismiss applies equally to the proposed Second Amended Complaint, should the Court allow Plaintiffs to further amend their complaint.")

burden upon a plaintiff." *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 347 (2005).  The Court

must "treat the complaint's factual allegations as true ... and must grant plaintiff 'the benefit of

all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.,* 216

F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States,* 617 F.2d 605, 608 (D.C. Cir.

1979)) (internal citation omitted).  As long as the allegations of the complaint are sufficient to

raise the right to relief "above the speculative level," plaintiffs can defeat a motion for failure to

state a claim even if "recovery is very remote and unlikely."  *Bell Atlantic Corp. v. Twombly,*

550 U.S. 544, 555, 556 (2007) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).[4]

### 2.    The Tanzania Importation Ban Qualifies as Final Agency Action

Federal Defendants' April 4, 2014 decision to ban importation of elephants from

Tanzania constitutes final agency action for at least three reasons.  First, the importation ban

determination qualifies as a binding norm that dictates the requisite threshold of information that

SCI/NRA members have become obligated to provide to obtain importation permits.  Second,

SCI/NRA members who do not intend to import elephants or apply for permits have been

directly harmed by the importation ban.  And third, participation in and/or exhaustion of the

administrative process would be futile.

Federal Defendants properly recognize that the question of finality is not jurisdictional.

_____

[4] Federal Defendants selectively cite statements from *Ashcroft v. Iqbal* to suggest that
SCI/NRA's Amended Complaint does not offer sufficient factual allegations to survive their
motion to dismiss.  Supp. MTD at 4, *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In *Iqbal*,
the Court recognized plaintiffs' relatively minimal burden to overcome a motion to dismiss for
failure to state a claim.  *Id.*  Nevertheless, the court dismissed the Iqbal plaintiffs' complaint as it
failed to provide sufficient factual allegations to demonstrate the plausibility of their success.
*See id* at 681.  Unlike the complaint in *Iqbal*, SCI/NRA's detailed pleadings, containing in excess
of 100 paragraphs, describe the factual bases of SCI/NRA's claims and do not succumb to the
same failings that resulted in the dismissal in *Iqbal*.  SCI/NRA have provided sufficient facts
concerning the statutory, regulatory and self-imposed obligations that Federal Defendants
violated in their decision-making process.

Instead the issue of finality relates to whether plaintiffs allege a cause of action. *Trudeau v. FTC,* 456 F.3d 178, 184-85 (D.C. Cir. 2006). To be final and reviewable, agency action must satisfy two criteria. First, it must "mark the 'consummation' of the agency's decisionmaking process" and "must not be of a merely tentative or interlocutory nature." *Center for Auto Safety v. National Highway Traffic Safety Admin.*, 452 F.3d 798, 806 (D.C. Cir. 2006), *quoting Bennett v. Spear,* 520 U.S. 154, 177–78 (1997). To determine finality, courts look to see whether the challenged agency action established a "binding norm" as opposed to an "unreviewable statement of policy." *Id.* (*quoting Wilderness Soc'y v. Norton,* 434 F.3d 584, 595 (D.C. Cir. 2006)). Second, the agency's action "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* A core question a court must consider is whether the result of the agency's decision-making "will directly affect the parties." *Franklin v. Massachusetts,* 505 U.S. 788, 797 (1992). An agency's action is final if it is "'definitive'" and has a "'direct and immediate ... effect on the day-to-day business'" of the party challenging it. *FTC v. Standard Oil Co.,* 449 U.S. 232, 239 (1980) (citations omitted).

> **a.    The Tanzania Ban Marked the Consummation of Federal Defendants' Decision-Making Process and Qualifies as a Binding Norm**

Federal Defendants' importation ban decision was the product of final findings made by two separate divisions of the U.S. Fish and Wildlife Service ("FWS"). Amended Complaint, ¶50 (Dkt. 13). On February 21, 2014, the Scientific Authority of the FWS finalized their decision not to issue a non-detriment finding for elephant trophy importation from Tanzania, and on March 27, 2014, the Management Authority of the FWS finalized their finding that the importation of sport-hunting trophies from Tanzania was not likely to enhance the survival of the species.

*Id.* These types of findings have served as the basis of Federal Defendants' two decades-long practice of consistently approving the importation of sport-hunted elephants taken in Tanzania.

Based on these two new FWS findings, Federal Defendants "suspended" the importation of elephants from Tanzania. The decision was the culmination of their decision-making, which effectively reversed almost 20 years of a consistent approach to elephant importation, based on positive determinations that the hunting of elephants in Tanzania enhanced the survival of the species and that the importation was not detrimental to species survival. Now that they have banned the importation, Federal Defendants have not demonstrated any affirmative efforts to reverse or revise their decision. Federal Defendants have not announced that they are actively engaged in any conduct designed to collect data to refute or revise their existing decisions or to re-examine these decisions for 2014. All that Federal Defendants have agreed to do is passively accept additional data. On the FWS website, Federal Defendants state merely:

> The decision to suspend the import of sport-hunted trophies from Tanzania and Zimbabwe applies to elephants taken on or after April 4, 2014. The Service will reevaluate this suspension for calendar year 2015 or upon receipt of new information that demonstrates an improved situation for elephants in these countries.

Service Suspends Import of Elephant Trophies from Tanzania and Zimbabwe, http://www.fws. gov/news/ShowNews.cfm?ID=2E6FF2A2-E10F-82BC-DAE08807810E3C6B, *last visited* Sept. 5, 2014.

The mere fact that Federal Defendants could, at some point in the future, revise their two determinations about the importation of elephants from Tanzania – if and when they receive the information they have tasked hunters with producing – does not undermine the finality of the April 4, 2014 importation ban. Finality exists even if the agency's decision is subject to future change. "[A]ll laws are subject to change . . . . The fact that a law may be altered in the future

has nothing to do with whether it is subject to judicial review at the moment." *Appalachian Power Co. v. EPA,* 208 F.3d 1015, 1022 (D.C. Cir. 2000) (EPA Guidance document concerning state permit programs under the Clean Air Act qualified as final agency action); *see also Sackett v. EPA,* —— U.S. ——, 132 S.Ct. 1367, 1372 (2012) ("The mere possibility that an agency might reconsider ... does not suffice to make an otherwise final agency action nonfinal.").

In addition, the importation ban qualifies as a "binding norm."  From at least 1993 until April 3, 2014, Federal Defendants made positive enhancement of survival and non-detriment findings for elephants hunted in and imported from Tanzania.  60 Fed. Reg. 12969, 12969-70 (Mar. 9, 1995).  For that reason, prior to April 4, 2014, a permit applicant could rely on the information already within Federal Defendants' possession for the enhancement of survival and non-detriment determinations that serve as prerequisites to the issuance of import permits.  To satisfy these two aspects of the permit process between 1993 and April 3, 2014, the individual permit applicant did not have to submit additional information to reverse pre-existing negative findings about whether the take of the elephant enhanced the survival of the species and whether the importation would not be detrimental to the species' survival.  On April 4, 2014, everything changed.  In making the April 4, 2014 determination, Federal Defendants, for the first time in approximately two decades, decided that the information they had within their possession did not fulfill their unspecified criteria for enhancement of survival and non-detriment findings.  As of April 4, 2014, Federal Defendants shifted the obligation to produce this information to each individual permit applicant.  Now the individual hunter/importer must overcome established negative findings and supply – as discussed below – very specific information that is not currently in existence, let alone obtainable by individual hunters from the United States.

By setting a new standard for the amount and type of information that hunters/importers must submit for the purpose of obtaining a permit, Federal Defendants have established a new binding norm.  Federal Defendants have made clear that, without such additional information, they will not issue an importation permit.  It matters not that Federal Defendants refuse to acknowledge the binding nature of their decision:

> [W]e have also recognized that an agency's other pronouncements can, as a practical matter, have a binding effect . . . .  If an agency acts as if a document issued at headquarters is controlling in the field, if it treats the document in the same manner as it treats a legislative rule, if it bases enforcement actions on the policies or interpretations formulated in the document, if it leads private parties or State permitting authorities to believe that it will declare permits invalid unless they comply with the terms of the document, then the agency's document is for all practical purposes "binding." (citations omitted)

*Appalachian Power Co.,* 208 F.3d at 1021.  Although Federal Defendants deny the decision's finality, Federal Defendants have not suggested that SCI/NRA members, applicants for importation permits, and/or the federal personnel responsible for issuing importation permits may ignore or disregard the April 4, 2014 decision in their conduct regarding the importation of elephants from Tanzania.  Federal Defendants' decision that they will not make enhancement of survival and non-detriment findings binds all interested parties, as does the decision that no elephants will be imported until additional information (of a very specific nature) is submitted.

> **b.    The Tanzania Importation Ban Determines the Rights and Obligations of Those Who Seek to Import Sport Hunted Elephants**

As explained above, Federal Defendants' decision dictates the rights and obligations of those who wish to import elephants from Tanzania, long before they attempt to submit a permit application.  The importation ban decision increases the amount and nature of information that hunter/importers will need to produce to have Federal Defendants seriously consider their applications.  Without that additional information, hunter/importers will have no chance to

successfully import their legally hunted elephants.

Federal Defendants incorrectly insist that the Tanzania importation ban cannot be final because hunters retain the opportunity to obtain permits by providing additional information to persuade Federal Defendants to reverse the ban. As discussed in detail above, for the first time in two decades, Federal Defendants have imposed on hunter/importers the obligation to provide data to reverse pre-existing negative decisions for Tanzania concerning enhancement of survival caused by the hunting of elephants and non-detriment to survival caused by the importation. In suggesting that the importation opportunity has not been completely closed, Federal Defendants ignore the fact that their April 4, 2014 decision established a binding norm that dictates new requirements for the amount and type of information a hunter will need to provide in order to obtain an import permit. The April 4, 2014 ban decision set a new and higher informational threshold for permit applicants.

> c. **The Existence of a Permit Process Does Not Negate the Finality of the Import Ban Decision**

Federal Defendants' final agency action on importation of elephants from Tanzania is not contingent on the denial of individual permit applications. Contrary to Federal Defendants' arguments, the existence of an administrative permit process does not dictate when final decision-making occurs. Decisions that govern how that process will be applied also qualify as final agency action. Federal Defendants have already established the standards they will apply to all permit applications.

Just as the Environmental Protection Agency attempted to do in *National Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34 (D.D.C. 2011), Federal Defendants seek to use the existence of a permit process as a means of promoting an overly restrictive understanding of the phrase "final agency action." *Id*. at 42.

The federal defendants' view of what amounts to finality is too narrow, as it is possible for an agency to take final agency actions during a permit assessment process prior to actually determining whether to grant or deny an application for a permit.

*Id.* at 44.[5] (Court held that agency interim guidance memoranda governing the permit process qualified as final agency action, regardless of the fact that permits had yet to be issued or denied); *see also National Treasury Employees Union v. Federal Labor Relations Authority*, 745 F.3d 1219, 1222 (D.C. Cir. 2014), *quoting Role Models Am., Inc. v. White,* 317 F.3d 327, 331 (D.C. Cir. 2003) (a challenged agency action "need not be the last administrative action contemplated by the statutory scheme" to qualify as "final" for the purpose of judicial review).

The U.S. Supreme Court has not adopted the rigid approach to finality that Federal Defendants ask this Court to apply.  Instead, the Supreme Court has directed the judiciary to address the finality requirement in a "flexible" and "pragmatic" way.  *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149-50 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 106-07 (1977); *see also Ciba-Geigy Corp. v. U.S.E.P.A.*, 801 F.2d 430, 435-36 (D.C. Cir. 1986).  The *Abbott Labs* court also looked to whether the agency's action was "definitive" and whether it imposed a "direct effect on the day-to-day business" of those who challenged the action.  387 U.S. at 151-52.

The practical effect of the Tanzania importation ban was to increase the burden on those who seek to hunt in Tanzania and import their legally taken elephants.  For almost two decades,

---

[5] In *National Mining*, the EPA subsequently enacted a Final Guidance memoranda, which "account[ed] for and respond[ed] to key concerns" of claimants, replacing the interim guidance and making claims challenging it as moot. *Nat'l Mining Ass'n v. Jackson*, 880 F.Supp.2d 119, 127 (D.D.C. 2012) *rev'd by Nat'l Mining Ass'n v. McCarthy*, ---F.3d--- (D.C. Cir. 2014), 2014 WL 3377245. The Court of Appeals found the replacement guidance a non-binding agency action as it could be rejected by the ultimate decision making authority. *Nat'l Mining Ass'n v. McCarthy*, at *6.

Federal Defendants did not impose on hunter/importers the individual burden of providing evidence to overcome negative enhancement and non-detriment findings.  Since April 4, 2014, the hunter/importers bear the insurmountable informational burden to persuade Federal Defendants to make a finding the government has already essentially decided it cannot.  Viewed pragmatically, the importation ban is sufficiently final for the purpose of this Court's review.

> **d.   The Tanzania Ban Is Having a Direct Effect on the Day-to-Day Businesses of SCI/NRA Members Who Do Not Want or Require Permits**

In asserting that finality is contingent on the completion of the permit application process, Federal Defendants ignore the binding impact the importation ban is having on SCI/NRA members with professional hunting operations in Tanzania.  Amended Complaint ¶¶13, 56.  The consequences to these professional hunters' interests arise not from an inability to import elephants, but instead from Federal Defendants' purposeful efforts to persuade U.S. hunters to cancel their Tanzania elephant hunts.  These SCI/NRA members are suffering due to cancellations, decreased bookings, loss of revenue and reduced ability to engage in anti-poaching and other elephant conservation measures.  The importation ban decision was directed at these professional hunters, as it was Federal Defendants' intent to persuade hunters to cancel the hunts they had booked with these outfitters and guides.

> **I have already purchased a hunt in Tanzania or Zimbabwe. How do I get my money back?**
> We encourage you to contact your hunting outfitter to discuss options. While you can still participate in a hunt in 2014, you currently are not able to import the trophy. In addition, given the current conservation concerns for elephants in Tanzania and Zimbabwe, *we strongly advise that you reconsider taking part in an elephant hunt in either of these countries at this time.*

FWS Q&A Webpage, http://www.fws.gov/international/pdf/questions-and-answers-suspension-of-elephant-sport-hunted-trophies.pdf *last visited* Sept. 5, 2014 (second emphasis added).

As the cancellations and a decrease in the number of hunters travelling to Tanzania for elephant hunting are the express purposes of the importation ban and because Federal Defendants publicly encouraged cancellations in the explanation they provided for their decision, the importation bans, and not the hunters' logical reactions to them, are the direct cause of harm to SCI/NRA members who run hunting operations in Tanzania.  Resort to an administrative process would not even be possible as they have no interest in obtaining import permits and could not appeal what they have not been denied.

> **e.      Federal Defendants Have Made it Futile for Hunter/Importers to Attempt to Exhaust Administrative Remedies Applicable to Obtaining Importation Permits**

Regardless of the number of applications submitted or the amount of currently available information that SCI/NRA members might attempt to provide in support of their applications, their efforts will not result in the issuance of importation permits for elephants hunted in Tanzania in 2014.  Any attempt to exhaust the administrative remedies applicable to the importation permit process would certainly be unsuccessful.  Evidence from the Administrative Record demonstrates that resort to the administrative process would be futile.  *Cutler v. Hayes*, 818 F.2d 879, 891-92 (D.C. Cir. 1987) ("[T]he exhaustion requirement may be waived by the agency, or disregarded by the court when application of the doctrine would be futile.")

The exhaustion doctrine is "an exercise of judicial discretion."  *Foundation on Economic Trends v. Heckler*, 756 F.2d 143, 156 (D.C. Cir. 1985), *citing Action for Children's Television v. FCC,* 564 F.2d 458, 469 (D.C. Cir. 1977) (Court excused plaintiffs from exhausting administrative remedies based on finding that plaintiffs' concern about environmental review of deliberate release of genetically engineered organisms was of "great public importance.").  The Court may disregard it in "'exceptional cases or particular circumstances * * * where injustice

might otherwise result,'" *Id.* (*quoting Hormel v. Helvering,* 312 U.S. 552, 557 (1941)).

To consider whether resort to administrative remedies would be futile, this Court must examine Federal Defendants' own statements about what they require of hunter/importers to prompt a reversal of the existing binding decision for Tanzania. Federal Defendants seek very particular information that does not presently exist and will not exist until Tanzania modifies its elephant management practices and/or conducts lengthy surveys and studies that reveal specific results.

On April 4, 2014, Bryan Arroyo, Assistant Director of the U.S. Fish and Wildlife Service for International Affairs, sent a letter to Tanzania's Minister of Natural Resources and Tourism explaining Federal Defendants' decision to ban importation of Tanzania elephants. After expressing grave concern about the escalation of elephant poaching throughout Tanzania, Assistant Director Arroyo issued Federal Defendants' ultimatum to Tanzania's wildlife authority:

> In order to allow elephant trophies to be imported in the future, documented total offtake from the elephant population (i.e., all sources of elephant deaths, including poaching, sport-hunting, problem animal control, and natural mortality) would need to be below the elephant's annual population growth rate, ***requiring the poaching rate to be significantly reduced.***

Exhibit 1 (emphasis added).[6] Mr. Arroyo's letter revealed that Federal Defendants are not simply seeking additional information, but are instead requiring Tanzania to modify its management approach in order to reduce the number of elephants poached.

The importation ban that SCI/NRA challenge in this litigation currently applies only to elephants hunted in 2014.[7] Individuals who have hunted and have plans to hunt elephants in

---

[6] SCI/NRA previously introduced this document as an exhibit attached to their Request for Reconsideration of the Court's Order Granting the Federal Defendants' Motion for Relief from LCvR 7(n) and Cross-Motion to Compel Production of the Administrative Record. Dkt. 28.

2014 will not be able to provide the information demanded by Federal Defendants until Tanzania

satisfies Federal Defendants' requirements concerning elephant management.  If the required

information does not exist for elephants taken in 2014, and will not exist until Tanzania has

demonstrable results from a change in its management plan, then participation in the permit

process without such information is certainly futile.

    Ignoring the insurmountable hurdle Federal Defendants have imposed on

hunter/importers, Federal Defendants incorrectly try to rely on the ruling in *Marcum v. Salazar,*

694 F.3d 123 (D.C. Cir. 2012) to support their contention that SCI/NRA must exhaust the futile

permit process before bringing a challenge to this court.  Many differences separate *Marcum*

from this case.  Although both cases involve the importation of elephant populations listed as

threatened under the Endangered Species Act and classified as Appendix I species pursuant to

the Conference on International Trade of Endangered Species (commonly known as "CITES"),

the similarities end there.  In the instant matter, Federal Defendants reversed a consistent, two

decade-long position for Tanzania that the importation of elephants is not detrimental to the

survival of the species and that the take of those elephants enhances their survival.  By contrast,

in *Marcum*, Federal Defendants had not previously made such determinations or allowed

importation of Zambia's elephants.  Consequently, the plaintiffs in *Marcum* had no importation

history or past practice upon which to base their expectations of importing their elephants and

suffered no reversal of opportunities when Federal Defendants refused to approve their permit

applications.  Moreover, nothing in the *Marcum* case suggests that Federal Defendants had made

the permit process futile by communicating an absolute refusal to allow importation until Zambia

---

[7] For Tanzania, Federal Defendants make their findings on an annual basis.  Even if in 2015
Tanzania produces population data demonstrating a different ratio of elephant mortality to
elephant population growth, this will not change the population status of elephants in 2014 and
would not change the futility of applying for a permit to import an elephant hunted in 2014.

changed its management practices.  In fact, Federal Defendants were still awaiting a response to their request for additional information from Zambia about their elephants when the *Marcum* plaintiffs filed suit.  694 F.3d at 125. Thus, it was possible that the Marcum plaintiffs' applications might have been granted.

Perhaps the greatest contrast between the instant matter and *Marcum* is the fact that the plaintiffs in *Marcum* had initiated the administrative process by applying for permits.  Marcum's challenge was to the denial of those permit applications.  In the instant litigation, SCI/NRA members are not challenging the denial of an importation permit application.  Instead, they are challenging the changes in burdens imposed upon them as well as the process that Federal Defendants have and will apply to the granting of importation permits.  Similar differences distinguish *Conservation Force v. Salazar*. 919 F. Supp. 2d 85 (D.D.C. 2013).  In *Conservation Force*, the plaintiffs also challenged the denial of their import permit applications and the only claim that remained before court was the allegation that the permit denials were arbitrary and capricious.  *Id.* at 88.[8]

---

[8] Another case that Federal Defendants cite, *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920 (10th Cir. 1994), is not applicable to the instant case for two main reasons.  First, the plaintiffs in *Coosewoon* sued to force the federal government to make a final decision – to cancel an oil and gas lease; whereas, SCI/NRA have sued to challenge a final decision already made by Federal Defendants – the Tanzania importation ban.  Second, the statute at issue in *Coosewoon* applied specifically to Title 25 ("Indians") of the Code of Federal Regulations.  Agency decisions made under Title 25 have a prescribed administrative appeal requirement that must be fulfilled before the decisions are considered final.  *See* 25 C.F.R. § 2.6(a); *Coosewoon*, 25 F.3d at 924-25.  Federal Defendants also cite to 50 C.F.R § 13.29, a regulation that applies only to those who have applied for importation permits.  SCI/NRA are not challenging permit denials.  Section 13.29 might apply if SCI/NRA were challenging permit denials prior to exhausting the administrative appeal process, but that is not the basis of SCI/NRA's challenges.

For all these reasons, SCI/NRA challenge final agency actions and need not exhaust any administrative process.  The Court should allow SCI/NRA to amend their complaint to restate their Tanzania claims and should deny the Federal Defendants' motion to dismiss those claims.

**B.     SCI/NRA's Claims Against the April 4 Importation Ban for Zimbabwe Are Viable and Not Moot**

Federal Defendants have assumed a heavy burden to prove the mootness of SCI/NRA's claims against the April 4, 2014 importation ban.  Ostensibly, Federal Defendants voluntarily stopped applying the illegal April 4 determination by merely replacing it with a similarly illegal July 31 determination.  By asserting mootness based on this version of the facts, Federal Defendants are required to shoulder the burden of establishing the mootness of SCI/NRA's original challenge.  Consequently, Federal Defendants cannot attempt to shift to SCI/NRA the obligation of proving this Court's jurisdiction to consider the challenge to the April 4 Zimbabwe importation ban.  Federal Defendants fail to meet this burden of proof.

In addition, SCI/NRA affirmatively demonstrate below that Federal Defendants lack the authority to implement a decision with retroactive impact.  For that reason, the April 4 importation ban cannot be moot because it still governs whether hunters can import sport-hunted elephants taken in Zimbabwe between April 4 and July 31, 2014.

Finally, even if their challenges to the April 4 importation ban are moot, SCI/NRA can still pursue these challenges under the exception applicable to conduct that is capable of repetition yet will evading review.

1.      **Federal Defendants Bear a Heavy Burden to Prove Mootness and the Court Must Assume that SCI/NRA Will Prevail on the Merits of Their Legal Claims**

By asserting that they have voluntarily terminated the conduct that SCI/NRA challenged in their original Complaint and Amended Complaint, Federal Defendants assume the burden of demonstrating that, due to mootness, the Court no longer has jurisdiction to review challenges to the allegedly terminated conduct.  As one court in this circuit explained:  "Defendants bear the 'heavy burden' of showing that 'subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Nat'l Sec. Archive v. C.I.A.,* 564 F. Supp. 2d 29, 35 *on reconsideration*, 584 F. Supp. 2d 144 (D.D.C. 2008) (*citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000)).  Courts refrain from dismissing what might otherwise be meritorious claims based on alleged mootness.  "It is no small matter to deprive a litigant of the rewards of its efforts . . . .  Such action on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought."  *Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 224 (2000) (per curiam).

In addition, as is the case here, "[a] defendant's voluntary cessation of allegedly unlawful conduct moots a case only if (1) 'there is no reasonable expectation ... that the alleged violation will recur,' and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 725 (D.C. Cir. 2012) (*quoting Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011).  Federal Defendants cannot rely on a newly arbitrary and capricious action to moot challenges to earlier illegal conduct.  A subsequent action moots a plaintiff's challenge to the replaced action "only if [the subsequent action] is valid."  *United States v. Larson,* 302 F.3d 1016, 1020 (9th Cir. 2002).   As

17

explained below, Federal Defendants have failed to meet both prongs of this "heavy burden" and SCI/NRA's challenges to the April 4 importation ban cannot be moot. *See Kifafi*, 701 F.3d. at 725 (defendant's failure to satisfy first factor defeated mootness defense and court did not reach second factor).[9]

A second, equally important principle governs the Court's resolution of the mootness question. For purposes of resolving whether the Court has Article III jurisdiction, the Court must accept as valid SCI/NRA's legal claims and theories. The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Pierce*, 697 F.2d 303, 305 (D.C. Cir. 1982) ("For purposes of the standing issue, we accept as valid Congressman Sabo's pleaded legal theory.") (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)); *Goldwater v. Carter,* 617 F.2d 697, 701-02 (D.C. Cir. 1979) ("For purposes of the standing issue, we accept, as we must, appellees' pleaded theories as valid."), *vacated on other grounds,* 444 U.S. 996 (1979). As the D.C. Circuit stated:

---

[9] A few courts appear to place these two requirements on the party asserting mootness when the party ceases the illegal activity in response to the legal challenge as a way to end the litigation. *See Aref v. Holder,* 774 F. Supp. 2d 147, 161 (D.D.C. 2011) (quoting *Pub. Util. Comm'n of Cal. v. Fed. Energy Regulatory Comm'n,* 100 F.3d 1451, 1460 (9th Cir. 1996)). As most cases from the D.C. District Court, D.C. Circuit, and Supreme Court do not discuss this condition, the Court need not inquire into whether the Federal Defendants tried to cease the illegal conduct in response to litigation. In any event, here, the Federal Defendants allege to have ceased their illegal conduct – implementation of the April 4 importation ban – only *after* SCI/NRA brought a suit challenging the April 4 decision that identified numerous flaws in that decision-making. In addition, with their July 31 importation ban, Federal Defendants were apparently attempting to correct their clearly inadequate basis for halting elephant imports from Zimbabwe by adopting a new finding and attempting to give it retroactive effect. Under this version of the facts, Federal Defendants should bear a "heavy burden" to show that they have not repeated their errors in their more recent importation ban decision and that the July 31 decision has "completely and irrevocably eradicated the effects of the" April 4 importation ban.

> Indeed, in reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.

*City of Waukesha v. EPA,* 320 F.3d 228, 235 (D.C. Cir. 2003) (accepting petitioner's contention on the correct interpretation of the statute to find that the court could redress petitioner's injuries) (citation omitted).

Although the foregoing cases deal with the standing element of the Court's Article III jurisdiction, they should apply equally to the mootness element of the Court's jurisdiction over a claim. As the Supreme Court has explained, "The 'personal stake' aspect of mootness doctrine also serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 66-67 (1997) (mootness, like standing, "goes to the Article III jurisdiction of this Court and the courts below . . . ."); *Warth v. Seldin*, 422 U.S. 490, 499, n.10 (1975) ("The standing question thus bears close affinity to questions . . . of mootness-whether the occasion for judicial intervention persists."). As mootness also addresses the Court's Article III jurisdiction, this rule should apply with equal force here.

### 2. Federal Defendants Lack Authority to Implement Decisions With Retroactive Impact, So the April 4 Decision Continues to Govern the Importation of Elephants Hunted Before the July 31 Importation Ban Went Into Effect

Without any basis in the law, the Federal Defendants simply declared the July 31 decision to be retroactive and applicable to the importation of elephants sport-hunted between April 4 and July 31. *See* Federal Defendants' Supp. MTD at 9-10, *quoting* Ex. 1 at 1. But contrary to Federal Defendants' arguments, the April 4 decision remains operative. The fact that Federal Defendants announced that the July 31 decision superseded their earlier decision does not automatically give the July 31 importation ban retroactive impact.

19

> Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. (*Citations omitted.*)  By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms. (*Citations omitted.*) Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant.

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208-09 (1988); *see also Arkema Inc. v. EPA*, 618 F.3d 1, 7 (D.C. Cir. 2010).

Other laws and agency actions confirm that the July 31 decision lacks retroactive effect. The Administrative Procedure Act ("APA") explains that Congress intends agency rulemaking to regulate future conduct:

> (4) "rule" means the whole or a part of an agency statement of general or particular applicability and ***future*** effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . . ;

5 U.S.C. §551(4) (emphasis added).[10]  Federal Defendants regulate the importation of threatened species under authority of 16 U.S.C. §1533(d) of the Endangered Species Act ("ESA").  That provision authorizes the Secretary of the Interior to issue regulations deemed necessary and advisable for the conservation of species but does not expressly grant authority to promulgate retroactive regulations.  The language of the rule that the Secretary issued for African elephants confirms the prospective nature of the Secretary's authority.  The rule states that sport-hunted elephants may be imported when "a determination is made that the killing of the animal whose trophy is intended for import ***would*** enhance survival of the species;" 50 C.F.R. §17.40(e)(3)(iii)(c) (emphasis added).  The Secretary is to base the decision on whether the take

---

[10] In their Complaint (Dkt.1, ¶¶87, 92), Amended Complaint (Dkt. 13,¶¶94, 99) and Proposed Second Amended Complaint (Dkt. 34-2,¶¶108, 114), Safari Club contends that the April 4, 2014 importation bans qualify as APA rulemaking.  As discussed above, the Court must, for purposes of determining Article III jurisdiction, accepts these legal claims.

of the animal intended for import *would* enhance the survival of the species, looking towards the future, and not whether the take "did" enhance the survival at some time in the past.  Nothing in the wording of the regulation suggests that the Secretary has authority to make such determinations retroactive.

   As explained above, the Court must accept SCI/NRA's legal claims and theories as valid for purposes of deciding mootness.  In Count I of the Second Amended Complaint, SCI/NRA assert and imply that Federal Defendants lack authority to make a so-called "temporary" decision that can be replaced retroactively by a later determination.  *See* Amended Complaint, ¶96; *see also id.,* ¶99 (asserting and implying that April 4, 2014 importation decision applies to all elephants hunted between April 4 and July 31, 2014).  For this Court to determine that challenges to the April 4, 2014 importation ban are moot, it would have to make a premature ruling against SCI/NRA on the merits and reject SCI/NRA's claims that the April 4, 2014 importation ban would apply to the importation of elephants until a new finding is made and published in the Federal Register.  *Id.,* ¶40.  For this reason alone, the April 4, 2014 importation ban, which is the cause of undisputed injuries to SCI/NRA members, must be deemed to remain in effect for the purposes of this litigation.

   Ignoring this conclusion, Federal Defendants attempt to bolster their contention that the April 4 decision is now moot by erroneously placing a great deal of weight on their own statement that the July 31 decision "superceded" the April 4 importation ban.  Federal Defendants' Supp. MTD. at 3, 8, 9, 10, 11.  The dictionary definition of "supersede" does not suggest that the superseding item retroactively takes the place of the older item, just that it replaces it starting at that point in time:

| 1 | *a* : | to cause to be set aside |
| | *b* : | to force out of use as inferior |
| 2: | | to take the place or position of |
| 3: | | to displace in favor of another |

http://www.merriam-webster.com/dictionary/supersede?show=0&t=1409851627, *last visited*

Sept. 5, 2014.[11]

      In their briefing in the appeal of the denial of preliminary injunctive relief in this case,

and in their conduct subsequent to April 4, 2014, Federal Defendants belatedly acknowledged

"concerns" about their authority to retroactively ban the importation of Zimbabwe's elephants.

The April 4 importation ban decision initially applied retroactively to elephants hunted in

Zimbabwe after December 31, 2013.  On April 17, 2014, Federal Defendants revised that

determination to ban only the importation of elephants hunted *on or after* April 4.  In the brief

that they filed in the appeal, Federal Defendants admitted that they changed their April 4 ban to

prospective application in order to "avoid retroactivity concerns."  Case No. 14-5152 (D.C. Cir.),

Federal Appellees' Answering Brief (Dkt. 1508081) at 10 n.8.

---

[11] The cases Federal Defendants cite (Supp. MTD. at 10-11, n.6) are distinguishable because the
plaintiffs in those cases did not claim that the allegedly superseded policy or rule still governed
conduct undertaken while the policy or rule was in effect, as SCI/NRA claims here.  In *Fund for
Animals, Inc. v. Bureau of Land Mgmt.,* the policy memorandum expired and all the wild
horse gathers covered by it were complete, so the policy had no lasting impact on the plaintiffs.  460
F.3d 13, 18 (D.C. Cir. 2006).  Federal Defendants mischaracterize the holding in *Fund For
Animals, Inc. v. Hogan,* 428 F.3d 1059 (D.C. Cir. 2005).  This case did not involve a "legislative
rule[]" or a "regulation," but a letter responding to an ESA listing petition that was replaced by a
90-day finding.  "Insofar as the Service's letter of September 2000 addressed the Fund's petition
for non-emergency listing, the district court did not err in dismissing as moot the Fund's claim
because the letter was superceded in full by the belated 90-day finding."  *Id.* at 1064.  *Ctr. for
Sci. in the Pub. Interest v. Regan,* 727 F.2d 1161, 1163-64 (D.C. Cir. 1984), involved a rescinded
rule that governed prospective obligations regarding the disclosure of ingredients on labels.
Once replaced, the earlier rule had no effect on the petitioner's future labelling obligations and so
no longer harmed the petitioner.  *Id.* at 1164.  None of these cases involved an agency action that
had any continuing adverse impact on plaintiffs, in contrast to the April 4, 2014 importation ban.

Federal Defendants should be "concerned" about the retroactive application of an enhancement finding addressing the importation of sport hunted elephants.  Under the broad retroactive rulemaking power the Federal Defendants have asserted, the government could impose draconian results on unsuspecting hunters (and other members of the regulated public). For example, a hunter could have a taxidermied sport-hunted elephant being transported into the United States.  Upon takeoff, the importation was legal because a positive enhancement finding was in place at the time of the harvest.  But during transport, the FWS could decide that it can no longer make that finding and make it retroactive to some date prior to the harvest of the elephant. Upon landing, elephant importation would be illegal and the elephant subject to confiscation.

Federal Defendants' practice and policy for almost two decades was that enhancement findings were prospective only and remained in place until replaced by a new finding published in the Federal Register.  In contrast to these principles, Federal Defendants have now illegally overreached in their attempt to rectify errors in their April 4, 2014 importation ban decision by making the July 31, 2014 decision retroactive.

Federal Defendants' argue that SCI/NRA have "'obtained everything that [they] could recover . . . by a judgment of this court in [their] favor,' thus rendering their challenge to the April interim finding moot."  Federal Defendants' Supp. MTD at 10.  That is not the case because the July 31 decision is not retroactive.  However, if this Court sets aside the April 4 finding, SCI/NRA members that successfully hunted elephants between April 4 and July 31, 2014 will be allowed to import their elephants and be given relief.

The July 31 decision cannot apply to the importation of elephants hunted prior to July 31, 2014 because Federal Defendants lack legal authority to make such retroactive determinations. Because the July 31 decision can apply only to elephants legally hunted in Zimbabwe from July

31, 2014 forward, SCI/NRA's claims challenging the April 4 importation ban remain viable.  If

SCI/NRA succeed in setting aside the April 4 decision, the result will allow the importation of

elephants hunted before July 31, 2014 and will redress the harm suffered by SCI/NRA members

who hunted elephants during the period between April 4 and July 31.  The July 31 importation

decision does not meet the qualifications necessary to moot the previous importation ban.  For

these reasons, this Court should deny Federal Defendants' attempts to dismiss SCI/NRA's

challenges to the April 4 importation ban and should grant SCI/NRA's motion to include such

claims in its Second Amended and Supplemented Complaint.

> **3.      Federal Defendants Have Not Proven that the April 4 Illegal Conduct Will Not Recur and, Even if Moot, SCI/NRA's Zimbabwe Claims Are Capable of Repetition Yet Will Evade Review**

Finally, as explained below, Federal Defendants have not satisfied their burden to prove

the illegal conduct will not recur, so as to establish that SCI/NRA's challenges to the April 4

decision are moot.  Alternatively, even if the Court determines that the July 31 decision moots

SCI/NRA's challenges to the April 4 importation ban, the Court should still not dismiss the

challenges to the earlier decision.

Contrary to Federal Defendants' protestations, the illegal, yet allegedly short-lived April

4 decision qualifies as "capable of repetition yet evading review."  To assert that mootness

exception, a party must demonstrate that (1) the duration of the conduct being challenged is too

short to allow for full litigation, and (2) there is a reasonable expectation that the party will be

subject to the same conduct again.  *Del Monte Fresh Produce Co. v. U.S.*, 570 F.3d 316, 322

(D.C. Cir. 2009).  "Full litigation" requires the time necessary for Supreme Court review.

*Christian Knights of Ku Klux Klan Invisible Empire v. Dist. of Columbia*, 972 F.2d 365, 369

(D.C. Cir. 1992).  Conduct with a duration of less than two years qualifies if the duration of the challenged action is "typical" for that type of agency conduct.  *Del Monte*, 570 F.3d at 322.

Federal Defendants characterize the three month duration of the April importation ban as atypical, contrasting that decision with the last decision that Federal Defendants made for Zimbabwe in 1997.  Federal Defendants' Supp. MTD at 12.  Since Federal Defendants have made only one previous decision for Zimbabwe, that single example cannot demonstrate typical or atypical behavior.  In 1997, Federal Defendants explained that they would make such determinations on a "periodic basis," giving no indication of any typical duration between decisions.  62 Fed. Reg. at 44633.  Federal Defendants have established a new "typical" by making three decisions for Zimbabwe in the past fifteen weeks:  (1) the April 4 importation ban; (2) the April 17 decision to revise the effective date of the importation ban; and (3) the July 31 decision.  In addition, Federal Defendants have already announced that they intend to make yet another determination in December 2014.  "Enhancement Finding for African Elephants Taken as Sport-hunted Trophies in Zimbabwe during 2014," p. 1 (July 22, 2014), http://www.fws.gov/international/pdf/enhancement-finding-July-2014-elephant-Zimbabwe.PDF, *last visited* Sept. 5, 2014.  Consequently, what is currently "typical" is for Federal Defendants to make decisions of very short durations.

Federal Defendants also argue that if the April 4 importation ban is capable of repetition, it will not evade review because SCI/NRA are also challenging the July 31 decision.  Federal Defendants Supp. MTD at 12.  Because SCI/NRA's challenges to the April 4 and July 31 decisions are not identical, SCI/NRA cannot rely on their litigation of the July 31 decision to resolve all the illegalities involved with the April 4 importation ban.

Without a judicial ruling enjoining such conduct, SCI/NRA face a real probability that members will be subjected to the same type of arbitrary and capricious decision-making that resulted in the April 4 importation ban.  Whether or not Federal Defendants will continue to rely on a lack of information, rather than new information, in their upcoming December 2014 decision,[12] nothing prevents Federal Defendants from applying the same conduct for future decisions concerning Namibia and South Africa elephant importation.[13]  Prior to April 4, 2014, SCI/NRA members had no reason to expect that Federal Defendants had any intention of changing their long-standing positive enhancement finding for elephants in Zimbabwe.  Similarly, Federal Defendants did not even give Zimbabwe notice of their plans until after imposing the ban.  Despite their commitment (1) to base any change in their position on new information and (2) to publish any such change in position in the Federal Register, Federal Defendants did neither.  62 Fed. Reg. at 44633.  Federal Defendants have made the exact same commitments for South Africa and Namibia.

> The enhancement findings for importation of sport-hunted elephant trophies from Botswana, Namibia, and Zimbabwe … remain in effect until the Service finds, based on new information, that the conditions of the special rule are no longer met and has published a notice of any change in the Federal Register.

*Id.*; 66 Fed. Reg. 27601, 27609 (May 18, 2001) (South Africa).  SCI/NRA's inability to fully litigate their challenges to the April 4 importation ban decision within two years and Federal Defendants' ability to abruptly and without warning use the exact same approach to terminate elephant importation from Namibia and South Africa qualifies Federal Defendants' actions in

---

[12] SCI/NRA disagree with Federal Defendants that the July 31 decision was based on "new information."  While it may have been based on more information than the April 4 importation ban decision, the July 31 importation ban continues to be based on a lack of information.

[13] To qualify for the capable of repetition yet evading review exception, the injured party can challenge a repeated incidence of the illegal conduct even if the circumstances involving the application of the conduct are not identical to the original action.  *Carlson v. Schlesinger*, 511 F.2d 1327, 1334 n.9 (D.C. Cir. 1975).

implementing the April 4, 2014 importation ban as "capable of repetition yet evading review." *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (petitioners' challenges were not moot because "the challenged governmental activity . . . has not evaporated or disappeared, and by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.").

## III.   CONCLUSION

For the foregoing reasons, SCI/NRA's claims challenging the April 4, 2014 importation bans for sport-hunted elephants from Tanzania and Zimbabwe are viable.  The April 4, 2014 Tanzania ban decision qualifies as final agency action and SCI/NRA members need not participate in the permit process or exhaust permit-related administrative remedies to challenge that decision.  SCI/NRA's challenges to the April 4, 2014 Zimbabwe ban are not moot because that decision still adversely affects SCI/NRA members.  In addition, Federal Defendants have failed to carry their burden of proving that they are moot.  Even if this Court finds that they are moot, the Court should not dismiss these claims as the conduct that SCI/NRA challenge is capable of repetition yet would evade review.

SCI/NRA request that this Court grant their motion for leave to file a second amended and supplemented complaint and deny Federal Defendants' Supplemental Motion to Dismiss. SCI/NRA further ask this Court to expeditiously move forward with consideration of SCI/NRA's challenges and summary judgment briefing.

Dated:  September 5, 2014

Respectfully submitted,

/s/Anna M. Seidman
Anna M. Seidman
D.C. Bar No. 417091
Douglas Burdin

D.C. Bar No. 434107
Jeremy Clare
D.C. Bar No. 1015688
501 2nd Street NE
Washington, D.C.
Tel: 202-543-8733
Fax: 202-543-1205
aseidman@safariclub.org
dburdin@safariclub.org
jclare@safariclub.org

*Counsel for Plaintiff*
*Safari Club International*

Christopher A. Conte (DC Bar No. 43048)
National Rifle Association of America/ILA
11250 Waples Mill Rd., 5N
Fairfax, VA 22030
Telephone: (703) 267-1166
Facsimile: (703) 267-1164
cconte@nrahq.org

*Counsel for Plaintiff*
*National Rifle Association of America*