MICHAEL RAY HARRIS (DC Bar # CO0049)
JENNIFER BARNES (DC Bar # CO0056)
Friends of Animals
7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112
Telephone: (720) 949-7791
michaelharris@friendsofanimals.org
jenniferbarnes@friendsofanimals.org

*Attorneys for Movants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:14-CV-00670 (RCL) |
| ) | |
| SALLY JEWELL, *et al.*, ) | |
| ) | |
| Defendants, and ) | |
| ) | |
| FRIENDS OF ANIMALS, ) | |
| 777 Post Road, Suite 205 ) | |
| Darien, CT 06820; and the ) | |
| ZIMBABWE CONSERVATION TASK FORCE ) | |
| 3 Fairbairn Drive, Mount Pleasant, Harare, ) | |
| Zimbabwe, Africa, ) | |
| ) | |
| Movants/Proposed Defendant- ) | |
| Intervenors. ) | |

**REPLY MEMORANDUM IN SUPPORT OF FRIENDS OF ANIMALS' AND ZIMBABWE CONSERVATION TASK FORCE'S MOTION TO INTERVENE AS DEFENDANTS**

**INTRODUCTION**

It is not a secret that the Safari Club International and National Rifle Association ("Sport-Hunters") are singularly focused on protecting the interests of hunters and gun owners. Thus, it is not a surprise that they wish for this Court to view the July 22, 2014 Enhancement Finding for Zimbabwe African elephants as a personal attack on both. *See* SCI/NRA Opposition to the Supplemental Motion to Dismiss (ECF 40) at p. 11 ("The importation ban was directed at professional hunters, as it was Federal Defendants' intent to persuade hunters to cancel the hunts they had booked with [ ] outfitters and guides."). The goal of the Sport-Hunters is apparently to persuade the Court that the Enhancement Finding impacts only a very narrow set of interests—namely theirs. But in their rush to express their dissatisfaction with the decision of the U.S. Fish & Wildlife Service ("FWS"), the Sport-Hunters completely miss the real purpose behind Enhancement Finding: **to protect African elephants in Zimbabwe from actions that cannot be deemed to "enhance the survival of the species" and to promote better management of those elephants by the government of Zimbabwe.** *See* 79 Fed. Reg. 26986, 26986 (May 12, 2014). In other words, it works to protect the very elephants that Mr. Rodrigues, a member of Friends of Animals and the Executive Director of the Zimbabwe Conservation Task Force, not only regularly observes in the wild, but works tirelessly to protect nearly every day of his life.

There can be no doubt that Mr. Rodrigues' very personal involvement with elephants in his country is a sufficient "interest" for the purpose of establishing Article III standing. The Enhancement Finding does not, of course, cause injury to his interest, but works to protect it by shining light on Zimbabwe's deficient elephant management and by dissuading hunters from the United States (and possibly elsewhere) from killing them. Notably, it makes little difference that the "ban" on imports expired on December 31, 2014. As demonstrated below, the underlying basis for the Finding—the inadequacy of

Zimbabwe's elephant program—has not changed, and it will remain virtually impossible for a U.S. hunter to kill and import elephant parts into this country from Zimbabwe for the foreseeable future. The Sport-Hunters know this, and are being disingenuous in stating that they "challenge a ban imposed . . . for Zimbabwe for 2014 only." Opposition to Motion to Intervene (ECF 52) (hereinafter, "Opp. Mot.") at 1. To the contrary, their Complaint focuses on doing away with the Enhancement Finding because they understand that it will continue to undermine their interest (while protecting ours) for some time to come. *See* Memorandum Opinion (ECF 48) at 17 (examining the nature of the Zimbabwe claims). Finally, the Movants do not need to demonstrate that the Enhancement Finding protects every elephant in Zimbabwe from the gun; it is sufficient to show that it at least contributes to protecting their interests in Zimbabwe elephants.

## ARGUMENT

**A.    MR. RODRIGUES HAS DEMONSTRATED A SIGNFICANT INTEREST IN THE CONSERVATION OF AFRICAN ELEPHANTS.**

Mr. Rodrigues lives in Zimbabwe. As set forth in his declaration in support of the Motion to Intervene, his current profession (which he has engaged in since 2001) is to actively work to protect Zimbabwe's elephants and other wildlife for the benefit of current and future generations. *See* Rodrigues Decl. at ¶ 2. He works with other organizations to promote protection of Zimbabwe's elephants; he works with supportive government partners in Zimbabwe to enhance elephant habitat; he obtains and disseminates information about Zimbabwe's elephants; and he works directly on projects to enhance physical protections to reduce poaching of Zimbabwe elephants. *Id.* at ¶¶ 10-16. More importantly, "his entire life he has been able to view elephants." *Id.* at ¶ 17. In would be hard to find someone with more of an aesthetic, recreational and professional interest in the elephants of Zimbabwe.

The Sport-Hunter's don't refute any of this. Instead, they poo-poo Mr. Rodrigues' intimate connection with the object of their desire on the grounds that his declaration fails to state that he intends to wake up tomorrow (or the next day) to continue his hands-on work with elephants. Opp. Mot. at 9-10. Standing, however, does not turn on the use of magical words. To the contrary, courts have rejected argument that individual members must assert evidence of concrete, future plans to observe the species at issue, in cases, like this, **where plaintiffs regularly use the area impacted**. *See Forest Serv. Emples. v. United States Forest Serv.*, 726 F. Supp. 2d 1195, 1221 (D. Mont. 2010). In *Forest Service Employees.*, the court distinguishes *Lujan* as follows:

> The primary case upon which the Defendants rely, Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), is distinguishable. In Lujan, members of an environmental group sought to establish standing to challenge government-funded activities abroad, which the plaintiffs argued would affect endangered species in Egypt and Sri Lanka. *Id*. at 563. The Court considered affidavits from two members who years before had traveled to Egypt and Sri Lanka, respectively, but neither of whom had concrete plans to do so again beyond a general statement of intent to return at some point in the future. *Id*. at 563-564. The Supreme Court held that the absence of credible plans to visit the affected areas in the future meant plaintiffs could not show an injury in fact: "Such 'some day' intentions--without any description of concrete plans, or indeed any specification of when the some day will be--do not support a finding of the 'actual or imminent' injury that our cases require." *Id*. at 564 (emphasis in original).
>
> In contrast to Lujan, the individual members here [Forest Service Employees] are regular visitors to the areas with credible plans to continue their use and enjoyment of the species in question. The Lujan plaintiffs each alleged a single visit that was years in the past, with nothing more than a general intent to return to a nation halfway around the world. The individual members here have established regular and repeated use of national forest lands containing the affected species, along with an intent to continue that use on multiple occasions within the next year.

*Id.*; *see also Ecological Rights Found. v. Pac. Lumber Co.,* 230 F.3d 1141, 1149 (9th Cir. 2000) ("Daily geographical proximity, for instance, may make actual past recreational use less

important in substantiating an "injury in fact," because a person who lives quite nearby is likely to notice and care about the physical beauty of an area he passes often.").

The same holds true here. Mr. Rodrigues' near daily work with elephants in Zimbabwe is clearly established in his declaration, and documented regularly on his organization's website. *See* http://www.zctfofficialsite.org/. Moreover, Mr. Rodrigues is happy to testify in court regarding his past, present and planned work with elephants by telephone, if the Court so desires.

**B.   THE ENHANCEMENT FINDING CONTINUES TO PROTECT MR. RODRIGUES' INTEREST IN ZIMBABWE ELEPHANTS.**

It is not the purported "ban" imposed by FWS on the import African elephants from Zimbabwe that were sport hunted in 2014 that works to protect Mr. Rodrigues' interests; it is the fact that FWS has found that given the current structure of the Zimbabwe government's elephant management program, it is not possible to make a finding that sport hunting in that country works to "enhance" the survival of that species in the wild." *See Memorandum in Support of Motion to Intervene* at 9-11). Under the Endangered Species Act, an individual seeking to import a sport-hunted elephant into the United States must obtain a permit under Section 10(a)(1) of the Act. *See* 16 U.S.C. § 1539(a)(1)(A); 50 C.F.R. 17.40(e). FWS may only grant a permit under Section 10 of the ESA, however, if the agency makes a finding that: (1) the permit was applied for in good faith; (2) if granted and exercised the permit will not operate to the disadvantage of such endangered species; and (3) that issuance of the permit will be consistent with the purposes and policy set forth in Section 2 of the ESA.[1] *Id.* at § 1539(d).

---

[1] Among other things, Section 2 states that it is the purpose of the ESA to provide a program for the conservation of endangered species. 16 U.S.C. § 1531(b). Congress defined the terms conserve, conserving and conservation as: "to use and the use of all methods and procedures which are necessary to bring endangered species and threatened species to the point at which measures provided [in the ESA] are no longer necessary.  Such methods and procedures include, but are not limited to, all activities associated with scientific resources

Here, the simple fact is that the Enhancement Finding made by FWS makes it virtually impossible for FWS to make the necessary findings to issue a permit to import an African elephant trophy from Zimbabwe whether or not there is a "ban" in place. If a sport hunter were to apply for such a permit today, it would seem highly unlikely FWS would grant it. And if the agency did, it would almost certainly be arbitrary and capricious **unless** the agency also determines that the management deficiencies cataloged in the July Enhancement Finding have been cured. There is, of course, nothing in the record before the Court to suggest that those deficiencies are going to be corrected anytime soon. The 2014 Enhancement Finding continues to protect Mr. Rodrigues interests and will continue to do so for the foreseeable future.

The Sport-Hunters no doubt appreciate that it is the Enhancement Finding—and not the purported 2014 ban—that adversely affects their own interests in Zimbabwe elephants. For example, in opposing the government's motion to dismiss their Tanzania claims, the Sport-Hunters argued that it would be futile to submit individual permits because of the findings FWS made regarding elephant management in that country. *See* Opposition to Supplemental Motion to Dismiss (ECF 22) at 15-16. Likewise, the Sport-Hunters argued that unless this Court grants them relief, it is likely that FWS will continue to employ "the same erroneous" mechanisms to future enhancement determinations for Zimbabwe. *Id* at 21-22; *see also* Opposition to Motion to Dismiss (ECF 40) at 40 ("Without a judicial ruling . . . SCI/NRA face the real possibility that members will be subjected to the same type of arbitrary and capricious decision making that resulted in the April 4 ban."). Indeed, the Sport-Hunters go so far as to argue that absent Court intervention, FWS has essentially established a "new binding norm" with regards to what hunters must show to

---

management such as research, census, law enforcement, habitat acquisition and maintenance, propagation, live trapping, and transplantation, and, in the extraordinary case where population pressures within a given ecosystem cannot be otherwise relieved, may include regulated taking." *Id*. at § 1532(3).

obtain a permit. Opposition to Motion to Dismiss (ECF 40) at 8.

In short, the July Enhancement Finding continues to protect Mr. Rodrigues' interest. Even though no "ban" is in place, U.S. Sport-Hunters must continue to worry about the real possibility that they will be denied a Section 10 permit. Under this scenario, it is highly likely that potential hunters today will still be "forced to decide whether to even go on their hunt or participate in the elephant portion of their hunts." Opposition to Supplemental Motion to Dismiss (ECF 22) at 30.

**C.  MOVANTS DO NOT NEED TO PRESENT CONCRETE PROOF THAT THE ENHANCEMENT FINDING REDRESSES MR. RODRGUES' INTERESTS.**

Article III standing does not require a party to demonstrate with certainty that the Court can redress (or in this case protect) its interest in the litigation. Instead, in this Circuit it is required only that the party allege facts "sufficient to demonstrate a substantial likelihood that the third party directly injuring the plaintiff would cease doing so as a result of the relief the plaintiff sought." *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1275, 376 U.S. App. D.C. 431 (D.C. Cir. 2007). Moreover, "a plaintiff can seek redress even if the challenged regulation is one of multiple obstacles to her desired action." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260-64 (1997). Here, the Enhancement Finding is intended to reduce injury to Zimbabwe's elephants from third party Sport-Hunters. While the Enhancement Finding does not eliminate all sport hunting of elephants in that country, it is one important step toward protecting those animals from an activity (sport hunting) that FWS believes will not enhance their survivability in Zimbabwe.

While the Sport-Hunters would like the Court to believe that with the Enhancement Finding in place, sport hunting of elephants in Zimbabwe will simply switch from Americans to non-Americans, there is no evidence in the record to suggest that will be the case. America is a wealth country with a large population of hunters. This is demonstrated

7

by the effort being put forth on their behalf in this case by two major interest groups. In any case, there is no reason to believe that the Enhancement Finding won't result in the reduction of some sport-hunting of elephants in Zimbabwe or improve the overall conservation of those animals. Certainly FWS believed it might, or it would not have taken the extraordinary action it did in issuing the finding. In any case, just as Mongolia did not have to show with concrete proof that U.S. action would unquestionably injury its wildlife conservation program in *Fund for Animals v. Norton*, neither should the Movants here have to demonstrate that the Enhancement Finding is unquestionably protecting a certain number of elephants in Zimbabwe. *See* 332 F.3d 728, 730-33 (D.C. Cir. 2003).

D.     **MOVANTS DO NOT SEEK TO ENLARGE THE SCOPE OF THIS CASE.**

Movants do not seek to inject new arguments, evidence or issues into this case. Movants are experienced in the requirements of Section 10 of the Endangered Species Act, with elephant conservation in Zimbabwe, and with the impact sport hunting can have on endangered and threatened species. Movants only seek to defend the Enhancement Finding, and will do so by making arguments within the scope of the issues raised by the sport hunter's claims, and the administrative record in this case.

**CONCLUSION**

For the reasons set forth above, Movants, Friends of Animals and the Zimbabwe Conservation Task Force, respectfully request this Court grant them intervention as of right, or alternatively, permissive intervention.

Respectfully submitted this 27th day of January, 2015.

>  /S/ Michael Harris
>  Michael Ray Harris (DC Bar # CO0049)
>  Friends of Animals
>  7500 E. Arapahoe Road, Suite 385
>  Centennial, Colorado 80112
>  Telephone: 720-949-7791
>  michaelharris@friendsofanimals.org
>
>  *Attorney for Movants*

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing, FRIENDS OF ANIMALS' AND ZIMBABWE CONSERVATION TASK FORCE'S REPLY IN SUPPORT OF THEIR MOTION TO INTERVENE AS DEFENDANTS, was served upon all counsel of record through the ECF system this 27th day of January, 2015.

                                                 /s/ Michael Harris
                                                 Michael Ray Harris (DC Bar # CO0049)