UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SAFARI CLUB INTERNATIONAL, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 14-0670 (ABJ) |
| SALLY M. R. JEWELL, in her official capacity as Secretary of the U.S. Department of the Interior, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Plaintiffs Safari Club International and the National Rifle Association of America have challenged regulatory actions by the U.S. Fish and Wildlife Service ("FWS") that resulted in the suspension of imports of sport-hunted elephants from Zimbabwe.[1]  Friends of Animals and the Zimbabwe Conservation Task Force ("ZCTF") seek to intervene as defendants in the case. They seek intervention by right under Federal Rule of Civil Procedure 24(a)(2) or alternatively, by permission under Rule 24(b)(1)(B). Mot. to Intervene [Dkt. # 45]; Mem. of P. & A. in Supp. of Mot. to Intervene [Dkt. # 50] ("Supp. Mem."). Plaintiffs oppose the motion, *see* Opp. to Mot. to Intervene [Dkt. # 52] ("Opp."), and defendants have taken no position on it. The Court grants the motion for intervention as of right because movants have standing and have satisfied the requirements of Rule 24(a).

---

1   Plaintiffs originally challenged findings concerning imports from both Tanzania and Zimbabwe, but on December 26, 2014, the Court granted the government's motion to dismiss the Tanzania claims. Order [Dkt. # 47].

**LEGAL FRAMEWORK**

Federal Rule of Civil Procedure 24(a) requires the Court to permit intervention when a movant files a timely motion and "is given an unconditional right to intervene by a federal statute" or "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

Movants seeking to intervene as of right and thereby participate on equal footing with the original parties to the suit must demonstrate standing under Article III of the Constitution. *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) ("[P]rospective intervenors in this circuit must possess standing under Article III of the Constitution."); *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 211 (D.D.C. 2012). To demonstrate standing, movants must show that they have suffered an injury-in-fact, "an actual or imminent invasion of a legally protected, concrete and particularized interest;" there must be a causal connection between the alleged injury and the conduct at issue; and it must be likely, not speculative, that the Court can redress the injury. *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005), citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

**BACKGROUND AND MOVANTS**

Federal regulations allow sport-hunted African elephants to be imported into the United States from certain countries under specified conditions, including that a "determination is made that the killing of the animal whose trophy is intended for import would enhance survival of the species." 50 C.F.R. § 17.40(e)(3)(iii)(C). In 2014, FWS announced that it could not make the required enhancement finding for Zimbabwe, resulting in a suspension of imports of elephants

taken in that country from April 4, 2014 through December 31, 2014.  Notice of Suspension of Imports of Zimbabwe Elephant Trophies Taken in 2014 on or After April 4, 2014, 79 Fed. Reg. 44459 (July 31, 2014).

Movants Friends of Animals and ZCTF seek to intervene to defend FWS's actions.  They are animal conservation groups that consider sport-hunting "*per se* detrimental to the survival" of the African elephant.  Supp. Mem. at 3.  Friends of Animals is a non-profit, international animal advocacy organization incorporated in New York.  *Id.* at 3.  Its mission is to "free animals from cruelty and exploitation around the world," including "protecting animals imperiled due to poaching, sport-hunting, and other animal exploitation markets."  *Id.* at 4.  ZCTF is a registered non-governmental organization headquartered and located in the Republic of Zimbabwe.  *Id.* at 5.  It works "to promote and ensure the sustainability of African wildlife for current and future generations," including by seeking to "prevent the trade of live elephants" and to "prevent the trade of animals that have been killed, and their parts."  *Id.* at 5–6.

Movants provided two declarations in support of their motion.  The first is from ZCTF founder and Chairman Johnny Rodrigues.  Attach. 2 to Supp. Mem. [Dkt. # 50-2] ("Rodrigues Decl.").  Rodrigues has lived in Zimbabwe since 1955 and has viewed African elephants all his life, in Hwange, Kariba, Gonarezhous, Chiredzi, and Zambesi Valley.  *Id.* ¶¶ 4, 17.  He enjoys viewing, photographing, and observing African elephants.  *Id.* ¶ 17.  Rodrigues founded ZCTF in 2001 as an anti-poaching task force "to try and do something about Zimbabwe's disappearing wildlife."  *Id.* ¶ 9.  ZCTF works with "other NGO's on the ground in Zimbabwe to promote survival of many species of African wildlife, such as African elephants."  *Id.* ¶ 2.  In 2005, he provided fuel for water pumps in Hwange National Park, home of "one of the largest elephant populations in world."  *Id.* ¶ 14.  Since then, ZCTF has provided equipment and contributed approximately

3

$500,000 dollars to Zimbabwe's National Parks. *Id.* ¶ 14. Rodrigues is also a member of movant Friends of Animals. *Id.* ¶ 3.

The second declaration is from Friends of Animals President Priscilla Feral. Attach. 3 to Supp. Mem. [Dkt. # 50-3]. Feral explains that her organization is involved in species conservation and recovery projects in Africa, including protecting wildlife "from poaching and legal hunting by American and European trophy hunters." *Id.* ¶ 4. It has worked to protect African elephants by drafting the proposal that banned trade in elephant ivory and by successfully lobbying against proposals to grant ivory quotas to African countries, including Zimbabwe. *Id.* ¶ 5. Feral states that she has taken several trips to Africa as part of her group's work and to observe and photograph wildlife, that she intends to ensure that the group's staff or she personally "continue our regular travels to Africa" to support the organization's efforts, and that she has "plans to go to Africa every year between November and January to check on the recovery efforts." *Id.* ¶¶ 6–7. She states that "FWS's current suspension on the import of sport hunted trophies prevents new shipments of ivory from entering the stream of domestic commerce," which promotes her organization's "interest in the animals and reduces the chance of their extinction in the near future." *Id.* ¶ 19.

## ANALYSIS

Movants contend that their interests in viewing and protecting elephants in Zimbabwe may be impaired by this litigation. They argue that if plaintiffs prevail and the FWS's decision not to issue an enhancement finding for Zimbabwe is overturned, more African elephants in Zimbabwe will be hunted and killed and movants will have to spend more resources to protect the species, undermining their organizational activities. Supp. Mem. at 8–9. Plaintiffs argue that movants lack both standing and an impairment to their alleged interests. Opp. at 3–10.

**I.     The relief sought in the case may injure or impair movants' interests in viewing African elephants.**

According to plaintiffs, the outcome of this case will not injure or impair movants' stated interest in viewing elephants in the future because the case only involves the suspension of imports in the past. Opp. at 4–6. "The ban that is the subject of this action ended on December 31, 2014. . . . [E]very elephant that is the subject of the 2014 ban has already been harvested and removed from the population." *Id.* at 5.

Plaintiffs are correct that the suspension only applied to elephants taken from April 4 through December 2014, 79 Fed. Reg. 44459 (July 31, 2014), but their lawsuit challenges more than the import suspension. They challenge FWS's underlying decision not to make an enhancement determination for Zimbabwe. *See* 2d Am. Compl. [Dkt. # 49] ¶ 96 (alleging in Count 1 that FWS failed to obtain the "information necessary to make a determination that the conditions of 50 C.F.R. §17.40(e)(3)(iii) had not been met"); ¶¶ 100–06 (alleging in Count 2 that defendants applied an illegal standard in deciding whether imports of sport-hunted elephants from Zimbabwe enhances the species' survival); ¶¶ 119–23 (alleging in Count 5 that defendants "illegally concluded that they could not find that the importation of sport-hunted elephants in Zimbabwe enhances the survival of the species"). They also challenge the special rule that imposes the requirement for an enhancement finding. *Id.* ¶¶ 113–18 (alleging in Count 4 that defendants illegally imposed and maintained the enhancement of survival finding requirement in the special rule governing imports of sport-hunted African elephants listed on Appendix II of the Convention for International Trade in Endangered Species of Wild Fauna and Flora).

Although the import suspension only applied to elephants taken through December 2014, FWS's decision not to issue an affirmative enhancement finding for Zimbabwe remains in place, and imports cannot resume until FWS makes the required enhancement finding. *See* 50 C.F.R.

§ 17.40(e)(3)(iii)(C) (setting forth conditions under which sport-hunted African elephants may be imported, including that a "determination is made that the killing of the animal whose trophy is intended for import would enhance survival of the species"). Because of this, the regulatory actions plaintiffs seek to overturn in this suit affect not only elephants taken in the past but also those that may be taken in the future, with the upshot being that this litigation may injure or impair movants' interest in viewing elephants in the future. Accordingly, movants have an adequate interest in the litigation that may be impaired by its outcome.

## II. Movants show the required particularized interest in the case.

Plaintiffs assert that movants do not show the requisite interest in the case because their stated intent to use and enjoy elephants in the future is too general. Opp. at 6–10. "The intention required for standing must apply to the specific location affected by the challenged action." *Id.* at 8; *see also id.*, quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 183 (2000) ("environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity") (internal edits and quotation marks omitted). They argue that Friends of Animals President Feral fails to state concrete future plans to view elephants in Zimbabwe and has only "vague future plans" to go to Africa in the future, and that Rodrigues only states that he has viewed elephants in Zimbabwe in the past, "fail[ing] to present the kind of future concrete intentions needed for Article III standing." *Id.* at 7–10.

Plaintiffs, however, gloss over the particulars of Rodrigues's declaration. Rodrigues lives in Zimbabwe so he does not need particularized plans *to go to* Zimbabwe to view elephants – he is already there. *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000) ("Daily geographical proximity, for instance, may make actual past recreational use less important in substantiating an 'injury in fact,' because a person who lives quite nearby is likely to

6

notice and care about the physical beauty of an area he passes often."); *Forest Serv. Emps. v. U.S. Forest Serv.*, 726 F. Supp. 2d 1195, 1221 (D. Mont. 2010) ("In contrast to *Lujan*, the individual members here [Forest Service Employees] are regular visitors to the areas with credible plans to continue their use and enjoyment of the species in question."). Moreover, Rodrigues's conservation work puts him in proximity with elephants in Zimbabwe, *see* Rodrigues Decl. ¶¶ 14, 16, and he has viewed elephants there all his life for personal enjoyment. *Id.* ¶ 17. He considers the import ban to help conserve elephants and fears his ability to view elephants in the future will be compromised if hunting and poaching continue. *Id.* ¶¶ 18, 21. Although Rodrigues does not state specific plans to view elephants in the future, the Court finds that his proximity to elephants in Zimbabwe and the nature of his work through ZCTF demonstrates that he has credible plans to continue use and enjoyment of African elephants in Zimbabwe. *Forest Serv. Emps.*, 726 F. Supp. 2d at 1221.

Further, the Court finds that Rodrigues's individual, particularized interest runs to ZCTF, which he founded and operates, and to Friends of Animals, of which he is a member. *See Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002), citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342–43 (1977) (an association has standing to sue on behalf of its members if "(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit"). Given this, the Court finds that movants have shown the requisite interest in the case.[2]

---

2     The Court notes that there is no dispute that protecting African elephants is germane to ZCTF's and Friends of Animals' stated purposes of protecting animals from poaching and sport-hunting, or that Rodrigues need not participate individually in the lawsuit, as required for organizational standing. *Sierra Club*, 292 F.3d at 898.

### III. Movants' claimed injury may be redressed by the Court.

Plaintiffs also assert that movants' alleged injury will not be redressed by this litigation because this case concerns the importation, not the hunting, of elephants in Zimbabwe, and hunters remain free to hunt elephants there. Opp. at 10–12. Plaintiffs cite *Fund for Animals v. Norton*, 295 F. Supp. 2d 1, 6 (D.D.C. 2003) to support their position. In that case, a district court held that an animal rights group did not have standing to challenge importation permits issued by the FWS for argali sheep hunted in Mongolia, Kyrgyzstan, and Tajikistan because "even if the Service allowed no import permits, the three governments would remain as free as they now are to permit the sport hunting of argali [sheep] in their own countries." *Id.* at 7. In other words, even if argali sheep could not be imported into the United States from these three countries, the sheep could still be hunted there, so the movants' interests in protecting the sheep would not be redressed by a ruling that revoked import permits.

The Court recognizes the factual analogies between that district court case and this case, but it finds a Court of Appeals decision in the same case to be instructive. In *Fund for Animals v. Norton,* 322 F.3d 728 (D.C. Cir. 2003), the Court of Appeals reversed the district court's denial of a separate motion to intervene filed by Mongolia's Natural Resources Department ("NRD"). It held that the NRD was entitled to intervene as of right because if the plaintiff succeeded in barring imports of argali sheep into the United States, the NRD would lose fees that sports hunters paid, a primary source of funding for Mongolia's argali conservation program. *Id.* at 733. The fact that the government of Mongolia could continue to allow hunting and that any lost revenues could be recouped from other hunters – just as the government of Zimbabwe continues to allow hunting of elephants and elephants may be killed by other hunters – did not factor into the decision. It was

8

enough that the injury was fairly traceable to the regulatory action and that a decision favorable to NRD would prevent its loss. *Id.*

The Court finds that same reasoning applicable here. Although hunting elephants is still allowed in Zimbabwe, the FWS decision has resulted in U.S. hunters cancelling elephant hunts. *See* 2d Am. Compl. ¶¶ 14–15 (alleging that many Safari Club members will lose money "when they cancel their bookings" and that outfitters, professional hunters, and booking agents have been affected by "cancellations by U.S. hunters and the lack of interest from U.S. hunters to book future hunts"); *see also* John Holdridge Decl., Ex. R to Pls.' Mem. of P. & A. in Supp. of Mot. for Prelim. Inj. ("Prelim. Inj. Mem.") [Dkt. # 4-22] ¶ 6 (stating that declarant cancelled an elephant hunt in Zimbabwe planned for July 2014 because of the import suspension); Richard Capozza Decl., Ex. AA to Prelim. Inj. Mem. [Dkt. # 4-31] ¶ 10 (stating that declarant cancelled a hunt in Zimbabwe planned for August 2014 for the same reason). Thus, the cancellation of hunts in Zimbabwe is fairly traceable to the FWS decision not to issue an enhancement finding, and a decision favorable to movants that keeps the FWS's determination in place will affect their interest in viewing and protecting elephants.[3] Given this, the Court finds that the harm movants claim may be redressed by this litigation.

### IV. Movants satisfy the requirements of Rule 24(a) concerning timeliness and inadequacy of representation.

Finally, ZCTF and Friends of Animals satisfy the other requirements of Rule 24(a) to intervene as of right. Plaintiffs do not challenge the timeliness of the motion or the inadequacy of

---

3   Whether the cancellation of elephant hunts *helps* African elephants, as movants contend, or *harms* them, as plaintiffs contend, is a merits question that will be addressed at the summary judgment stage of this case. At this juncture of the proceedings, it is enough that movants are "so situated" that disposing of the case may impair or impede their ability to protect their interest and it is likely that the Court can redress movants' injury. Fed. R. Civ. Pro. 24(a); *Fund for Animals, Inc. v. Norton*, 322 F.3d at 732–33.

defendants' ability to represent movants' interests. Because the motion was filed before briefing on the merits was scheduled and before the Court granted plaintiffs' leave to file a second amended complaint, the Court finds the motion timely.

It also finds that defendants may not represent movants' interests adequately. This requirement is satisfied "'if the applicant shows that representation of his interest may be inadequate; and the burden of making that showing should be treated as minimal.'" *Fund for Animals, Inc.*, 322 F.3d at 735, quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). While both defendants and movants support the Zimbabwe determination, their differing views on the role of sport-hunting in protecting wildlife may cause their interest to diverge during the course of this litigation such that defendants will not adequately represent movants' interests.

## CONCLUSION

For the reasons stated above, the Court finds that movants have standing and have satisfied the requirements to intervene as of right under Rule 24(a). It therefore GRANTS the motion to intervene as of right [Dkt. # 45] and directs the Clerk of the Court to enter movants' proposed answer [Dkt. # 50-1] on the docket.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, on March 12, 2015.