**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SAFARI CLUB INTERNATIONAL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Civ. No. 14-cv-00670 (RCL) |
| | ) | |
| v. | ) | |
| | ) | |
| SALLY M. R. JEWELL, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**SAFARI CLUB INTERNATIONAL AND THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S MOTION TO COMPEL SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD AND TO ADMIT EXTRA-RECORD EVIDENCE**

Safari Club International and the National Rifle Association of America (SCI/NRA) move to compel Defendants, Sally M. R. Jewell, U.S. Department of the Interior, Daniel Ashe, and U.S. Fish and Wildlife Service ("Federal Defendants") to supplement one of the Administrative Records ("ARs") involved in this case with a document that should have been included initially and that is necessary to complete the AR.  In addition, SCI/NRA move this Court to admit extra-record evidence that demonstrates that Federal Defendants failed to consider all the relevant factors necessary for their decisions to ban importation of legally sport-hunted elephants from Zimbabwe.

SCI/NRA have conferred with counsel for Federal Defendants and Defendant-Intervenors pursuant to Local Civil Rule 7(m).  Counsel for Federal Defendants informed counsel for SCI/NRA that Federal Defendants oppose this motion.  Counsel for Defendant-Intervenors informed SCI/NRA that Defendant-Intervenors will oppose this motion for the present.

WHEREFORE, SCI/NRA respectfully request that this Court order Federal Defendants to supplement the July Administrative Record previously certified in this case to include:

An e-mail dated June 7, 2002 from Tim Van Norman to Richard McDonald entitled

"Zimbabwe leopard permits" ("Van Norman E-mail") Exhibit A.

SCI/NRA further request that this Court admit as extra-record evidence:

An e-mail, dated June 14, 2002, from Karl Stromayer to Kenneth Stansell, entitled "Visit

to Zimbabwe and some issues concerning sport hunting and rhino in Zimbabwe"

("Stromayer E-mail") Exhibit B.


**SAFARI CLUB INTERNATIONAL AND THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD AND TO ADMIT EXTRA-RECORD EVIDENCE**

## I.   Introduction

SCI/NRA move this Court to compel Federal Defendants to supplement one of the ARs previously certified in this case with a document that should have been included initially and that is necessary to complete the administrative record.  SCI/NRA further move this Court to admit extra-record evidence that demonstrates that Federal Defendants failed to consider all the relevant factors necessary for their decision-making.

In this matter, SCI/NRA bring procedural and substantive challenges to two decisions of the Federal Defendants concerning importation of legally sport-hunted elephants from Zimbabwe.[1]  SCI/NRA challenged both Federal Defendants' initial April 4, 2014 decision to ban

---

[1] SCI/NRA's lawsuit also included challenges to Federal Defendants' decision to ban the importation of legally sport-hunted elephants from Tanzania. On December 26, 2014, this Court granted Federal Defendants' motion to dismiss the Tanzania claims.  Dkt. 47.  For that reason, this motion addresses only the ARs concerning Federal Defendants' Zimbabwe importation

the importation of elephants from Zimbabwe and Federal Defendants' subsequent July 31, 2014

decision to continue the importation ban through December 31, 2014.  Federal Defendants

produced an AR for each of the challenged decisions.  The AR for Federal Defendants' July 31,

2014 decision ("July AR") is not complete.

After reviewing each of the two ARs that Federal Defendants certified, SCI/NRA alerted

Federal Defendants to several documents that should have been part of, yet were missing from,

one or both of the ARs.  The parties extensively discussed the excluded documents and reached

agreement on supplementing the ARs with several documents.  In the end, SCI/NRA and Federal

Defendants could not agree on the need for inclusion of one document that should be part of the

July AR.  SCI/NRA maintains their position that this document, the Van Norman E-mail,

belongs in the July AR.  Alternatively, if this Court concurs with Federal Defendants that this

document is not part of the July AR, SCI/NRA move for the admission of the Van Norman E-

mail as extra-record evidence.  Federal Defendants' failure to consider this document in making

the July 31, 2014 decision to continue the importation ban for Zimbabwe demonstrates that

Federal Defendants did not consider all the relevant factors necessary for their decision-making.

In addition, SCI/NRA have identified a second document that Federal Defendants did not

include in either the AR for the April 2014 importation decision ("April AR") or the July AR.

Based on Federal Defendants' insistence that they did not consider this document in making their

decisions to ban elephant importation on April 4, 2014, and subsequently to continue the

importation ban in July 2014, SCI/NRA request that this Court admit the document as extra-

record evidence.  The document demonstrates that, in making its April 4, 2014 and July 31, 2014

---

decisions.  SCI/NRA have moved this Court to certify its ruling dismissing the Tanzania claims
so that SCI/NRA can immediately appeal the decision to the D.C. Circuit Court of Appeals.  Dkt.
53.

decisions to ban the importation of elephants from Zimbabwe, Federal Defendants failed to consider factors relevant to those decisions.

**II.  Factual Background**

On April 4, 2014, Defendant U.S. Fish and Wildlife Service ("FWS" or "Service") abruptly suspended the importation of sport-hunted African elephants taken in Tanzania and Zimbabwe during 2014.  The FWS gave no prior notice of these decisions to the public or to the two countries directly affected by the bans.  On April 21, 2014, SCI filed this lawsuit to challenge those importation ban decisions.  Dkt. 1.  On May 16, 2014 the Complaint was amended to include the NRA as a plaintiff.  Dkt. 13.  On July 31, 2014, the Service published its separate decision to continue the importation ban for Zimbabwe through the end of 2014.  On December 26, 2014 this Court granted SCI/NRA leave to amend and supplement their complaint to include challenges to the July 31 importation ban decision.  Dkt. 47.

SCI/NRA's Second Amended and Supplemented Complaint asserts both procedural and substantive challenges to Federal Defendants' April and July importation ban decisions.  Dkt. 49.  SCI/NRA's procedural challenges that are relevant to this motion include but are not limited to the following:

1)  Federal Defendants violated their self-imposed requirements for reversing their position on enhancement of survival of Zimbabwe's elephants by implementing the importation ban without first publishing their decisions in the Federal Register and by basing their decisions on a lack of information rather than new information.  Second Amended and Supplemented Complaint, Count I.

2)  Federal Defendants violated Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 551(4), rulemaking requirements by failing to give the public notice of their

4

change in position and a formal opportunity to comment on that change in position for both the April 4, 2014 and July 31, 2014 importation ban decisions.  *Id.*, Count III.

During this litigation, SCI has also sought information directly from the FWS concerning the basis of the two importation ban decisions via two Freedom of Information Act ("FOIA") requests.  The FWS's responses to these FOIA requests have assisted SCI/NRA in identifying documents that Federal Defendants excluded from the ARs.

On April 8, 2014, SCI submitted a Freedom of Information Act request ("April FOIA Request") to the FWS pursuant to 5 U.S.C. § 552.  The April FOIA Request sought copies of:

> (1) Any documents, records or data regarding or supporting the enhancement of survival findings made by the U.S. Fish and Wildlife Service ("FWS") for the importation of sport-hunted African elephant Zimbabwe (*see* 62 Fed. Reg. 44627, 44633 (Aug. 1997) and 63 Fed. Reg. 63210, 63214 (Nov. 1998). The Federal Register notices state that the enhancement finding for Zimbabwe is on file in the Division of Management Authority, which is a part of the FWS.
>
> (2) Any documents, records or data considered by the FWS as evidence regarding or in support of any determinations, subsequent to 1998, that the importation of sport-hunted elephant trophies from Zimbabwe enhances the survival of the species.
>
> (3) Any documents, records or data the FWS considered and/or used regarding its early April 2014 decision to revoke its enhancement finding for Zimbabwe and suspend the importation of sport-hunted elephant trophies from Zimbabwe.
>
> (4) Any documents, records or data regarding the general non-detriment advices made by the FWS for the importation of sport-hunted elephant trophies from Tanzania (60 Fed. Reg. 12969-02 (Mar. 1995)).
>
> (5) Any documents, records or data the FWS considered and/or used regarding its early April 2014 decision to suspend the importation of sport-hunted elephant trophies from Tanzania.
>
> (6) Any documents, records, or data that the FWS considers evidence of the total number of elephants in both Zimbabwe and Tanzania (separately) that contributed to the decision to suspend the importation of sport-hunted trophies from these countries in April 2014.

Exhibit C.  SCI submitted a second FOIA request to the FWS on July 24, 2014 ("July FOIA

Request)" asking for copies of:

> Any documents, records or data regarding or supporting the enhancement of
> survival finding made by the U.S. Fish and Wildlife Service on July 22, 2014 for
> the importation of sport-hunted African elephant trophies from Zimbabwe during
> 2014.

Exhibit D.

SCI/NRA submitted their first request for supplementation of the April AR in August

2014, not long after Federal Defendants initially certified the April AR.  Upon SCI's receipt of

the April AR, SCI/NRA immediately noticed the absence of documents pertaining to changes

that the FWS made to the April 4, 2014 Zimbabwe enhancement finding during the period

between April 4th and April 17th.  Specifically, SCI/NRA sought documents that explained

Federal Defendants' amendment of the original implementation date of the importation ban.  The

April 4, 2014 "Enhancement Finding for African Elephants Taken as Sport-hunted Trophies in

Zimbabwe in 2014" ("April 4th Enhancement Finding") implemented the importation ban

retroactively, making it illegal for hunters to import elephants taken in Zimbabwe from January

1, 2014 forward.  Subsequently, on April 17, 2014, Federal Defendants amended the April 4th

Enhancement Finding so that the importation ban only applied to elephants hunted on or after

April 4, 2014.  April 17, 2014 "Enhancement Finding for African Elephants Taken as Sport-

hunted Trophies in Zimbabwe in 2014" ("April 17th Enhancement Finding").  On August 29,

2014, in response to SCI/NRA's request for supplementation of the April AR, Federal

Defendants amended the April AR to add nine documents pertaining to the revision.  Dkt. 39.[2]

---

[2] Federal Defendants appear to have filed an inaccurate and incomplete Amended Certified List
of the Contents of the Administrative Record in Dkt. 39-1.  The List of Contents filed contains
only 198 documents.  It is SCI/NRA's understanding that the current April AR contains 230

On October 14, 2014, SCI/NRA provided Federal Defendants with a list of nine additional items missing from the April AR that Federal Defendants had either referenced in the April 4th or 17th Enhancement Findings for Zimbabwe or in other documents that were part of the April AR.  Exhibit E. The nine items were:

1.  E-mail dated June 14, 2002, from Karl Stromayer with the subject line reading "Visit to Zimbabwe and some issues concerning sport hunting and rhino in Zimbabwe" (Stromayer E-mail).

2.  E-mail dated March 6, 2006, from Richard Ruggiero with the subject line reading "Fw: [african-elephant] Zimbabwe auctions elephants, leopards and lions to hunters"; a forwarded message from Melissa Groo dated March 6, 2006.

3.  The Fish and Wildlife Service's Enhancement Finding dated July 2, 1997.

4.  The 1997 Elephant Management Plan, as referenced in the April 4, 2014, Enhancement Finding.

5.  Copies of the letters sent on "several occasions" to Zimbabwe wildlife authorities requesting information on the management plan, population status, hunting policies and regulations and conservation programs, with the most recent letter dated March 21, 2007, as referenced in the April 4, 2014, Enhancement Finding.

6.  Zimbabwe's responses to number 5. above, "consisting of three undated and unsigned papers," as referenced in the April 4, 2014, Enhancement Finding.

7.  Information supplied by the CAMPFIRE Association to the CITES Panel of Experts, as referenced in the April 4, 2014, Enhancement Finding.

8.  Articles referenced at the end of the April 4, 2014 Zimbabwe Enhancement Finding, specifically:
    a.  Anon. (2009a). Ministers in illicit rhino horn trade. Zimbabwe Standard, 11 July 2009.

    b.  Anon. (2009b). Mnangagwa police docket disappears. Zimeye, 13 July 2009.

---

documents.  SCI/NRA believe this was an accidental oversight that will be corrected upon resolution of this motion.  SCI/NRA have notified Federal Defendants of this issue.

On October 31, 2014, Federal Defendants responded by e-mail and provided copies of the documents SCI/NRA had identified as items 7, 8a and 8b above.  Federal Defendants did not provide the items identified as 1-6 in SCI/NRA's e-mail request, stating "[t]he Service does not agree that the remaining items are part of the records because the Service did not consider those documents either directly or indirectly in making the findings."  E-mail from Meredith Flax, counsel for Federal Defendants, to Anna Seidman, counsel for SCI, October 31, 2014.  Exhibit F.

After SCI/NRA amended their case to include challenges to the July 2014 importation ban decision, Federal Defendants became obligated to produce a separate AR for the July decision.  Federal Defendants filed their Certified List of the Contents of the Administrative Record for July 2014 on February 10, 2015.  Dkt. 60.   On March 4, 2015, counsel for SCI sent an e-mail to counsel for Federal Defendants, reasserting SCI/NRA's position that the six previously identified documents missing from the April AR should be supplied and included in the April AR.  Exhibit G.  SCI/NRA also requested the supplementation of the July AR to include Items 1, 2, 5 and 6 from that list

In their response dated March 11, 2015, Federal Defendants reiterated their position that the FWS did not directly or indirectly consider Item 1 -- the Stromayer E-mail.[3] Exhibit H. Federal Defendants reversed their position with regard to the inclusion of Items 3 through 6 that SCI/NRA had originally identified as missing from the April AR.  Federal Defendants also agreed to supplement the July AR with Items 5 and 6.  *Id.*

---

[3] On March 30, 2015, SCI/NRA informed counsel for Federal Defendants that they would not move to compel inclusion of Item 2 – the e-mail dated March 6, 2006, from Richard Ruggiero with the subject line reading "Fw: [African-elephant] Zimbabwe auctions elephants, leopards and lions to hunters."

SCI/NRA's March 4, 2014 e-mail also identified three additional sets of documents as missing from the July AR.  Exhibit G.  SCI/NRA became aware of the existence of these documents in part because of their inclusion in the FWS's response to SCI's July FOIA Request. The identified documents are:

A.     Commencing with e-mail dated May 9, 2002, from Raoul Dutoit with the subject line reading "Bubiana, Zimbabwe" and all e-mails in this chain bearing this subject line. We obtained this document from the FWS in response to our Freedom of Information Act request for "any documents, records or data regarding or supporting the enhancement of survival finding made by the U.S. Fish and Wildlife Service on July 22, 2014 for the importation of sport-hunted African elephant trophies from Zimbabwe during 2014."

B.     E-mail dated June 6, 2002 from Tim Van Norman with the subject line reading "Zimbabwe leopard permits."  We obtained this document from the FWS in response to our Freedom of Information Act request for "any documents, records or data regarding or supporting the enhancement of survival finding made by the U.S. Fish and Wildlife Service on July 22, 2014 for the importation of sport-hunted African elephant trophies from Zimbabwe during 2014." (Van Norman E-mail);

C.     Attachments to an e-mail sent by Michelle Tacconelli of the Safari Club International Foundation to FWS, Chief, Branch of Permits, Tim Van Norman on July 9, 2014.  Although the E-mail was included in the July AR, the attachments to the e-mail were not included.

*See* Exhibit G.

In their March 11, 2015 e-mail Federal Defendants agreed to supplement the existing July AR with Item C above – attachments to an e-mail sent by the Safari Club International Foundation to the FWS.  SCI/NRA subsequently informed Federal Defendants that they would not move to supplement the July AR with Item A.  Of the three items, Federal Defendants and SCI/NRA remained in disagreement over only Item B, the Van Norman E-mail.  Federal Defendants refused to supplement the AR with the Van Norman E-mail, stating that "the Service

did not consider these emails directly or indirectly in making its finding." E-mail from Meredith Flax to Anna Seidman, March 11, 2015, Exhibit H.

In their March 11, 2015 e-mail Federal Defendants also requested that SCI/NRA explain their position that Federal Defendants should include the disputed documents from both lists in both ARs. SCI/NRA responded by e-mail on March 16, 2015. Concerning the Stromayer E-mail, SCI/NRA explained:

> This e-mail is the report of one of the few (if not the only) FWS employees to actually visit Zimbabwe and view and report first-hand on the population information about elephants, elephant habitat conditions and details about elephant hunting in Zimbabwe.

E-mail from Anna Seidman to Meredith Flax, March 16, 2015. Exhibit I.

The Stromayer e-mail was sent by the author to multiple FWS personnel, including Kenneth Stansell, who was at the time the Assistant Director of the U.S. Fish and Wildlife Service for International Affairs. In the e-mail, Mr. Stromayer explained, concerning his visit to Zimbabwe that, "[a]t the request of Tim Van Norman and Michael Carpenter I was also able to glean some information concerning elephant and leopard populations and sport hunting (seasons) in Zimbabwe." Stromayer E-mail, Exhibit B. Importantly, Mr. Stromayer explained that recent aerial surveys suggested that there were at the time approximately 88,000 elephants in Zimbabwe, "whereas *the carrying capacity of the elephant range is thought to be in the 42,000-45,000 range.*" *Id*. (emphasis added). Mr. Stromayer's e-mail provided the Service with first hand data relevant to the population status of Zimbabwe's elephants.

In their March 16, 2015 e-mail to Federal Defendants, SCI/NRA also provided the basis for their request for the inclusion of the Van Norman E-mail in the July AR:

> We obtained these documents from the U.S. Fish and Wildlife Service in response to our Freedom of Information Act Request for "any documents, records or data regarding or supporting the enhancement of survival finding made by the U.S.

Fish and Wildlife Service on July 22, 2014 for the importation of sport-hunted
African elephant trophies from Zimbabwe during 2014."  These were documents
that the FWS determined to be responsive to our FOIA request.

E-mail from Anna Seidman to Meredith Flax, March 16, 2015.  Exhibit I.

SCI requested the inclusion of the Van Norman E-mail because Mr. Van Norman is the

Chief, Branch of Permits of the FWS and he is also the individual who signed the April and July

2014 Enhancement Findings for the FWS.  In his 2002 e-mail, Mr. Van Norman addressed

potential importation decisions concerning leopards and elephants from Zimbabwe.  Mr. Van

Norman expressed his understanding of the correct process for the FWS to follow to reverse its

position on the legality of the importation of sport-hunted animals from Zimbabwe.  Contrary to

the manner in which Federal Defendants implemented the immediate ban in 2014 on the

importation of Zimbabwe elephants -- based on a lack of information and without publishing the

decision in the Federal Register -- Mr. Van Norman explained in his 2002 e-mail that a lack of

information could not justify an importation ban and that publication in the Federal Register

would be required.  He wrote:

> After much discussion, we have decided to go ahead and issue all of the
> Zimbabwe leopard permits currently in house.  While we are concerned about
> what is happening in Zimbabwe and the increase in poaching, we don't really
> have enough information to deny these applications.  Therefore, lets (sic) get them
> out.
>
> I will be drafting a FR notice on this issue, however.  The notice will identify our
> current concerns and ask for any information people might have.  The notice will
> also state that we do not know at this time whether we would be able to issue
> permits for leopards *or allow elephant imports next year*.  The notice, of course
> must go through the proper channels, so there may be some changes.

Van Norman E-mail, Exhibit A. (emphasis added).  To SCI/NRA's knowledge, Federal

Defendants never found the need to deny leopard import permit applications or to modify its

position on elephant importation from Zimbabwe until April 4, 2014 when it implemented the

elephant importation ban.

On March 19, 2015, Federal Defendants responded to SCI/NRA's explanations.

Pertaining to the Stromayer E-mail, Federal Defendants persisted in their refusal to include this

document in the ARs:

> The Service maintains its position that none of these emails are part of the records
> for the respective findings.  With respect to item 1, the Service produced the email
> in response to a FOIA request that was broader in scope than just the April
> enhancement finding. The Service is not certain where the information contained
> in the email came from and did not consider this email in making the April or July
> findings.

E-mail from Meredith Flax to Anna Seidman, March 19, 2015, Exhibit J.  Federal Defendants

offered no explanation as to why they could not or did not direct questions about the source of

the information in the e-mail to the e-mail's author, Karl Stromayer, who remains employed with

the FWS.

Federal Defendants also responded to SCI/NRA's reasoning for requesting the inclusion

of the Van Norman E-mail, missing from the July AR.  Federal Defendants simply stated that

"the Service erroneously produced these emails in response to our client's July FOIA request.

The Service did not consider these emails in making the July finding."  E-mail from Meredith

Flax to Anna Seidman, March 19, 2015, Exhibit J.  Federal Defendants failed to acknowledge

that it had been Mr. Van Norman who had signed the cover letter that accompanied the e-mail

and the other documents that made up the first installment of the FWS's response to SCI's July

24, 2014 FOIA request.  Letter signed by Tim Van Norman on December 4, 2014, Exhibit K.

Ultimately, as a result of negotiations on the contents of the two ARs, SCI/NRA and

Federal Defendants now disagree on only two items.  Based on the fact that Federal Defendants

excluded the Van Norman E-mail, a document authored by one of the key decision-makers for

the importation bans containing information that he could not have ignored in his decision-making, SCI/NRA move to have this document included in the July AR.[4]  Based on Federal Defendants' position that they did not consider the Stromayer E-mail in making their importation ban decisions, SCI/NRA move to have this document admitted as extra-record evidence.

### III. Argument

#### A.  The Van Norman E-mail Is Part of the July AR

The Van Norman E-mail meets the standards for inclusion in the July AR.  As indicated above Mr. Van Norman serves as the Chief, Branch of Permits for the FWS and was one of the key decision-makers for the April and July 2014 importation bans.  It is his signature that appears on the April and July Enhancement Findings.  The Van Norman E-mail memorialized information that was part of Mr. Van Norman's knowledge base and that remained available for his use in making the April and July importation ban decisions.  It defies belief that the information in the e-mail was not considered by the individual who drafted the e-mail and who possessed the knowledge necessary to author that e-mail.  Even if Mr. Van Norman did not specifically reread the e-mail prior to making the April and July importation ban decisions, his knowledge, by virtue of his authorship, demonstrates a form of indirect consideration of the contents of that e-mail.  Mr. Van Norman would have had to find a way to compartmentalize the information in his memory in order to not consider the contents of the e-mail when making the April and July importation decisions.

SCI received the Van Norman E-mail as one of the documents provided by the FWS in response to SCI's July 24, 2014 FOIA request for "[a]ny documents, records or data regarding or

---

[4] Alternatively, SCI/NRA move to have this e-mail admitted as extra-record evidence.

supporting the enhancement finding made by the U.S. Fish and Wildlife Service on July 22, 2014 for the importation of sport-hunted African elephant trophies from Zimbabwe during 2014." (Exhibit D).  The FWS sent the response to this FOIA request to SCI with a cover letter dated December 4, 2014.  (Exhibit K).  The FOIA Response cover letter was signed by the author of the e-mail, Tim Van Norman.  If anyone should have known whether Mr. Van Norman considered an e-mail he authored in his making of the July importation ban decision, it was Mr. Van Norman himself.  The e-mail was in the FWS's files, fully accessible to Mr. Van Norman at the time of the decision-making.  It was not until SCI/NRA questioned the absence of the e-mail from the July AR that attorneys at the Department of Justice who represent the Federal Defendants communicated the position that the email was erroneously included in the FOIA response.

The case law establishes that this e-mail should be part of the April and July ARs.  The Administrative Procedure Act ("APA") provides that this Court must "review the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  The standard for what constitutes the "whole record" is well established.  "Courts in this Circuit have 'interpreted the whole record to include all documents and materials that the agency directly or indirectly considered . . . [and nothing] more nor less.'" *City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 287 (D.D.C. 2013) (quoting *Pac. Shores Subdivision, Val. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (quoting *Maritel*, *Inc. v. Collins*, 442 F. Supp. 2d 188, 196 (D.D.C. 2006). An agency that compiles an AR "enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary."  *Maritel,* 442 F. Supp. 2d at 196. To overcome that presumption, the plaintiff must submit concrete evidence that the documents to

be added to the record were actually before the agency decision-makers.  *Sara Lee Corp. v. American Bakers Ass'n,* 252 F.R.D. 31, 34 (D.D.C. 2008).

As to the Van Norman E-mail, SCI/NRA have rebutted the presumption of regularity. Concrete evidence appears through Mr. Van Norman's authorship of the e-mail and his initial admission that he considered the document by including it in the FWS's response to SCI's FOIA request for "any documents records or data regarding or supporting the enhancement finding made by the U.S. Fish and Wildlife Service on July 22, 2014 for the importation of sport-hunted African elephant trophies from Zimbabwe during 2014."

The D.C. Circuit has determined that the administrative record can be supplemented in the presence of one of three circumstances: (1) if the agency "deliberately or negligently excluded documents that may have been adverse to its decision," (2) if background information was needed "to determine whether the agency considered all the relevant factors," or (3) if the "agency failed to explain administrative action so as to frustrate judicial review[.]" *City of Dania Beach v. FAA,* 628 F.3d 581, 590 (D.C. Cir. 2010), *quoting Am. Wildlands v. Kempthorne,* 530 F.3d 991, 1002 (D.C. Cir. 2008).  The first circumstance applies to this matter.  The Van Norman E-mail is adverse to the FWS's decision.  The contents of the document contradict the process that Federal Defendants followed in April and July of 2014 in their decisions to implement importation bans based on lack of information and without providing formal notice and an opportunity for the public to comment.

Federal Defendants' attorneys reversed the agency decision-maker's own admission that he considered the document.  Even if Mr. Van Norman did not expressly consider the document itself, his knowledge of the information in the e-mail based on his authorship of that e-mail demonstrates indirect consideration of its contents.

An agency does not have unlimited discretion in its selection of the contents of the AR.

The *City of Duluth* court explained which items an agency may ***not*** exclude from the AR:

> [A]n agency "may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made." Further, the agency may not exclude information from the record simply because it did not "rely" on the excluded information in its final decision. Rather, "a complete administrative record should include all materials that ***might have influenced the agency's decision***[.]"

*City of Duluth,* 968 F. Supp. 2d at 288 (emphasis added)(citations and internal quotes omitted).

The information that enabled Mr. Van Norman to author the e-mail most certainly qualifies as data that "might have influenced" the decision-making for the more recent importation bans.

A 2006 U.S. Department of the Interior manual for the compilation of administrative records further supports supplementation of the ARs with the Van Norman E-mail. The "Standardized Guidance on Compiling a Decision File and an Administrative Record" (June 27, 2006) ("DOI Guidance") (Exhibit L) lays out "standardized procedures for compiling . . . an administrative record for judicial review." Part A, I. The DOI Guidance provides that three categories are included in an AR: (1) primary documents; (2) relevant documents; and (3) supporting documents. Part C, IV. "Primary documents record the agency action that is or may be challenged." *Id.* Relevant documents "bear a logical connection to the matter considered and . . . contain information related to the agency decision at issue." *Id.* Supporting documents "explain the agency decision-making process, were before or available to the decision-maker at the time the decision was made, and were relied upon or considered by the agency during the decision-making process." *Id.*

To implement the DOI Guidance, the FWS included as part of its Service Manual a section entitled "Compiling a Decision File and an Administrative Record." 282 FW 5 ("FWS Directive") (Exhibit M). The FWS Directive states that "[a]ll Service employees who are

responsible for Service decisions and establishing an administrative record must follow the [DOI] guidance." *Id.* at 5.2.  Specifically, the FWS Directive provides that, among other things, "[a]ll records . . . that people involved in the decision used or that were available to them when they were making the decision" should be in the AR. *Id.* at 5.8.A.   The Van Norman E-mail qualifies as a supporting document that the Department of the Interior itself acknowledged must be included in the AR.  The e-mail explained the FWS's decision-making process for reversing its position on importation decisions and was available to Mr. Van Norman both from his personal awareness of the contents of the document and its presence in FWS files.  In accordance with the FWS's Directive and the DOI Guidance, the Van Norman E-mail should be included in the July AR.[5]

### B.   The  Stromayer E-mail Should Be Admitted as Extra-Record Evidence

The Stromayer E-mail demonstrates that Federal Defendants failed to consider factors relevant to its April and July decisions to ban the importation of elephants from Zimbabwe. Federal Defendants insist that they did not consider the Stromayer E-mail in making the importation ban decisions.  Thus, the Stromayer E-mail constitutes extra-record evidence.  In *Esch v. Yeutter*, the D.C. Circuit listed eight exceptions that courts had applied to allow the admission of evidence that was not part of the complete Administrative Record:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the

---

[5] Alternatively, if this Court denies SCI/NRA's motion to compel supplementation of the AR with the Van Norman E-mail, SCI/NRA moves to have this document admitted as extra-record evidence.  See Section III. C.

National Environmental Policy Act; and (8) in cases where relief is at issue,
especially at the preliminary injunction stage.

876 F.2d 976, 992 (D.C. Cir. 1989).  The admission of extra-record evidence is the exception,

rather than the rule.  This Court has explained that "[t]he *Esch* exceptions are to be 'sparingly

applied to only those cases where extra-record evidence [is] necessary to make judicial review

effective.'" *Hill Dermaceuticals Inc. v. U.S. Food and Drug Admin*., 2012 WL 5914516, *8

(May 18, 2012) *quoting Cape Hatteras Access Preserv. Alliance v. U.S. Dep't of Interior,* 667

F.Supp.2d 111, 115 (D.D.C. 2009).

This Court further explained that the *Esch* exceptions are more properly applied in the

context of challenges to the procedural validity of an agency decision.  *Cape Hatteras Access*

*Preserve Alliance v. U.S. Dept. of Interior*, 667 F. Supp. 2d 111, 115 (D.D.C. 2009).  Further, in

*Cape Hatteras*, this Court recognized that the D.C. Circuit has more recently acknowledged only

four of the *Esch* exceptions to allow the introduction of evidence that had not been considered

directly or indirectly by the agency decision-makers.

(1) when the agency failed to examine all relevant factors; (2) when the agency
failed to explain adequately its grounds for decision; (3) when the agency acted in
bad faith; or (4) when the agency engaged in improper behavior.

*Id*. at 116.  The admission of the Stromayer E-mail as extra-record evidence fulfills these criteria.

The Stromayer E-mail focuses, in part, on a factor extremely relevant to Federal

Defendants' decision to ban the importation of elephants from Zimbabwe, but apparently not

examined by the Federal Defendants.  The Stromayer E-mail addresses the "carrying capacity"

of elephants in Zimbabwe.  The carrying capacity of Zimbabwe's elephants has always been a

significant factor in the FWS's consideration of the status and conservation of the species.  For

example, in 1991, Federal Defendants published a proposal to modify the status of some African

18

elephant populations from threatened to endangered and proposed revisions to the special rule

applicable to the importation of elephants.  In that proposed rule, the FWS explained:

> [R]elatively large numbers of elephants still exist in available habitat scattered throughout their continental range. These populations, if properly managed, could provide sustainable elephant populations ***in balance with available habitat carrying capacity***.

53 Fed. Reg. 11392, 11393 (Mar. 18, 1991) (emphasis added).  Two years later, the FWS

proposed guidelines concerning factors that the Service would consider when evaluating

management programs and elephant populations in specific countries to ensure that the activity

would enhance the survival of the species.  The guidelines specifically noted the significance of

carrying capacity as an element of a country's establishment of population goals:

> The guidelines were prepared to provide guidance as to the components of an effective management plan and are considered to be consistent with other Service efforts to promote long-term management of the African elephant. The criterion for an increasing or stable population encompasses the concept ***that a country may establish a population goal based on habitat carrying capacity*** or other long-term considerations, and, in being managed towards that goal, the population may actually decrease in absolute numbers.

58 Fed. Reg. 7813, 7814 (Feb. 9, 1993) (emphasis added).[6]

Although evidence was available to Federal Defendants concerning the carrying capacity

of elephants in Zimbabwe, by their own admission, Federal Defendants did not consider that

evidence.  The April and July Enhancement Findings confirm Federal Defendants' failure to

consider carrying capacity.  Nothing in those Findings suggests that Federal Defendants took

carrying capacity into consideration in making their decisions whether to ban the importation of

---

[6] SCI/NRA do not seek to introduce the proposed guidelines as extra-record evidence.  SCI/NRA quote the guidelines only to demonstrate the relevance that Federal Defendants have consistently attributed to carrying capacity in addressing elephant conservation and management.  SCI/NRA seek only to have this Court admit the Stromayer E-mail that specifically identified the existing carrying capacity of elephants in Zimbabwe.

elephants from Zimbabwe.  For example, the April 17, 2014 Enhancement Finding addressed only the gross population numbers of elephants in Zimbabwe as opposed to the numbers that Zimbabwe's habitat could support.  April 17, 2014 Enhancement Finding at 4.[7]

The FWS's own publications demonstrate that carrying capacity has been a relevant factor in the FWS's consideration of the status and conservation of African elephants.  Because Federal Defendants did not consider carrying capacity evidence, obtained by and reported by one of its own personnel during a visit to Zimbabwe for the purpose of researching the elephant population situation, Federal Defendants failed to consider a factor extremely relevant to their decision-making.  An understanding of the appropriate carrying capacity of elephants, and of the significance of Federal Defendants' failure to take into account Zimbabwe's elephant carrying capacity, is necessary for this Court to effectively review and evaluate the legality of Federal Defendants' decision-making process.

SCI/NRA asserted procedural challenges arising out of Federal Defendants' decisions to ban elephant importation in April 2014 and to continue the ban in July of 2014.  *See* SCI/NRA Second Amended and Supplemented Complaint, Counts I, III.  As stated in SCI/NRA's Second Amended and Supplemented Complaint, Federal Defendants did not follow APA rulemaking procedures in the course of deciding to implement the ban on elephant importation in April and July of 2014.  *See* Count III.  Federal Defendants did not formally notify the public of its proposed decisions to implement the bans or give the public the opportunity to comment on proposed decisions to implement those bans.  If Federal Defendants had properly notified and provided the public with an opportunity to comment on these decisions, and in doing so informed

---

[7] http://www.fws.gov/international/pdf/enhancement-finding-April-2014-elephant-Zimbabwe.PDF

the public of their intent to rely only on gross population numbers without consideration of the carrying capacity of elephants in Zimbabwe, the public would have been given the opportunity to comment on and dispute Federal Defendants' erroneous analysis and failure to consider all relevant factors.

The Stromayer E-mail demonstrates a relevant factor that Federal Defendants did not consider. SCI/NRA seek admission of the e-mail to enable the Court to effectively review the agency's actions, including its violation of APA procedures in its decision-making.

### C.  If the Court Does Not Grant the Motion to Supplement, the Van Norman E-mail Should Also Be Admitted as Extra-Record Evidence.

The process by which Federal Defendants approached changes in the importation of elephants is relevant to the question of whether Federal Defendants followed the proper procedure in deciding to implement the April and July importation bans. The Van Norman E-mail demonstrates that Federal Defendants knew of the mandatory decision-making process that would have been appropriate for a similar concern in 2002. If this Court denies SCI/NRA's motion to compel Federal Defendants to include the Van Norman E-mail in the July AR, then the Court should admit the e-mail as extra-record evidence. To effectively assess whether the FWS properly complied with APA rulemaking and the agency's own procedures for reversing its position on elephant importation, this Court should admit this document.

### IV. Conclusion

For the reasons stated above, SCI/NRA move for this Court to compel the Federal Defendants to supplement the July Administrative Record with the Van Norman E-mail. If the Court does not grant SCI/NRA's request for this supplementation of the AR, SCI/NRA alternatively request the admission of the Van Norman E-mail as extra-record evidence. In addition, SCI/NRA move this Court to admit as extra-record evidence the Stromayer E-mail.

Both of these documents will aid the Court to effectively review the agency actions challenged here.

Dated:  March 31, 2015                    Respectfully submitted,

                                          /s/Anna M. Seidman
                                          Anna M. Seidman
                                          D.C. Bar No. 417091
                                          Douglas Burdin
                                          D.C. Bar No. 434107
                                          Jeremy Clare
                                          D.C. Bar No. 1015688
                                          501 2nd Street NE
                                          Washington, D.C.
                                          Tel: 202-543-8733
                                          Fax: 202-543-1205
                                          aseidman@safariclub.org
                                          dburdin@safariclub.org
                                          jclare@safariclub.org

                                          *Counsel for Plaintiff*
                                          *Safari Club International*

                                          Christopher A. Conte
                                          D.C. Bar No. 43048
                                          National Rifle Association of America/ILA
                                          11250 Waples Mill Rd., 5N
                                          Fairfax, VA 22030
                                          Telephone: (703) 267-1166
                                          Facsimile: (703) 267-1164
                                          cconte@nrahq.org

                                          *Counsel for Plaintiff*
                                          *National Rifle Association of America*