SAFARI CLUB INTERNATIONAL, *et al.* v. SALLY M. R. JEWELL, *et al.*

SAFARI CLUB INTERNATIONAL AND NATIONAL RIFLE ASSOCIATION OF AMERICA'S MOTION TO COMPEL SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD AND TO ADMIT EXTRA-RECORD EVIDENCE

Case No.: 14-cv-00670 (RCL)

# Exhibit L



United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240

IN REPLY REFER TO:

Memorandum

JUN 27 2006

To: Assistant Secretaries
Directors of Bureaus and Offices

From: David L. Bernhardt
Deputy Solicitor

Subject: Standardized Guidance on Compiling a Decision File and an Administrative Record

The Office of the Solicitor has developed guidance to assist you and your employees when compiling Decision Files and administrative records. This information should be useful to Bureaus and Offices when handling electronic materials and drafts encountered in the decision-making process. In the future, this guidance will be incorporated into the Departmental Manual.

As many of you are aware, decision files and administrative records document the Department's decision-making process and record the basis and rationale for making the decision. Decision Files should be created contemporaneously with development of agency decisions, while administrative records evidence the Department's basis for defending agency decisions.

If you have any questions about the contents of this guidance, please contact Art Gary, Associate Solicitor, Division of General Law.

cc: Regional and Field Solicitors

Attachment

# Department of the Interior
# Standardized Guidance on Compiling a Decision File and an Administrative Record

## PART A – INTRODUCTION

### I. Purpose of This Guidance

The purpose of this guidance is to provide Bureaus and Offices within the Department of the Interior standardized procedures for compiling a Decision File for the records that contemporaneously document any decision and, if necessary, an administrative record ("AR") for judicial review. These procedures apply to the preparation of Decision Files and ARs of agency decisions other than formal rulemaking[1] and administrative adjudication, such as matters before the Office of Hearings and Appeals. Agency personnel should promptly consult the Office of the Solicitor when questions arise concerning the composition of a Decision File and throughout the process of preparing an AR to ensure that they are properly compiled. This guidance establishes internal Department guidelines only.[2]

### II. Importance of Compiling an Accurate and Thorough Decision File and AR

Under the Administrative Procedure Act ("APA"), a court reviews an agency's action (*e.g.*, any decision) to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A). In making this determination, a court evaluates the agency's complete AR. Consequently, the agency must take great care in compiling a complete AR. Courts will generally defer to agency decisions, although the degree of deference often varies. For example, if the Department made a thorough and informed decision, but documentation supporting the decision is not contained in the AR, any deference a court may have given to the agency decision could be lost or diminished.

---

[1] Agency rulemaking proceedings primarily take two forms – formal and informal rulemaking. In general, formal rulemaking results when a statute specifically requires an agency to conduct a trial-like "on the record" hearing and provides interested parties an opportunity to testify and cross-examine adverse witnesses before issuing a particular rule. *See* Administrative Procedure Act ("APA"), 5 U.S.C. §§ 556-557. In contrast, informal or "notice and comment" rulemaking only requires an agency to perform certain notice-and-comment procedural requirements prior to issuing a rule. *See* APA, 5 U.S.C. § 553. For purposes of this guidance use of the term "rulemaking" will include only informal rulemaking unless otherwise specified.

[2] This document does not create any rights, substantive or procedural, that are enforceable at law by any party.

In general, an AR is a compilation of documents[3] that includes the decision-making documents, as well as relevant agency documents generated or received in the course of the decision-making process. The AR should document the process the agency used in reaching its final decision to demonstrate it followed the required procedures, as provided by statute, regulation, and any applicable agency policies, and must explain and rationally support the agency's decisions. Moreover, the AR must demonstrate that the agency considered opposing viewpoints, if any, and provide a thorough explanation as to why the preferred course of action was adopted.

For this and other reasons, it is important that all Bureaus and Offices maintain organized, accurate, and thorough Decision Files that document work on their decisions. A complete Decision File ensures that the decision-maker, typically the individual signing the decision document, has access to information sufficient to render a well-reasoned decision. An agency must also protect the public's interest in government documents, and preserve its own interests, including compliance with the Federal Records Act and related requirements. Finally, if an agency decision is challenged in court, a thorough Decision File will enable the agency to compile an AR sufficient to defend the decision.

The Decision File, and any subsequent AR presented to the court, should:

- Contain the complete "story" of the agency decision-making process, including options considered and rejected by the agency;

- Include important substantive information that was presented to, relied on, or reasonably available to the decision-maker;

- Establish that the agency complied with relevant statutory, regulatory, and agency requirements; and

- Demonstrate that the agency followed a reasoned decision-making process.

The Decision File should be compiled as documents are generated or received during the decision-making process, making it a contemporaneous record of the decision. This practice will also increase agency efficiency and performance should it become necessary to create an AR.

---

[3] The general term for all agency documents is records, which are defined in 44 U.S.C. § 3301 as:
    all books, papers, maps, photographs, machine readable materials [*e.g.*, e-mails, videos, etc.], or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business.
To avoid confusing "records" with "administrative record" and the Department's general records management requirements, this guidance generally refers to individual records as "documents," except where otherwise appropriate.

### III. Relation of Decision File or AR Compilation to Other Agency Record Management and Disclosure Requirements

The Department has multiple responsibilities for the maintenance and disclosure of federal records. For purposes of this guidance, these responsibilities fall into three general categories that often intersect: 1) records management,[4] which includes maintaining a Decision File; 2) the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; and 3) AR compilation.

Documents contained in a Decision File and an AR are not necessarily identical to those that might be released in response to a FOIA request. Although some documents previously released to the public through FOIA may be relevant to the decision and should properly be included in a Decision File and an AR, all documents released in response to a FOIA request may not need to be included in a Decision File and an AR because they are not relevant to the decision or the decision-making process. Conversely, an agency may not be able to disclose all documents in a Decision File or an AR to the public, for example, because they may be covered by a protective order.

This guidance relates only to agency documents identified for inclusion in a Decision File and an AR. Questions concerning general records management, FOIA, and how these statutes and rules relate to an AR should be brought to the attention of the Office of the Solicitor.

## PART B – CREATING A CONTEMPORANEOUS DECISION FILE

### I. The Decision File

A Decision File is the contemporaneous record of the agency's decision-making process. Practically, the Decision File is a collection of documents maintained by a designated employee, generally the employee, the program manager, the project manager, or their staff who has access to relevant documents, that details the development of an agency decision. If the decision is subjected to judicial review, the Decision File will be used as the primary basis for compilation of the AR. Other terms often used by Bureaus and Offices to describe a Decision File include "case file," "action file," "agency file," "official file," or "issue file."

### II. Guidelines For Use in Generating a Decision File

Bureaus and Offices have wide latitude to create and maintain Decision Files, but the following general guidelines should be followed:

- The Office of the Solicitor should be consulted throughout the process as necessary;

---

[4] Federal records management requirements are governed by 44 U.S.C. Chapter 29, which is administered by the National Archives and Records Administration.

- A Decision File should be created once consideration of a decision begins, which will vary based on the situation;

- All documents necessary to create a single organized source of information that records the agency decision and decision-making process should be collected;

- The Decision File should be kept in an accessible location and should be organized in a logical manner, such as chronologically or by topic, so that documents can be added to the Decision File as they are generated or received;

- All documents placed in the Decision File should be appropriately labeled and dated;

- Substantive meetings that are relevant to the decision-making process should be sufficiently documented;

- Drafts that help substantiate the agency's decision-making process should be included in the Decision File;

- Documentation of electronic information (such as that found on websites) and communications (such as emails) should be maintained in the Decision File only if relevant, substantive, and if they document the decision-making process;

- When information contained on websites is relied on, the Decision File should contain a contemporaneous copy of the website, including the address and date that it was downloaded, to ensure that the information relied on is preserved before the web site content changes;

- Contemporaneous memoranda that document relevant oral communications, confusing emails, and other matters that demonstrate the agency's decision-making process should be written or collected and placed in the Decision File; and

- Once the decision-maker has made a final decision, the Decision File should be closed.

## PART C – COMPILING AN ADMINISTRATIVE RECORD

### I. Sources To Consult Before Compiling an AR

The APA governs judicial review of challenged agency decisions but does not specifically describe what is to be included in an AR. Under certain circumstances, other

4

statutes and regulations provide specific guidance on compiling ARs. At the outset, the agency, in consultation with the Office of the Solicitor, must determine whether a statute other than the APA applies. Additionally, regulations and implementing guidance may govern how to assemble an AR. In such circumstances, this guidance should be used in conjunction with any specific statutes and regulations.

As a procedural matter, Bureaus or Offices should determine whether they will seek the logistical assistance of the Department's Document Management Unit, in the Office of the Executive Secretariat.

## II. Documents That Should Initially Be Collected for an AR

During the initial search phase, a designated employee (the "AR Coordinator") should begin by examining the Decision File, if any, because most, if not all, of the documents that go into an AR should be in a properly maintained Decision File. The AR Coordinator should also direct an additional and thorough search in order to collect other relevant documents, including all primary and supporting documents, which may not be included in the Decision File. Such documents should include substantive documents:

- That were relied upon or considered by the agency, regardless of whether they support or oppose the agency's position;

- That were available to the decision-maker at the time the decision was made (i.e., considered by staff involved in the decision process as it proceeded through the agency), regardless of whether they were specifically reviewed by the decision-maker; and

- Even if the AR Coordinator believes the relevant documents are privileged.

Keep in mind that, while the APA does not specifically describe what is to be included in an AR, a court's review of a decision by an administrative agency is generally based on the reasons given by the agency and the information considered by the agency in the course of making the decision, not on the internal decision making process or on documents that reflect that process.

The AR Coordinator should maintain a written record detailing where he or she searched for documents and who was consulted in the process of compiling the AR. When questions about either the documents that should be included or the scope of any additional search arise, the AR Coordinator should consult with the Office of the Solicitor.

## III. Steps To Take After Collecting Documents Related to the Challenged Decision

The AR Coordinator should contact the appropriate Office of the Solicitor reviewer after all documents have been gathered. The Office of the Solicitor will work with the Department of Justice and the AR Coordinator to determine the scope of the AR, such as

what types of documents that have been gathered are relevant to the particular issues in the litigation and should be included in the AR. In addition, the Office of the Solicitor will work with the Department of Justice to provide the AR Coordinator with any specific instructions for formatting, organizing, sorting, or providing the documents for review for assertion of privileges or for determination of relevancy.

The AR Coordinator should ensure that each document to be included in an AR is clean, legible, and complete, even if the document is believed to contain protected or privileged information. The AR Coordinator must ensure that the documents to be included in the AR have not been redacted, edited, or altered in any manner, unless such alterations are part of the original document.

### IV. Documents That Should Be Included in an AR

After the documents have been collected, the AR Coordinator should begin to compile the AR. At this point, the AR Coordinator should consult with the Office of the Solicitor to determine if there is any additional guidance to be followed for the specific AR. Specific guidance may include particular issues that should be focused on or types of documents that should be flagged.

The following documents are typically included in an AR when they are relevant, without regard to whether they support or oppose the agency decision or whether the AR Coordinator believes they contain privileged information:

1) All *primary documents*. Primary documents record the agency action that is or may be challenged. They are typically signed or approved by a decision-maker, and commonly include National Environmental Policy Act ("NEPA") documents, such as Environmental Impact Statements or Environmental Assessments; Records of Decision; Endangered Species Act documents, such as a biological opinion; Resource Management Plans; and final rulemaking documents; and

2) All *relevant, supporting documents* that were followed, relied upon, or considered by the agency during the decision-making process. For purposes of this guidance, relevant documents are documents that bear a logical connection to the matter considered and that contain information related to the agency decision at issue. Documents are always relevant if they are procedurally required by statute or regulation as part of the decision-making process.

    Additionally, all supporting documents, which include those documents that affect the substance of the primary documents or the decision, are relevant because they explain the agency decision-making process, were before or available to the decision-maker at the time the decision was made, and were relied upon or considered by the agency during the decision-making process. They include documents that both support and are contrary to the agency decision.

Determinations of relevance may be complicated, affecting the content of the AR and the defense of the agency decision, and should be made in consultation with the Office of the Solicitor. The Office of the Solicitor will consult with the Department of Justice as appropriate. Examples of relevant, supporting documents include:

- Departmental, Office, and Bureau policies, guidelines, directives and manuals;

- Documents contained in previous ARs that were relied upon or considered in the decision-making process (even if not being challenged by the current litigation);

- Documents that have been released to the public, such as through a FOIA request, or are available to the public, including on the Internet;

- Communications and other information received from the public and other agencies and any responses to those communications. These communications can be unsolicited, the result of informal communications (such as between agencies), or part of a formal process such as comments received during NEPA public scoping or during rulemaking. If a consultant or contractor received or compiled public or agency comments, those comments and any reports or summaries should also be included in the AR;

- Articles, books and other publications. If a copy is made, be sure to cite the appropriate sources and follow applicable copyright laws;

- Technical information, monitoring data, sampling results, survey information, engineering reports or studies, and other factual information or data;

- Documents cited as a reference of a primary document, such as a bibliography of an Environmental Impact Statement;

- Reports and other information compiled by consultants and contractors;

- Memoranda to the file, created contemporaneously to the creation of the document, that further explain the content of relevant electronic communications and their attachments, meetings, and phone conversations;

- Electronic communications or other internal communications, such as emails and their attachments, which contain factual information, substantive analysis or discussion, or that document the decision-making process. (See section C.VI for detailed discussions of electronic communications);

- Minutes, transcripts of meetings, and other memorializations of telephone conversations and meetings, including personal memoranda or handwritten

7

notes that were circulated to colleagues or added to the Decision File. (See section C.VII for detailed discussions of personal memorializations); and

- Drafts of primary or relevant documents indicating substantive deliberations or discussions. (See section C.VIII for a detailed discussion of drafts).

When questions arise about which documents to include, the AR Coordinator should initially include the documents in the AR and then consult with the Office of the Solicitor. In addition, some documents, such as books and published reports, may be particularly lengthy, making them difficult to copy. When a document is particularly large, the Office of the Solicitor should be contacted for instructions on how to proceed. The Office of the Solicitor may be able to work with the Department of Justice and opposing counsel to come to a mutually acceptable agreement concerning how such documents will be produced.

## V. Types of Documents That Should Not Be Included in an AR

The following types of documents, although they may be appropriate for inclusion in the Decision File, typically should not be included in the AR:

- Documents that are not relevant to the decision-making process;

- Documents that were not in the agency's possession at the time the decision was made;

- Electronic communications, including emails, which do not contain factual information, a substantive analysis or discussion, or information documenting the agency decision-making process. (See section C.VI for detailed discussions of electronic communications);

- Personal notes, journals, appointment calendars or memorializations maintained by an individual solely for personal use and not circulated to colleagues or added to the agency file. (See section C.VII for detailed discussions of personal memorializations); and

- Drafts of documents that simply agree with previous drafts or represent mere grammatical edits and do not contain significant additional substantive comments. (See section C.VIII for a detailed discussion of drafts).

When questions arise about the documents to be included, the AR Coordinator should initially include the documents in the AR and consult with the Office of the Solicitor.

## VI. Electronic Communications

*General Guidelines for Electronic Communications:* Only electronic information and electronic communications, such as emails, that contain relevant factual information, a

8

substantive analysis or discussion that formed a material part of the decision-making process, or that actually document the agency decision-making process should be included in the AR. As a general rule of thumb, the great majority of email "chatter" about a decision need not be included in the AR. For example, emails should be included in the AR if they propose or discuss substantive changes to a draft primary document, or if they document substantive supervisory instructions to staff relating to the decision-making process. Such emails that are exchanged between the agency decision-maker, other agencies, stakeholders or representatives from outside parties should also generally be included if they substantively document the decision process. On the other hand, emails that merely set up a meeting or transmit an attached document, or that do not contain substantive relevant information generally do not need to be included in the AR.

The AR Coordinator should ensure that information related to the decision-making process is included in the AR in a manner that is clear and easy for a reviewer unfamiliar with the process to understand. For example, when included in the AR emails must include attachments and identifying information, such as author, recipient and date. In addition, while duplicate copies of emails should typically not be included in an AR, if a duplicate helps to explain the context of a related email, it should be included. Additionally, the AR Coordinator should ensure that the AR includes any memoranda that were inserted into the Decision File prior to the decision to clarify unclear or confusing emails. The AR Coordinator should consult with the Office of the Solicitor to determine if a particular email should be included in the AR.

*Personal information:* While emails that contain a commingling of personal and official information generally need not be included in the AR, such communications may need to be included in an AR without redaction if the official information substantiates the decision-making process.

*Confusing chain messages:* Ideally, employees should use care in drafting and sending emails to avoid later confusion in interpreting the chain of communication. Emails with numerous attachments or that contain a commingling of personal and agency information and email chains with multiple parties and topics can lead to confusion and misinterpretation of the intended communication, especially when a long period of time has passed and the reader is less familiar with the subject matter. It may be difficult for an outside party, such as a court, to determine the actual context of an email or portion of an email without relevant attachments or all the emails in a chain. When several separate responses are sent in reply to one original message, the original message should remain attached to each of the responses.

## VII. Personal Memorializations

In general, documents that were created solely for an employee's personal convenience, even if they help that employee perform his or her official duties, should not be included in the AR. As a result, diaries, journals, "to-do" lists, personal notes and personal calendars that were created for the author's personal use and that were not distributed to other employees typically should not be included in the AR. However, documents that an

employee was required to create or maintain or that were distributed to or relied on by colleagues and/or the decision-maker and contain information related to the decision-making process should typically be included in an AR. If an employee takes relevant handwritten notes at a meeting and later gives copies of his or her notes to colleagues who were unable to attend the meeting, the notes should be included in an AR if there is no other documentation of the meeting.

However, in those situations where a personal memorialization is the only evidence that a relevant meeting occurred or contains substantive evidence relevant to the decision-making process, it may be necessary to include a personal memorialization in an AR. The AR Coordinator should consult with the Office of the Solicitor to determine if a personal memorialization should be included in a specific AR.

## VIII. Draft Documents

Only drafts that help substantiate and evidence the decision-making process should be included in the AR. Drafts of documents that simply agree with previous drafts or represent primarily grammatical edits or were not circulated outside the author's immediate office or working group typically should not be included in an AR. For example, drafts may contain unique information such as an explanation of a substantive change in the text of an earlier draft, or substantive notes that represent suggestions or analysis tracing the decision making process.

The AR Coordinator should ensure that all drafts are labeled with identifying information, including the date and author or editor of the draft who made suggestions. When changes or suggestions are made to only one section of a large draft, the AR Coordinator may include just those sections in the AR, provided that the context is clear and that identifying information is included, such as the version of the draft reviewed, the date, and the name of the employee making the changes or suggestions.

## IX. Preparing Documents for Office of the Solicitor Review

The AR Coordinator should notify the Office of the Solicitor upon completion of preliminary sorting and organizing of the documents found in the Decision File or the initial search and creation of a draft AR. The AR Coordinator should request any further instructions regarding formatting, organizing, sorting, or providing the documents prior to review. Unless requested by the Office of the Solicitor, the AR Coordinator should not simply provide the Office of the Solicitor the Decision File or all the documents collected after the initial search for documents. When the AR Coordinator provides the draft AR to the reviewing attorney, every document should be complete, regardless of whether the AR Coordinator believes it contains privileged or protected information.

## X. Office of the Solicitor Review

The Office of the Solicitor will review the documents in the draft AR for relevancy and completeness and review and mark documents that contain protected or privileged information.

Completeness and Relevance: The Office of the Solicitor reviews the AR for completeness and provides advice to the AR Coordinator regarding any documents identified as questionable for relevance. While this review does not necessarily include a thorough examination of each document, the review should generally check for obvious logical deficiencies by evaluating whether the AR, as presented, adequately and accurately demonstrates the agency decision-making process. The Office of the Solicitor may review the steps taken by the AR Coordinator in compiling the AR to ensure that all primary and relevant supporting documents have been included.

Protected Information: The Office of the Solicitor will review the documents to determine if they contain specific information that the agency is prohibited from disclosing to non-federal parties, such as by court order, statute (e.g., the Privacy Act), or regulation. Disclosure of such information to any party, other than in accordance with specified procedures, could lead to lawsuits, penalties, or sanctions. The Office of the Solicitor will work with the Department of Justice to determine whether the protected information may be disclosed under seal or other protective order.

Privileged Information: The Office of the Solicitor will review the documents to ensure that any privileged information the agency wants to withhold is removed or redacted and adequately documented. Privileges attach to information under law to protect them from discovery. An agency generally cannot claim that information is privileged if the information has been lawfully released to a non-federal party in the past, perhaps in response to a FOIA request. Unlike protected information, privileged information may be disclosed at the agency's discretion. However, disclosure of privileged information forever waives the privileges in that information.

Relevant privileges that may be asserted by the Office of the Solicitor and the Department of Justice include: the attorney-client privilege, the attorney work product privilege, the confidential business information or trade secret privilege, the deliberative process privilege, and the executive and governmental privileges.

Due to the number of legal issues involved in asserting privileges, it is particularly important for the AR Coordinator and the Office of the Solicitor, in consultation with the Department of Justice, to work closely on any issues that involve privileged information.

## XI. Office of the Solicitor Actions After Review

The Office of the Solicitor will recommend additions, removals, or redactions of documents from the AR as a result of the review described in section C.X. A privilege index will be created to describe the protected and privileged documents. (See section

C.XIV for a detailed discussion of the privilege index). The protected and privileged documents shall be stored separately from the non-protected and non-privileged documents. The Office of the Solicitor may keep the protected and privileged documents while the non-protected and non-privileged documents will be returned to the AR Coordinator.

## XII. Organization of the AR

The AR should be organized in a logical and accessible way so that someone unfamiliar with the issue can find specific documents quickly. Documents in an AR can be compiled by chronological order, topic, or by agency in a multi-agency decision. Similarly, ARs may be divided into several topics, perhaps based on the topics of various primary documents at issue, and chronologically organized within each topic. This technique is particularly common if several agency actions are contested. Other logical organizations of ARs are permitted.

The AR Coordinator should be aware that there might also be organizational requirements created by court rules or accommodation of requests by the opposing party. The AR Coordinator should work closely with the Office of the Solicitor for instructions before determining the best method for organizing an AR.

## XIII. Numbering of Documents in the AR

Each document in the AR should be assigned a unique number so that it may be uniformly referred to by the parties. All documents, including those that contain protected or privileged information, should be numbered using the same system. For ease of reference, documents may be tabbed or provisionally numbered, but the documents should never be permanently marked, numbered or altered in any way prior to completion and review of the index. Final, permanent document numbers should not be assigned until after the AR index is complete and has been reviewed by the Office of the Solicitor. In addition to assigning each document a unique number, every page of the AR should be numbered in such a way to allow the page numbers of particular documents to be identified and cited in a brief to the court, such as AR [document number], [page number]; AR [Volume number], [page number]; or AR [page number].

In some cases, Bates stamping or a similar electronic process can be used to individually number every page. Alternately, multi-paged documents with internal pagination may only need unique document numbers. Numbering typically should be done so that the documents and pages begin with the smallest numbers and end with the largest number. Please consult with the Office of the Solicitor to determine the best numbering technique.

## XIV. Preparation of an AR Index and a Privilege Index

After the AR has been organized, the AR Coordinator should create both a complete AR index and a privilege index. Typically, an AR index is in chart form and includes the following categories of information: the unique document number; a brief (one- or two-

sentence) description of the document's nature and topic; date; identification of sender and recipient; number of pages; nature of any privilege or protection to be asserted. (See Appendix 1 for a sample AR index.)

In addition to the AR index, a separate privilege index must be generated if the agency is withholding any protected or privileged information. A privilege index (also referred to as a privilege "log") should include only those documents where a privilege or protection is being asserted. The content of a privilege index is similar to the content of an AR index, and includes an explanation of the privilege asserted. Once complete, a copy of the privilege index should be physically kept with the privileged and protected documents. (See Appendix 2 for a sample privilege index.) The AR Coordinator should not include any of the underlying privileged information in the AR index or the privilege index.

Prior to filing the AR index and privilege index with the court and releasing them to opposing parties, the AR Coordinator should consult with the Office of the Solicitor for specific requirements or instructions.

## XV. Certification of AR to the Court

The AR must be certified to the court by the AR Coordinator, or in rare cases, another federal employee who is familiar with the manner in which the AR has been compiled. The certification is signed under penalty of perjury, and the AR Coordinator should work closely with the Office of the Solicitor to develop appropriate language. The certificate typically explains that the AR Coordinator was responsible for compiling the AR, has personal knowledge of its assembly, and states that the AR is full and complete. The certification also may describe the AR, such as the number of documents or the number of privileged or protected documents, or it may clarify that certain categories of documents are not included in the AR (such as transmittal memoranda, fax cover sheets, privileged and protected documents, internal working drafts, voluminous publicly available scientific reports, copyright protected books, etc.) In unique cases where the decision being challenged is not final, a clause may be inserted explaining that the agency expects to generate additional documents on the challenged issue. The certification is often sworn and notarized or in the form of a declaration with a Departmental and/or Bureau or Office seal. (See Appendix 3 for a sample certification.)

## XVI. Filing the AR with the Court

Different courts have different rules for filing an AR. The Office of the Solicitor will work with the Department of Justice, the court, and the opposing party and will provide specific filing instructions to the AR Coordinator.

**All-American Canal Lining Project**
**Administrative Record**
**DOCUMENT INDEX**
**(Volumes 1-4)**

| Date | Document | Vol. | Tab No. | Page No. | Filename on CD |
|---|---|---|---|---|---|
| **NATIONAL ENVIRONMENTAL POLICY ACT DOCUMENTS** | | | | | |
| 07/29/1994 | Record of Decision of May 1994 for the Final Environmental Impact Statement/Final Environmental Impact Report (FEIS/FEIR) on the All-American Canal (AAC) Lining Project, attached to letter of transmittal from Regional Director, Lower Colorado Region, Bureau of Reclamation (LC Region) | 1 | 1 | 1 | 0001 |
| March 1994 | FEIS/FEIR on the AAC Lining Project, issued by Reclamation and Imperial Irrigation District | 1 | 2 | 23 | 0002 |
| March 1994 | Engineering Appendix to the FEIS/FEIR | 1 | 3 | 321 | 0002-01 |
| March 1994 | Environmental Appendix to the FEIS/FEIR | 2 | 4 | 455 | 0002-02 |
| March 1994 | Geohydrology Appendix to the FEIS/FEIR | 3 | 5 | 936 | 0002-03 |
| March 1994 | Public Involvement Appendix to the FEIS/FEIR | 3 | 6 | 1269 | 0002-04 |
| March 1994 | Social Appendix to the FEIS/FEIR | 4 | 7 | 1481 | 0002-05 |
| 11/22/1999 | Memorandum to Yuma Area Office Manager, Reclamation, from Regional Director, LC Region, regarding reexamination and analysis of the 1994 FEIS/FEIR and Record of Decision for the AAC Lining Project | 4 | 8 | 1574 | 0003 |
| 05/19/2003 | Letter to Director, California Department of Water Resources, from Regional Director, LC Region, regarding adequacy of the 1994 FEIS/FEIR and Record of Decision for the AAC Lining Project (Project) and Finding of Ecological Equivalency | 4 | 9 | 1588 | 0004 |
| **ENDANGERED SPECIES ACT DOCUMENTS** | | | | | |
| 01/25/2005 | Letter to Field Supervisor, Fish and Wildlife Service (FWS), Carlsbad, California, from Regional Director, LC Region, regarding request for confirmation of Conference Opinion (1-6-96-F-12) as a Biological Opinion for Peirson's milk vetch for the AAC Lining Project | 4 | 10 | 1591 | 0005 |
| 11/15/2004 | Memorandum to Regional Director, LC Region, from Assistant Field Supervisor, FWS, Carlsbad California, regarding LC Region's request for confirmation of Conference Opinion as a Biological Opinion for Peirson's milk vetch for the AAC Lining Project | 4 | 11 | 1593 | 0006 |
| 09/9/2004 | Letter to Field Supervisor, FWS, Carlsbad, California, from Deputy Regional Director, LC Region, requesting confirmation of Conference Opinion (1-6-96-F-12) as a Biological Opinion for Peirson's milk vetch for the AAC Lining Project | 4 | 12 | 1596 | 0007 |
| 02/08/1996 | Memorandum to Environmental Compliance Group Manager, LC Region, from Ecological Services Field Supervisor, FWS, Carlsbad, California regarding the Biological and Conference Opinion for the AAC Lining Project | 4 | 13 | 1612 | 0008 |
| September 1993 | Final Fish and Wildlife Coordination Act Report, AAC Lining Project, Imperial County, California | 4 | 14 | 1636 | 0009 |

Page 1 of 2

# Appendix 1

# All-American Canal Lining Project
## Administrative Record
## DOCUMENT INDEX
### (Volumes 1-4)

| Date | Document | Vol. | Tab No. | Page No. | Filename on CD |
|---|---|---|---|---|---|
| **SECRETARIAL CORRESPONDENCE** | | | | | |
| 9/13/2005 | Letter to Secretary of Environment and Natural Resources of Mexico from Secretary of the Interior regarding lining of the AAC | 4 | 15 | 1709 | 0010 |
| 11/19/2004 | Letter to Secretary of Environment and Natural Resources of Mexico, from Secretary of the Interior regarding lining of the AAC | 4 | 16 | 1712 | 0011 |
| **INTERNATIONAL BOUNDARY AND WATER COMMISSION CORRESPONDENCE** | | | | | |
| 09/20/2004 | Letter to Commissioner of Reclamation from Commissioner of the U.S. Section of the International Boundary and Water Commission (USIBWC) regarding status of consultation with Mexico | 4 | 17 | 1724 | 0012 |
| 02/24/1992 | Letter to Commissioner of USIBWC from Commissioner of Reclamation responding to letter summarizing Mexican consultation over AAC Lining | 4 | 18 | 1726 | 0013 |
| 02/22/1989 | Letter to Regional Director, LC Region, from Commissioner of USIBWC regarding USIBWC's position on seepage from the AAC | 4 | 20 | 1728 | 0014 |
| 08/12/1986 | Letter to Regional Director, LC Region, from Acting Commissioner of USIBWC responding to Reclamation's request for views on recovery of AAC seepage | 4 | 21 | 1730 | 0015 |

| Acronyms and Abbreviations | |
|---|---|
| AAC | All-American Canal |
| FEIS/FEIR | Final Environmental Impact Statement/Final Environmental Impact Report |
| FWS | Fish & Wildlife Service |
| LC Region | Bureau of Reclamation's Lower Colorado Regional Office |
| Reclamation | Bureau of Reclamation |
| USIBWC | United States Section of the International Boundary & Water Commission |



All-American Canal Lining Project Administrative Record
DOCUMENT INDEX

| Date | Document |
|---|---|
| **PRIVILEGED DOCUMENT LOG** ||
| 6/24/1999 | Fax to LC Regional Director from YAO Area Manager transmitting the comments of the DOI Solicitor's Office, which were requested by Reclamation on the AAC memorandum regarding Reexamination and Analysis of the 1994 FEIS/EIR and ROD for the AAC Lining Project |
| 4/23/1999 | Memorandum to DOI Solicitor's Office from YAO Area Manager requesting Solicitor's Office legal opinion regarding the Environmental Impact Statement and Record of Decision for the AAC Lining Project |
| 4/21/1999 | Email from LC Regional biologist transmitting comments on a draft memorandum that requests the legal advice of the DOI Solicitor's Office regarding AAC Lining Project |
| 4/9/1993 | Response from DOI Solicitor's Office to LC Regional Director's request for a basis of negotiation regarding the AAC Lining Project |

For Your Info.

Appendix 2

Page 1 of 1

# United States of America

## DEPARTMENT OF THE INTERIOR
Washington, D.C.

*I certify that the official records of the Department of the Interior identified below are in my legal custody and attest that each annexed paper is a true copy of a document comprising part of the official records of the Department of the Interior:*

- Administrative Record, as reflected in the attached index, supporting the [Department, Bureau, or Office]'s [Date] Record of Decision for the [Decision Being Litigiated]. The Administrative Record does not contain fax cover sheets, privileged and protected documents, or voluminous publicly available scientific reports.
- Additional documents related to Plaintiffs' claims in this litigation.
- The [Department, Bureau, or Office] is presently implementing the [Date] Record of Decision for the [Decision Being Litigated] and anticipates generating additional documents with respect to such implementation before [Relevant Action] begins.

*IN TESTIMONY WHEREOF, I swear under penalty of perjury that the foregoing is true and correct. Signed this ___ day of [Month, Year].*

SIGNATURE: _____

TITLE: _____

OFFICE: _____

APPROPRIATE SEAL

For Your Info.

Appendix 3