UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
SAFARI CLUB INTERNATIONAL, *et al.*,  )
)
        Plaintiffs,  )
)
    v.  )  Civil Action No. 14-0670 (RCL)
)
SALLY M. R. JEWELL, in her official  )
capacity as Secretary of the U.S.  )
Department of the Interior, *et al.*,  )
)
        Defendants.  )
)

**MEMORANDUM OPINION AND ORDER**

This case involves a challenge by plaintiffs Safari Club International and the National Rifle Association of America to determinations by the United States Fish and Wildlife Service ("FWS" or "the Service") to suspend imports of sport-hunted elephants from Tanzania and Zimbabwe. Defendants moved to dismiss the lawsuit and on December 26, 2014, the Court dismissed the claims with respect to imports from Tanzania, but not with respect to imports from Zimbabwe. *Safari Club Int'l v. Jewell*, No. 14-0670 (ABJ), 2014 WL 7367007, at *8, *10 (D.D.C. Dec. 26, 2014). Following that ruling, plaintiffs filed a motion for the Court to certify the finality of the Court's dismissal of the Tanzania claims pursuant to Federal Rule of Civil Procedure 54(b). For the reasons set forth below, the Court will grant plaintiffs' motion.

**BACKGROUND**

International trade of endangered species, like the African elephant, is governed by the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"). Mar. 3, 1973, 27 U.S.T. 1087, T.I.A.S. No. 8249. Whether a species covered by CITES may be

1

traded between countries depends, among other factors, on whether the species is listed under Appendix I or Appendix II of the treaty.  An import permit is required to import an Appendix I species, like African elephants from Tanzania, CITES Art. III(3), while no import permit is required to import an Appendix II species, like African elephants from Zimbabwe, CITES Art. IV(4).[1]  The United States has implemented CITES through the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1537a; 1538(c), and FWS is responsible for issuing the import permits required by treaty.

FWS previously allowed imports of legally sport-hunted African elephant trophies from Tanzania and Zimbabwe, but that changed in April 2014, when FWS issued determinations suspending these imports.  Press Release:  Service Suspends Import of Elephant Trophies from Tanzania and Zimbabwe, Ex. A to Mot. for Prelim. Inj. [Dkt. # 4-5].  Plaintiffs, who represent hunters and hunting outfitters, filed suit challenging the Service's actions, Compl. [Dkt. #1], Am. Compl. [Dkt. # 13], 2d Am. Compl. [Dkt. # 49], and defendants moved to dismiss, among other reasons, on the grounds that plaintiffs failed to exhaust their administrative remedies with respect to the Tanzania claims because they did not apply for and were not denied an import permit.  Mot. to Dismiss [Dkt. # 11]; Supplemental Mot. to Dismiss & Partial Opp. to Mot. to Am./Correct [Dkt. # 36].

---

1   CITES categorizes protected species into three appendices based on the level of protection required for the species.  27 U.S.T. 1087.  A fuller description of the treaty's requirements appears in the Court's December 26, 2014 decision.  *Safari Club Int'l*, 2014 WL 7367007, at *1.

On December 26, 2014, the Court granted defendants' motion to dismiss the Tanzania claims (Counts 6–8),[2] ruling that plaintiffs had failed to exhaust their administrative remedies. *Safari Club Int'l*, 2014 WL 7367007, at *8, *10. It denied the motion to dismiss the Zimbabwe claims. *Id.* at *10.

On January 22, 2015, plaintiffs filed a motion for certification from the Court that the dismissal of the Tanzania claims was a final judgment. Pls.' Mot. for Certification of Ruling [Dkt. # 53] ("Pls. Mot."). The parties have briefed the issue. Defs.' Opp. to Pls.' Mot. [Dkt. # 59] ("Defs.' Opp."); Pls.' Reply in Supp. of Pls.' Mot. [Dkt. # 61] ("Pls.' Reply"). For the reasons set forth below, the Court will grant plaintiffs' motion.

## LEGAL STANDARD

In actions that present multiple claims for relief, Rule 54(b) authorizes a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims." Fed. R. Civ. P. 54(b). The district court, in its discretion, is to determine the "appropriate time" when each final decision in a multiple-claims action is ready for appeal and "[t]his discretion is to be exercised 'in the interest of sound judicial administration.'" *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980), quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956).

The court must first determine whether the decision in question is a "final judgment," meaning "a decision upon a cognizable claim for relief" that is "'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* at 7, quoting *Sears, Roebuck & Co.*, 351 U.S. at 436. "'Absent an express direction for entry of judgment, an order

---

[2] The count numbers for the Tanzania claims in the amended complaint were 4, 5, and 6, *see* Am. Compl. [Dkt. # 13], but plaintiffs moved for leave to file a second amended complaint, which changed the Tanzania claims to counts to 6, 7, and 8, *see* 2d Am. Compl. The Court granted plaintiffs' motion for leave to file a second amended complaint and dismissed the Tanzania claims, counts 6–8 of the second amended complaint. *Safari Club Int'l*, 2014 WL 7367007, at *5–*6, *10.

that disposes of less than all the claims – no matter with what firmness and apparent finality – is not appealable.'" *Bldg. Indus. Ass'n of Superior Cal. v. Babbitt*, 161 F.3d 740, 743–44 (D.C. Cir. 1998), quoting *Everett v. U.S. Airways Grp., Inc.*, 132 F.3d 770, 773 (D.C. Cir. 1998).

If the court determines that the judgment is final, it must then "determine whether there is any just reason for delay, keeping in mind that '[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims.'" *Johnson v. Mukasey*, 248 F.R.D. 347, 355 (D.D.C. 2008), *aff'd in part sub nom. Johnson v. Holder*, No. 08-5157, 2009 WL 3568647 (D.C. Cir. Oct. 7, 2009), quoting *Bldg. Indus. Ass'n*, 161 F.3d at 744. District courts have considerable discretion to determine the "exceptional cases qualifying for Rule 54(b) certification," *Bldg. Indus. Ass'n*, 161 F.3d at 743, so long as this discretion is "exercised 'in the interest of sound judicial administration.'" *Curtiss-Wright Corp.*, 446 U.S. at 8, quoting *Mackey*, 351 U.S. at 435. In doing so, district courts must consider judicial administrative interests and the equities involved. *Id.* In considering judicial administrative interests, courts must consider administrative efficiency and the federal policy against piecemeal litigation. *Id.* It is proper for the court to consider "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* But even if an appeal of the claims does not harm judicial administrative interests, "it is still within the court's discretion to grant or deny final judgment under 54(b) based on the equities involved." *Johnson*, 248 F.R.D. at 357, citing *Curtiss-Wright Corp.*, 446 U.S. at 10.

4

ANALYSIS

I.     **The Court's ruling on the Tanzania claims is a final judgment.**

Plaintiffs argue that the ruling dismissing the Tanzania claims for failure to exhaust administrative remedies was final, stating that they could have filed the Tanzania lawsuit separately, and if they had, the ruling on the motion to dismiss would have been appealable. Pls.' Mot. at 4–6. Defendants do not dispute that the Tanzania ruling was final. Defs.' Opp. at 1. The Court agrees and finds that the ruling on the Tanzania claims is a final judgment as to those claims. The ruling was a decision upon plaintiffs' cognizable claim for relief with respect to imports of sport-hunted elephants from Tanzania, which disposed of those claims fully. *See Curtiss-Wright Corp.*, 446 U.S. at 7.

II.    **There is no just reason for delay.**

Given that the December 2014 decision constituted a final judgment on the Tanzania claims, the Court must next consider whether there is a just reason to delay an appeal of those claims. *Id.* at 8. Plaintiffs contend there is no just reason for delay, because the Tanzania and Zimbabwe rulings are distinct from each other, given the different regulatory regimes that govern imports from each country. Pls.' Mot. at 8; Pls.' Reply at 1. According to plaintiffs, the issue for appeal concerns elephants listed on Appendix I and not those listed on Appendix II, and the permit requirement for Tanzania eliminates any overlap between the two. Pls.' Mot. at 8. They assert that the ruling on the Tanzania permit requirement "has no impact on or relation to" the ongoing challenges to the Zimbabwe import suspension, and that the factual and legal issues related to the Tanzania appeal will have to be briefed and argued separately from the Zimbabwe issues. *Id.* at 6.

Defendants counter that there is substantial overlap between the two sets of claims, emphasizing that plaintiffs' claims that FWS failed to provide notice and comment before issuing

the challenged findings and their challenge to the validity of the enhancement finding requirement applies to both sets of claims. Defs.' Opp. at 3–4. According to defendants, it would be a waste of judicial resources to allow appeal of the Tanzania claims because these overlapping legal questions could be before this Court and the Court of Appeals at the same time. *Id*. at 4. Plaintiffs point out, however, that the issue the Court of Appeals would decide now is whether the Tanzania findings are final agency actions given the permit requirement and whether resort to that administrative process would be futile – not the merits questions of notice and comment or the validity of the enhancement finding requirement. Pls.' Reply at 2–3. Further, the appellate court will not have to decide any permit-related issues for the Zimbabwe claims, because there is no permit requirement for imports from that country. *Id.* at 3.

The Court finds that plaintiffs' appeal of the final judgment with respect to their Tanzania claims would not harm judicial administrative interests. *See Curtiss-Wright Corp.*, 446 U.S. at 8. The issues for appellate review involve plaintiffs' failure to apply for a permit and exhaust their administrative remedies, not the common merits questions on rulemaking and the validity of the enhancement finding requirement. Plaintiffs are correct that issue of finality and exhaustion of administrative remedies arises only with the respect to imports from Tanzania and would not be reviewed again in subsequent appeals of this case. Therefore, certification of these claims would not compromise the judicial interest against piecemeal litigation. *See id.*; *see also Am. Forest Res. Council v. Ashe*, 301 F.R.D. 14, 19 (D.D.C. 2014).

With respect to the equities involved, plaintiffs argue that an immediate appeal would be equitable because unless the decision is reversed on appeal, "issue preclusion, collateral estoppel, or at least stare decisis likely would prevent" them from litigating the issue of their ability to bring such a claim in any challenge against import bans imposed on a CITES Appendix I elephant. Pls.' Mot. at 7. While acknowledging that "this may be true," defendants counter that this case is not

one of the "exceptional cases" in which an interlocutory appeal is appropriate. Defs.' Opp. at 4. Defendants quote *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981), for the proposition that litigants must "show that an interlocutory order of the district court might have a serious, perhaps irreparable, consequence" to obtain interlocutory appeal. *Id.* at 4–5. They also point out that the consequence here was of plaintiffs' own making since they chose to file suit without identifying a member to exhaust administrative remedies, and that plaintiffs could "correct the deficiency" by finding a member who has applied for a permit or would be willing to do so, and then file a new lawsuit once the permit is denied. *Id.* at 5.

The Court finds that the equities favor plaintiffs. This case is procedurally unusual because of the different regulatory requirements governing the same imports, albeit from different countries. And although plaintiffs knew these same imports were subject to different regulatory requirements and proceeded to file suit anyway, the Court finds that the unique posture of the case arising from the different regulatory regimes tilts this case toward being an "exceptional case" qualifying for certification under Rule 54(b), particularly because the issues to be appealed are separable from those that are unresolved. *See Bldg. Indus. Ass'n*, 161 F.3d at 743; *see also Curtiss-Wright Corp.*, 446 U.S. at 8. Finally, the Court notes that the *Carson* case relied upon by defendants involved 28 U.S.C. § 1291(a)(1), the statute that governs interlocutory appeals of injunctions, which is not at issue in this case. *See Carson*, 450 U.S. at 84. Accordingly, the Court finds that the equities favor granting plaintiffs' motion.

## CONCLUSION

For the reasons set forth above, it is ORDERED that plaintiffs' motion for certification of ruling [Dkt. # 53] is GRANTED.  It is further ORDERED that pursuant to Federal Rule of Civil Procedure 54(b), the Court's Order of December 26, 2014 [Dkt. # 47] is a final judgment with respect to plaintiffs' Tanzania claims (Counts 6–8 of the second amended complaint).

**SO ORDERED.**

Signed by Royce C. Lamberth, United States District Judge, on April 9, 2015.