**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SAFARI CLUB INTERNATIONAL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Civ. No. 14-cv-00670 (RCL) |
| | ) | |
| v. | ) | |
| | ) | |
| SALLY M. R. JEWELL, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**REPLY IN SUPPORT OF SAFARI CLUB INTERNATIONAL AND THE NATIONAL
RIFLE ASSOCIATION OF AMERICA'S MOTION TO COMPEL
SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD AND TO ADMIT
EXTRA-RECORD EVIDENCE**

Safari Club International and the National Rifle Association of America ("SCI/NRA")

have identified two documents that Defendants Sally M.R. Jewell, U.S. Department of the

Interior, Daniel Ashe and the U.S. Fish and Wildlife Service ("Federal Defendants") refuse to

include in the Administrative Record ("AR") for this matter.  The Court should consider these

documents in its evaluation of the legality of Federal Defendants' decisions to ban the

importation of elephants from Zimbabwe ("importation ban decisions") in April 2014 and July

2014.

One document, an e-mail authored by Timothy J. Van Norman, Chief Branch of Permits

for the U.S. Fish and Wildlife Service in 2002 ("Van Norman E-mail"), concerns the Service's

obligation to notify the public of a potential change in their position on importation and give the

public the opportunity to provide data to inform that decision.  It should be included in the AR

because Mr. Van Norman, who was one of the key decision-makers for the importation bans,

1

indirectly considered the information contained in that e-mail in the course of making the importation ban decisions.[1]

The other document, an e-mail authored in 2002 by FWS employee Karl Stromayer ("Stromayer E-mail"), was not considered by Federal Defendant decision-makers.  The Stromayer E-mail should be admitted as extra-record evidence because the e-mail illustrates a relevant factor – carrying capacity for elephants in Zimbabwe – that Federal Defendants failed to consider in making both the April 2014 and July 2014 importation ban decisions.

### A.    The Van Norman E-mail Is Part of the July AR

Federal Defendants' primary response to SCI/NRA's motion to include the Van Norman E-mail in the July AR is Mr. Van Norman's own insistence that he did not consider the document.  Van Norman Decl., ¶13, Ex. 1 to Federal Defendant's Opposition.  SCI/NRA will not attempt to dispute Mr. Van Norman's statement that he did not directly consider the e-mail.  SCI/NRA's request for inclusion focuses on Mr. Van Norman's indirect consideration of the information in that document.

SCI/NRA do not seek to persuade the Court to include an e-mail in the AR simply because Federal Defendants were aware of the existence of that document.  The subject of SCI/NRA's Motion to Compel Supplementation of the Record ("motion to compel") is an e-mail authored by the decision-maker himself.  Although Mr. Van Norman might not have directly reviewed the e-mail in order to make the July 2014 importation ban decision, as the author he generated the information in that e-mail and it became part of the background knowledge from which he made the importation ban decision.   For that reason, the Van Norman E-mail likely informed and influenced, or at least should have informed and influenced, his decision-making.

---

[1] Alternatively, if this Court finds that this document is not part of the AR, the document should be admitted as an extra-record document.

As SCI/NRA previously explained in their motion to compel, "[a] complete administrative record should include all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision." *Amfac Resorts LLC v. U.S. Department of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) *quoting Bethlehem Steel v. EPA,* 638 F.2d 994, 1000 (7th Cir.1980).

Federal Defendants erroneously equate "indirect consideration" with the situation where the decision-maker is held to have "considered" documents that he or she has not personally reviewed but were instead read by subordinates.  Opp'n at 8.  Such examples are not the only circumstances of indirect consideration.  Consideration of the Van Norman E-mail more closely resembles the scenario of *Center for Biological Diversity v. U.S. Bureau of Land Management*, 2007 WL 3049869 (N.D. Cal. 2007).  In that case, the Court granted the plaintiffs' motion to include in the AR documents from a "black box" study that the Bureau of Land Management ("BLM") had abandoned prior to finalizing the challenged decision-making.  Because the black box study had met with significant public criticism, the BLM disregarded recommendations generated by the study as well as much of the data compiled for the study.  *Id*. at *2.  The Court rejected the BLM's argument that the data should be excluded because the agency did not rely on the flawed data.  As explained by another court, "[t]he court noted that because the Box data was developed by BLM (and thus, known to it) and it related directly to the issue in question, it was 'before' the agency 'at least indirectly.'" *Sequoia Forestkeeper v. U.S. Forest Service*, 2010 WL 2464857, *5 (E.D. Cal. 2010) (quoting *Center for Biological Diversity,* 2007 WL 3049869, at *4).

Even if Mr. Van Norman had effectively "abandoned" the information in the Van Norman E-mail, that information did not evaporate from his background knowledge of

importation decision-making.  He "developed" the information in the Van Norman E-mail.  It related to the process necessary for reaching and implementing an elephant importation ban decision.  Therefore, that information – and the e-mail containing that information – remained "before" Mr. Van Norman and were indirectly considered by him at the time he made the 2014 importation ban decisions.

The Van Norman E-mail fits perfectly into the type of documents the Department of the Interior and FWS direct their employees to include in administrative records.  Federal Defendants offer no argument to challenge the fact that the Van Norman E-mail meets the criteria for AR inclusion described in the DOI Guidance and FWS Service Manual applicable to the preparation of an AR.  As SCI/NRA stated in their motion to compel, those materials require the inclusion of "[a]ll records . . . that people involved in the decision used or that were available to them when they were making the decision." Compiling a Decision File and an Administrative Record." 282 FW 5. at 5.8.A (Motion to Compel, Ex. 10).  The Van Norman E-mail and the information contained in that e-mail and in Mr. Van Norman's own personal knowledge qualify as materials "available" to Mr. Van Norman when he made the importation ban decision.

Federal Defendants wrongly argue that the Van Norman e-mail should not be included in the AR because they claim it addresses a different species, and consequently different circumstances, than those considered by Federal Defendants in making the Zimbabwe elephant importation ban decisions.  Whether the Van Norman E-mail deals primarily with leopards does not change the fact that it remains relevant to Federal Defendants' elephant importation decision. Ironically, the contents of the e-mail are in one way more relevant to elephants in Zimbabwe because, as discussed below, the Service committed in 1997 not to change its enhancement

finding without first gathering new information and publishing its finding in the Federal Register.

If we consider only the leopard references, the Van Norman E-mail addresses Federal Defendants' concerns over the impact of an "increase in poaching" on Zimbabwe's leopards. The e-mail raises the question of whether Federal Defendants could reverse their position on importation of sport-hunted leopards from Zimbabwe without sufficient information about impact of that poaching on the leopard population. It highlights Mr. Van Norman's understanding of what Federal Defendants must do when the FWS lacks that information and expresses Mr. Van Norman's conclusion that insufficient information could not justify a reversal of the FWS's position on importation.

The e-mail also addresses Mr. Van Norman's understanding of how Federal Defendants should gather the information to inform their decision. The Van Norman E-mail expresses Mr. Van Norman's knowledge of the fact that, before the Service could reverse a previous decision on whether importation should continue, Federal Defendants would need to publish a Federal Register notice that would "identify our current concerns and ask for any information people might have" and explain that "we do not know at this time whether we would be able to issue permits for leopards . . . next year."

The e-mail demonstrates Federal Defendants' acknowledgement of an obligation to notify the public of a potential change in their position on importation and obligation to give the public the ability to comment and provide data to inform that decision. Ironically, Mr. Van Norman acknowledged this obligation for a species – leopard – for which Federal Defendants did not expressly commit to publishing in the Federal Register a change in its importation decision before such change would go into effect. In contrast, Federal Defendants promised the public in

1997 that "[t]he enhancement findings for importation of sport-hunted elephant trophies from Botswana, Namibia, and Zimbabwe … remain in effect until the Service finds, based on new information, that the conditions of the special rule are no longer met and has published a notice of any change in the Federal Register."  62 Fed. Reg. 44627 (Aug. 22, 1997)).  Even in the absence of this express commitment, in the Van Norman E-mail, Federal Defendants, via key decision-maker Timothy Van Norman, acknowledged the FWS's need to solicit information about leopards from the public via a Federal Register notice before implementing any importation change.

Although Federal Defendants would prefer that the Van Norman E-mail only referenced leopards, it does not.  It also discusses elephants.  The e-mail specifically addresses Mr. Van Norman's understanding of the procedure applicable to a potential modification of Federal Defendants' decision about elephant importation from Zimbabwe.  The Federal Register notice described in the Van Norman E-mail would "ask for any information people might have" and would "state that we do not know at this time whether we would be able to issue permits for leopards *or allow elephant imports next year*." (Emphasis added.)  The notice would have (1) given the public advance notice of a potential change in elephant importation and (2) solicited information to help inform Federal Defendants whether a change in elephant importation was necessary.[2]

The Van Norman e-mail is relevant because it demonstrates that, when he made the decision to ban importation of Zimbabwe's elephants, Mr. Van Norman was aware of the process Federal Defendants should have followed, but did not, before banning elephant importation in July 2014.  For this reason, it should be a part of the Administrative Record.  If the Court agrees

---

[2] The fact that the Service never prepared this Federal Register notice in 2002, Opp'n at 7, is irrelevant to the procedure applicable before the Service changes its position on importation.

with Federal Defendants that the Van Norman E-mail was not considered by Federal Defendants
either directly or indirectly in decision-making for the July importation ban, then the Court
should admit the document as extra-record evidence.  The Van Norman E-mail demonstrates a
relevant factor – the proper process for changing an importation decision – Federal Defendants
failed to consider when making the importation ban decision.

### B.  The  Stromayer E-mail Should Be Admitted as Extra-Record Evidence

The Stromayer E-mail demonstrates that Federal Defendants failed to consider a relevant
factor – carrying capacity – in making their importation ban decisions.  Federal Defendants'
primary defense is the circuitous argument that carrying capacity cannot be relevant because
Federal Defendants did not consider it in making their decisions about whether the hunting of the
elephants enhances the survival of the species.

As SCI/NRA explained in their motion to compel, the carrying capacity of Zimbabwe's
elephants has always been a significant factor in the FWS's consideration of the status and
conservation of the species, and in particular in determining whether the take of animals
enhanced the survival of the species.  Mot. to Compel at 18-19.  In 1993,  the FWS proposed
guidelines it would consider when evaluating management programs and elephant populations in
specific countries to ensure that the activity would enhance the survival of the species.  The
guidelines specifically noted the significance of carrying capacity as an element of a country's
development of a management plan and establishment of population goals. 58 Fed. Reg. 7813,
7814 (Feb. 9, 1993).[3]  If carrying capacity is so "irrelevant" why did it feature so prominently in

---

[3] As stated in the motion to compel, SCI/NRA do not seek to introduce the proposed guidelines
as extra-record evidence.  The paragraph quoted above is not one of the guidelines, but is instead
Federal Defendants' explanation of the motivation behind the guidelines.  SCI/NRA reference
the Federal Register notice announcing the guidelines only to demonstrate the relevance that
Federal Defendants have consistently attributed to carrying capacity in addressing elephant

the FWS's own motivations for analyzing the enhancement of survival of African elephant populations?  The answer is that it is *not* irrelevant and the Federal Defendants should have considered it in 2014, as they did earlier.

Federal Defendants' attack on the quality of the information in the Stromayer E-mail, asserting it to be dated and without supporting authority, actually suggests that the information was both relevant and considered.  Federal Defendants must have actually considered the Stromayer E-mail in order to evaluate its age and source and must have then rejected the data in the course of making its importation ban decisions.  If so, by Federal Defendants' own admission, the document belongs in this case as part of the AR instead of as extra-record evidence.[4]

Federal Defendants' assertion that an e-mail from a FWS employee who was in Zimbabwe, at least in part to assess the status of elephants, contained information that was "without supporting authority" is itself without support.  Where are the FWS's responsive e-mails to Mr. Stromayer asking him to provide the source of the data?  If the FWS was dissatisfied with Mr. Stromayer's report, why did they pose no questions about this to Mr. Stromayer either at the time Mr. Stromayer sent the e-mail in 2002, or while Federal Defendants were contemplating their decision to ban importation in 2014?  Nothing in the AR or in the materials upon which Federal Defendants rely in their opposition to SCI/NRA motion to compel demonstrates any concern or curiosity about the source or validity of the carrying capacity data

conservation and management.  SCI/NRA seek only to have this Court admit the Stromayer E-mail that specifically identified the existing carrying capacity of elephants in Zimbabwe.

[4] SCI/NRA did not, in their motion to compel, originally request for the inclusion of this document in the AR.  However, based on Federal Defendants' implied admission, SCI/NRA would accept inclusion of the document as an alternative to its admission as extra-record evidence.

prior to the date that SCI/NRA sought inclusion of the e-mail as extra-record evidence.

Finally, Federal Defendants offer an alternative and inconsistent, argument – admitting the relevance of carrying capacity but asserting that there is "more up-to-date information in the record about carrying capacity for African elephants in Zimbabwe." Opp'n at 10.  While this may impact the July 2014 decision, the same cannot be said for Federal Defendants' April 2014 decision.  Many of the documents referenced by Mr. Van Norman in his declaration confirm the information in the Stromayer e-mail, and demonstrate the limited carrying capacity of Zimbabwe for elephants and the fact that the country's elephant population far exceeds its carrying capacity. For example, one document explains that "[t]he over 40 000 elephants far exceed Hwange National Park's carrying capacity estimated to be less than 20 000 elephants, a situation which has resulted in more and more elephants straying into neighbouring villages where they destroy crops at a time when the country is struggling to produce enough food to feed itself. . . . The recommended elephant population for Zimbabwe has been estimated at around 40000 – 50000 animals (0.6 per km2)." Letter from IWMC World Conservation Trust to Dan Ashe, April 16, 2014, AR 982.).  According to Mr. Van Norman, all of the documents he referenced in his declaration were part of the July 2014 AR and were not part of the April 2014 AR and were not available to Federal Defendants when they made their decision in April 2014 to ban importation of elephants from Zimbabwe.  Van Norman Decl. 21¶. The absence of this information was entirely due to the fact that Federal Defendants made no effort to seek this available data. Federal Defendants made the April 2014 importation ban decision without giving the public prior notice and without soliciting information and comment from the public.

One item addressing Zimbabwe's elephant carrying capacity that *was* available to Federal Defendants in April 2014 was the Stromayer E-mail.  That document was located in Federal

Defendants' own files and contained credible and verifiable data. That document evidenced a relevant factor that Federal Defendants did not but should have considered in making their elephant importation ban decisions.

For the reasons stated above, SCI/NRA move this Court to compel Federal Defendants to supplement the July Administrative Record with the Van Norman E-mail. If the Court does not grant SCI/NRA's request for this supplementation of the AR, SCI/NRA alternatively request the admission of the Van Norman E-mail as extra-record evidence. In addition, SCI/NRA move this Court to admit as extra-record evidence the Stromayer E-mail. Both of these documents will aid the Court to effectively review the agency actions challenged here.

Dated:  April 21, 2015        Respectfully submitted,

                                           /s/Anna M. Seidman
                                           Anna M. Seidman
                                           D.C. Bar No. 417091
                                           Douglas Burdin
                                           D.C. Bar No. 434107
                                           Jeremy Clare
                                           D.C. Bar No. 1015688
                                           501 2nd Street NE
                                           Washington, D.C.
                                           Tel: 202-543-8733
                                           Fax: 202-543-1205
                                           aseidman@safariclub.org
                                           dburdin@safariclub.org
                                           jclare@safariclub.org

                                           *Counsel for Plaintiff*
                                           *Safari Club International*

                                           Christopher A. Conte
                                           D.C. Bar No. 43048
                                           National Rifle Association of America/ILA
                                           11250 Waples Mill Rd., 5N
                                           Fairfax, VA 22030
                                           Telephone: (703) 267-1166

Facsimile: (703) 267-1164
cconte@nrahq.org

*Counsel for Plaintiff*
*National Rifle Association of America*