UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SAFARI CLUB INTERNATIONAL, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SALLY M. R. JEWELL, in her official ) <br> capacity as Secretary of the U.S. ) <br> Department of the Interior, *et al.*, ) <br> ) <br> Defendants. ) <br>  ) | Civil Action No. 14-0670 (RCL) |

## MEMORANDUM OPINION

Plaintiffs in this case challenge a decision of the United States Fish and Wildlife Service ("FWS" or "the Service") to suspend imports of African elephant trophies sport-hunted in Zimbabwe. The suspension resulted from FWS's preliminary and final determinations in 2014 that sport-hunting of African elephants intended for import to the United States would not enhance the survival of the species. *See* 2d Am. Compl. [Dkt. # 49] ¶¶ 1–3. These determinations reversed the agency's prior position on the matter, *see id.*, and plaintiffs in this lawsuit claim that the Service violated the Administrative Procedure Act ("APA") and the Endangered Species Act in making the determinations. *Id.* ¶ 5.

Plaintiffs have filed a motion to compel supplementation of the administrative record, which they argue is incomplete. Pls.' Mot. to Compel Supplementation of Admin. R. & Admit Extra-R. Evidence [Dkt. # 64] ("Mot."). Two documents are at issue in this motion. The first is an email dated June 7, 2002 authored by Timothy Van Norman, chief of FWS's Branch of Permits, concerning import permits for trophies of sport-hunted leopards from Zimbabwe. Email from Timoty Van Norman, Chief, FWS Br. of Permits, to Richard McDonal, FWS (June 7, 2002, 3:05

P.M.), Ex. A to Mot. [Dkt. # 64-2] ("Van Norman Email"). Plaintiffs request that the Court order this email to be added to the administrative record because, they assert, it is part of the record but not included in it by the agency, or alternatively, it should be treated as extra-record evidence. Mot. at 13–17, 21.

The second document at issue is an email dated June 14, 2002 authored by Karl Stromayer of FWS, with the subject "Visit to Zimbabwe and some issues concerning sport hunting and rhino in Zimbabwe." Email from Karl Stromayer, FWS, to Kenneth Stansell, *et al.*, FWS (June 14, 2002, 4:24 P.M.), Ex. B to Mot. [Dkt. # 64-3] ("Stromayer Email"). Plaintiffs request that the Stromayer email be admitted as extra-record evidence or added to the administrative record. Mot. at 17–21; Reply in Supp. of Mot. [Dkt. # 68] ("Reply") at 8 & n.4.

Defendants oppose the motion, and the issue is fully briefed. *See* Opp. to Mot. [Dkt. # 67] ("Opp."); Reply. Because plaintiffs have not satisfied their burden to show that these emails should be added to the administrative record or considered as extra-record evidence, the Court will deny the motion.

## STANDARD OF REVIEW

Judicial review of an agency action under the APA is limited to the administrative record that was before the agency at the time it made its decision. *See* 5 U.S.C. § 706 (2012); *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam) ("In applying [the abuse of discretion] standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). "[T]he record must include all documents and materials that the agency directly or indirectly considered" and "neither more

nor less." *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (citations and internal quotation marks omitted).

Supplementing the administrative record in an APA case means adding material to the volume of documents the agency considered, while admitting extra-record evidence means adding material outside of or in addition to the administrative record that was not necessarily considered by the agency. *Pac. Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006).

### A. Supplementing the Record

Supplementing administrative records in APA cases is the exception, not the rule. *Id.* at 5, citing *Motor & Equip. Mfrs. Ass'n Inc. v. EPA*, 627 F.2d 1095, 1105 (D.C. Cir. 1979), and *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005). The agency enjoys a presumption that it properly designated the administrative record, and the record will not be supplemented absent clear evidence to the contrary. *See Maritel, Inc.*, 422 F. Supp. 2d at 196. "Because administrative records are presumed complete, motions to supplement the record are granted only in limited circumstances." *Nat'l Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 155 (D.D.C. 2012), citing *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010); *see also Calloway v. Harvey*, 590 F. Supp. 2d 29, 37 (D.D.C. 2008) ("There is a standard presumption that the [administrative] agency properly designated the Administrative Record.") (alteration in original) (citation and internal quotation marks omitted).

Plaintiffs bear a "heavy burden" in seeking to overcome this presumption in order to supplement the record. *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 6 (D.D.C. 2009). To carry this burden, "plaintiff[s] 'must identify reasonable, non-speculative grounds for [their] belief that the documents were considered by the agency and not included in the record.'" *Sara Lee*

*Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008), quoting *Pac. Shores*, 448 F. Supp. 2d at 6. "Plaintiff[s] cannot merely assert that other relevant documents were before the [agency] but were not adequately considered." *Id.* They "must do more than imply that the documents at issue were in the [agency's] possession. Rather, plaintiff[s] must prove that the documents were before the actual decisionmakers involved in the determination." *Id.* (citations omitted).

This burden maintains the "harmonious relationship between agency and court." *Pac. Shores*, 448 F. Supp. 2d at 5, quoting *Deukmejian v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1325 (D.C. Cir. 1984), *aff'd on reh'g sub nom. San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26 (D.C. Cir. 1986) (en banc). "Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President." *Deukmejian*, 751 F.2d at 1325. The principle that judicial review normally should be confined to the administrative record "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).

### B. Admitting Extra-Record Evidence

In addition to supplementing administrative records with material that an agency considered but failed to include, courts have in certain circumstances departed from the general rule of limiting judicial review to the administrative record and permitted the introduction of extra-record information. The D.C. Circuit has noted eight circumstances in which other courts have allowed this. *Esch v. Yeutter*, 876 F.2d at 991 ("(1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record;

(4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage").[1]

The D.C. Circuit, in a later case, identified four instances that might allow for the addition of extra-record evidence: (1) when the agency failed to examine all relevant factors; (2) when the agency failed to explain adequately its grounds for decision; (3) when the agency acted in bad faith; or (4) when the agency engaged in improper behavior. *See IMS, P.C. v. Alvarez,* 129 F.3d 618, 624 (D.C. Cir. 1997). And it held in 2010 that "[t]he APA limits judicial review to the administrative record 'except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'" *Theodore Roosevelt Conservation,* 616 F.3d at 514, quoting *Commercial Drapery Contractors, Inc. v. United States,* 133 F.3d 1, 7 (D.C. Cir. 1998); *see also Cape Hatteras Access Pres. Alliance v. U.S. Dep't of the Interior,* 667 F. Supp. 2d 111, 115 (D.D.C. 2009) (Lamberth, C.J.) ("[T]he *Esch* exceptions are generally more appropriately applied in actions contesting the procedural validity of agency decisions, but even if they are not so limited, it is clear that they were to be sparingly applied to only those cases where extra-record evidence was necessary to make judicial review effective."); *Oceana, Inc. v. Locke,* 674 F. Supp. 2d 39, 44 (D.D.C. 2009) ("*Esch*'s discussion of eight

---

1     The D.C. Circuit cited a law review article and cases from the Eighth, Ninth, and Tenth Circuits in compiling this list. *Esch,* 876 F.2d at 991 n.166, citing Stark & Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action,* 36 Admin. L. Rev. 333, 345 (1984); *Nat'l Nutritional Foods Ass'n v. Weinberger,* 512 F.2d 688, 701 (2d Cir. 1975); *Indep. Meat Packers Ass'n v. Butz,* 526 F.2d 228, 239 (8th Cir. 1975); *Friends of the Earth v. Hintz,* 800 F.2d 822, 828–29 (9th Cir 1986); *Am. Mining Congress v. Thomas,* 772 F.2d 617, 626–27 (10th Cir. 1985).

exceptions to the general rule regarding consideration of extra-record evidence was *dicta*."); *Earthworks v. U.S. Dep't of the Interior*, 279 F.R.D. 180, 185–86 (D.D.C. 2012) (following the analysis in *Cape Hatteras* and *Oceana*).

## ANALYSIS

Plaintiffs' lawsuit raises a number of challenges to FWS's April 4, 2014 preliminary determination and July 24, 2014 final determination that imports of sport-hunted African elephants from Zimbabwe would not enhance the survival of the species. Among them, they claim procedural defects with the determinations. Count I asserts that the agency improperly based its decision on a lack of information, and Count III asserts that it failed to provide the public with notice and opportunity to comment before issuing the determinations. 2d Am. Comp. ¶¶ 94–99, 107–112.

As part of these proceedings, defendants filed a certified list of the contents of the administrative record for both determinations. [Dkt. ## 35-1, 39-1, 60-1]. The parties conferred about several documents plaintiffs obtained from the agency through FOIA requests that plaintiffs believed should have been included in the administrative record. Mot. at 5–13; *see also* Ex. C to Mot. [Dkt. # 64-4] (April FOIA request); Ex. D to Mot. [Dkt. # 64-5] to Mot. (July FOIA request). The parties were able to narrow the scope of their dispute to two emails that plaintiffs contend should be part of the administrative record before the Court. Mot. at 12.

### I. The Van Norman Email

#### A. Plaintiffs have not satisfied their burden for supplementation of the administrative record.

Plaintiffs assert that the administrative record must be supplemented with an email that Timothy Van Norman wrote on June 7, 2002. Mot. at 13–17. Van Norman is chief of the FWS Branch of Permits, which was responsible for making the "enhancement of survival"

determinations at issue in this case. Van Norman Decl., Ex. 1 to Opp. [Dkt. # 67-1] ("Van Norman Decl.") ¶ 1.

The Van Norman email concerned import permits for trophies of leopards from Zimbabwe. Van Norman Email. In the email, Van Norman states that he would be drafting a Federal Register notice about issuing the leopard permits. *Id.* The notice would also identify the agency's concerns "about what is happening in Zimbabwe and the increase in poaching," that it would seek information from the public on those issues, and that it would "state that we do not know at this time whether we would be able to issue permits for leopards or allow elephant imports next year." *Id.*

Plaintiffs assert that the email "memorialized information that was part of Mr. Van Norman's knowledge base and that remained available for his use in making the April and July importation ban decisions." Mot. at 13. They argue that it supports their position that defendants failed to follow the required process in making the April and July determinations, but instead based it "on lack of information and without providing formal notice and an opportunity for the public to comment." Mot. at 15. "Van Norman expressed his understanding of the correct process for the FWS to follow to reverse its position on the legality of the importation of sport-hunted animals from Zimbabwe." Mot. at 11.

Defendants provide a declaration from Van Norman stating that the agency did not consider the email "directly or indirectly in the decision-making process." Van Norman Decl. ¶ 13. Given this, they argue, plaintiffs have not overcome the presumption that the Service properly compiled the administrative record because plaintiffs have not produced reasonable, non-speculative grounds for their belief that the agency considered the email. Opp. at 6, citing *Sara Lee Corp.*, 252 F.R.D. at 34.

The Court agrees with defendants. Plaintiffs seek to supplement the record in this case concerning elephant imports with what is now a thirteen-year-old email about leopard imports. *See* Van Normal Email. The email's passing reference to elephant imports is not concrete evidence that the agency considered the email in deciding whether to suspend elephant imports in 2014.

Plaintiffs argue the agency must have at least indirectly considered it because Van Norman, a key-decision maker in the 2014 elephant determinations, knew about the email and its contents "by virtue of his authorship," and it "remained available for his use." Mot. at 13. But plaintiffs have done nothing more than imply that the document was in the agency's possession; they have not proven that the document was "before the actual decisionmakers involved in the determination." *Sara Lee Corp.*, 252 F.R.D. at 34. Plaintiffs obtained the email in a response to their July 24, 2014 FOIA request for materials "regarding or supporting the enhancement of survival finding" made in July 2014. Ex. D to Mot. at 1. Plaintiffs pressed the agency to supplement the July administrative record with this email, but the agency responded that it did not consider the email in making the July finding and erroneously produced it in response to plaintiff's July FOIA request. Mot. at 12, citing email from Meredith Flax, U.S. Dep't of Justice, to Anna Seidman, counsel for Pls., March 19, 2015, Ex. J to Mot. [Dkt. # 64-11]. The fact that the agency produced the document in response to a FOIA request – whether erroneously or not – does not demonstrate that the agency considered it in making the determinations at issue in this case. The Court finds it speculative that the email was "before the agency" when it made the 2014 determinations, and thus finds that plaintiffs have not satisfied their burden to warrant supplementation of the administrative record with the Van Norman email.

### B. Plaintiffs have not satisfied their burden to admit the email as extra-record evidence.

Plaintiffs alternatively request the Van Norman email to be admitted as extra-record evidence because the email demonstrates that defendants "knew of the mandatory decision-making process that would have been appropriate for a similar concern in 2002," and so the Court can "effectively assess whether the FWS properly complied with APA rulemaking and the agency's own procedures for reversing its position on elephant importation." Mot. at 21.

Plaintiffs have not met the requirements for admitting the email as extra-record evidence. They do not allege bad faith nor improper behavior by the agency, and the Court finds that this email is not necessary to make judicial review effective in this case. *See Theodore Roosevelt Conservation*, 616 F.3d at 514; *Cape Hatteras*, 667 F. Supp. 2d at 115–16. The email does not establish what procedure the agency was required to follow in deciding to suspend elephant imports. Rather, it reflects Van Norman's statement in 2002 that the agency would publish a Federal Register notice regarding its issuance of leopard import permits, that the agency was "concerned about what is happening in Zimbabwe and the increase in poaching," that the Federal Register notice would seek "any information people might have," and that it would also state the agency did not know at that time whether it would allow elephant imports the following year.[2] Van Norman Email.

Whether the agency was required to provide for notice and comment before deciding to suspend elephant imports is a legal question for the Court to decide. *See Mendoza v. Perez*, 754 F.3d 1002, 1020 (D.C. Cir. 2014) (describing claims of agency's failure to comply with notice and comment requirements as "purely legal questions" subject to de novo review); *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 46 (D.D.C. 2011) (holding that whether EPA violated the notice

---

2     The agency ultimately never issued a Federal Register notice. *See* Van Norman Decl. ¶ 16.

and comment requirement of the APA presented a purely legal question). Thus, Van Norman's view on the issue – in 2002 or now – does not inform the Court's analysis. *See Earthworks*, 279 F.R.D. at 188 (declining to add a document to the administrative record the "[i]nclusion or exclusion of [which] neither advances nor retards the analysis" for the Court). Accordingly, the Court denies plaintiffs' motion to admit the Van Norman email as extra-record evidence.

## II. The Stromayer Email

Plaintiffs also seek to have a June 14, 2002 email from Karl Stromayer with the subject "Visit to Zimbabwe and some issues concerning sport hunting and rhino in Zimbabwe" admitted as extra-record evidence. Mot. at 17–21. The email went to multiple individuals at FWS, including then-Assistant Director of FWS for International Affairs Kenneth Stansell. Mot. at 10. It states that Stromayer had recently visited Zimbabwe and reported: "Ariel [sic] survey results suggested that there are approximately 88,000 elephants in Zimbabwe; whereas the carrying capacity of the elephant range is thought to be in the 42,000–45,000 range." Stromayer Email at 1.

Plaintiffs argue that the email "demonstrates that Federal Defendants failed to consider factors relevant to its April and July decisions to ban the importation of elephants from Zimbabwe," namely "the 'carrying capacity' of elephants in Zimbabwe." Mot. at 17–18. They assert that the "carrying capacity of Zimbabwe's elephants has always been a significant factor in the FWS's consideration of the status and conservation of the species," citing two Federal Register notices in support. Mot. at 18–19, citing 53 Fed. Reg. 11,392, 11,393 (Mar. 18, 1991), and 58 Fed. Reg. 7813, 7814 (Feb. 9, 1993). They argue this email provides "first hand data relevant to the population status of Zimbabwe's elephants." Mot. at 10.

10

### A. Plaintiffs have not satisfied their burden to admit the email as extra-record evidence.

Plaintiffs argue that the Stromayer email should be admitted as extra-record evidence because the agency "'failed to examine all relevant factors,'" Mot. at 18, quoting *Cape Hatteras*, 667 F. Supp. 2d at 116, and because plaintiffs assert procedural challenges to the agency's decisions. Mot. at 20–21.

Defendants contend that carrying capacity "is not directly relevant" to its suspension of imports, but even if it were, there is more recent information in the record on the issue than the statement in the 2002 email about Zimbabwe's carrying capacity. Opp. at 10, citing Van Norman Decl. ¶¶ 20, 22, 23.

While a court may admit extra-record evidence when an agency fails to examine all relevant factors, *IMS, P.C. v. Alvarez*, 129 F.3d at 624, no bad faith nor improper behavior is alleged here, and the Court finds the Stromayer email is not necessary for effective judicial review. *Theodore Roosevelt Conservation*, 616 F.3d at 514; *Cape Hatteras*, 667 F. Supp. 2d at 116. Plaintiffs want the Stromayer email admitted because it "specifically identified the existing carrying capacity of elephants in Zimbabwe." Mot. at 19 n.6. But if the email were admitted, the Court would not use the statement about the country's carrying capacity to substitute its judgment for the judgment of the agency. Instead, it would remand the matter back to FWS for consideration. "If the non-record information indicates a failure to consider all relevant factors, remand to the agency for consideration of that information may be in order; substitution of the court's determination for the agency's, based on the non-record information, is not." *Sw. Ctr. for Biological Diversity v. Babbitt*, 131 F. Supp. 2d 1, 8 (D.D.C. 2001), citing *Camp v. Pitts*, 411 U.S. 138 (1973).

If plaintiffs want the email admitted to show that carrying capacity is a relevant factor that the agency has considered in the past but failed to consider here, plaintiffs may use the two Federal Register notices cited in their motion to make this argument. The 2002 email is therefore not necessary for effective judicial review of the challenged determinations, and the Court denies plaintiffs' request to admit the Stromayer email as extra-record evidence.[3]

## CONCLUSION

For the reasons stated above, plaintiffs' motion will be denied. A separate order will issue.

/s/ Royce C. Lamberth
ROYCE C. LAMBERTH
United States District Judge

DATE: June 29, 2015

---

3     Plaintiffs also argue for the first time in their reply brief that grounds exists to supplement the administrative record with the Stromayer email. Reply at 8 & n.4. As a general rule, courts do not consider arguments raised for the first time in reply. *Huang v. Napolitano,* 721 F. Supp. 2d 46, 51 (D.D.C. 2010), citing *Am. Wildlands v. Kempthorne,* 530 F.3d 991, 1001 (D.C. Cir. 2008). In any event, the Court finds that the requirements to supplement the record with the email are not met. Plaintiffs contend that defendants' argument that the information in the Stromayer email is dated and unsupported "suggests that the information was both relevant and considered. Federal Defendants must have actually considered the Stromayer E-mail in order to evaluate its age and source and must have then rejected the data in the course of making its importation ban decisions." Reply at 8. But it does not follow that just because defendants assert in their opposition that the email contains old and unsupported data, *see* Opp. at 10, that defendants *must* have considered the data when making the 2014 determinations. The assertion shows that defendants reviewed the email in responding to the motion. And if the agency did review the email to "evaluate its age and source" and rejected using the data in it, this shows the agency did not "consider" its contents in making the decisions – which defendants have already acknowledged they did not do. *See* Van Norman Decl. ¶ 20. Thus, plaintiffs have not provided "reasonable, non-speculative grounds" that the email was considered by the agency but not included in the record. *See Sara Lee Corp.,* 252 F.R.D. at 34 (citation and internal quotation marks omitted).