IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Safari Club International, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:14-cv-00670-RCL, |
| Ryan Zinke, in his official capacity as Secretary of the United States Department of Interior, *et al*., | *consolidated for purposes of briefing with* 1:15-cv-01026-RCL |
| *Defendants*, | |
| and | |
| Humane Society International, *et al.*, | |
| *Intervenor-Defendants*. | |

**INTERVENOR-DEFENDANTS' FIRST SUPPLEMENTAL BRIEF**

Pursuant to this Court's order issued February 27, 2018 (Doc. No. 142), Intervenor-Defendants Humane Society International, The Humane Society of the United States, Africa Network for Animal Welfare, and Center for Biological Diversity submit the following supplemental brief regarding the impacts of *Safari Club Int'l, et al. v. Zinke, et al*., 878 F.3d 316 (D.C. Cir. 2017) ("*Zimbabwe I*"), on the pending claims in Case No. 1:14-cv-00670-RCL ("Tanzania case"). The Tanzania case questions whether the U.S. Fish and Wildlife Service's ("Service") had sufficient information to support its finding that the import of African elephants killed for trophies in 2014 in Tanzania does not enhance the survival of the species and would be detrimental to the species.

This Court now has before it four related cases (Case Nos. 1:14-cv-00670-RCL, 1:15-cv-01026-RCL, 1:17-cv-02504-RCL, and 1:17-cv-02530-RCL) pertaining to the legal standards for authorizing the import of hunting trophies of species threatened with extinction that all raise common procedural and substantive questions, several of which were recently ruled on by the D.C. Circuit

Court of Appeals in *Zimbabwe I*. As discussed herein, the D.C. Circuit's ruling in *Zimbabwe I* has

direct bearing on the claims raised in the summary judgment motions pending in the Tanzania case

(Doc. Nos. 119, 125-132). Therefore, Intervenor-Defendants respectfully request that this Court grant

our pending motion for summary judgment and remand this matter to the Service with an order barring

the issuance of permits to import threatened species trophies unless or until the Service conducts

notice-and-comment rulemaking as required by law.

## I.   The Service Is Justified in Applying the Enhancement Standard to Trophy Imports

In Count VII of their Complaint (Doc. No. 82) and summary judgment motion (Doc. No. 119

at 15), Plaintiffs claim that it is unlawful for the Service to apply the Endangered Species Act's

("ESA") "enhancement standard" to the import of trophies of elephants hunted in Tanzania. As

discussed in Intervenor-Defendants' cross-motion for summary judgment (Doc. No. 125 at 9-16), this

argument fails for multiple reasons: (i) the enhancement standard – *i.e.,* that an otherwise prohibited

activity should only be permitted if it enhances the survival of the species – is central to the

conservation purpose of the ESA; (ii) threatened species regulations must promote conservation and

routinely incorporate the enhancement standard; and (iii) the ESA requires the Service to do more than

merely comply with the minimum requirements of international trade law when regulating the import

of hunting trophies and other wildlife specimens.

This Court has already ruled on this issue (Doc. No. 87 at 15), and that ruling was upheld on

appeal in *Zimbabwe I*, where the Court of Appeals for the D.C. Circuit found that the Service:

> reasonably interpreted the [African Elephant] Special Rule to require a holistic
> inquiry into whether hunting enhances the species' survival on net, taking into
> account the sustainability of the existing elephant population in light of the obvious
> detriments hunting poses to elephant survival. . . . Appellants would have the
> Service focus exclusively on the last consideration—the benefits of hunting—in
> isolation from information about the viability of the elephant population being
> hunted and Zimbabwe's ability to regulate the hunting program. Nothing in the
> Special Rule supports Appellants' reading of 'enhance.' The sustainability of

> Zimbabwe's elephant population and the status of the government's elephant management plan bear directly on the effects of hunting on elephant survival. For example, one of the Service's concerns is that the current level of offtake from sources other than sport hunting, such as poaching, culling, or problem animal control, might be higher than appropriate to maintain a healthy population of elephants.

*Safari Club Int'l v. Zinke*, 878 F.3d at 327. Similarly, the D.C. Circuit affirmed this Court's decision upholding the Service's substantive analysis that trophy hunting of elephants in Zimbabwe is unsustainable, which bears directly on the validity of the Service's substantive analysis that trophy hunting of elephants in Tanzania is unsustainable. *See id.* at 327-331 (holding that the Service's regulations "in no way forecloses the Service from requiring hunting to 'increase' elephant survival on the whole, taking into account the full biological and institutional context bearing on the health of the species. . . . The Service was fully within its rights to retain its regulatory approach because the Convention expressly allows signatories to enforce stricter regulations than provided in the treaty."). Therefore, we respectfully request that this Court grant summary judgment in favor of Intervenor-Defendants and Federal Defendants on Count VII of Plaintiffs' Complaint (Doc. No. 82).

## II.   The Service's Non-Detriment Analysis Should Be Upheld

Unique to the Tanzania case is the question of whether the Service applied the correct standard in making its 2014 non-detriment finding for the import of elephant trophies from Tanzania under the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), as raised in Count VIII of Plaintiffs' Complaint (Doc. No. 82). The D.C. Circuit did not have this precise question before it in *Zimbabwe I*, as elephant imports from Zimbabwe do not require the Service to make a non-detriment finding.[1] However, the Circuit's ruling upholding the Service's reasoned

---

[1] African elephants in Zimbabwe are listed under Appendix II of CITES, whereas African elephants in Tanzania are listed under Appendix I. CITES requires both an import and export permit to authorize trade in Appendix I species, but only an export permit is required for trade in Appendix II species. *Compare* CITES Art. III *with* CITES Art. IV.

analysis that elephant hunting in Zimbabwe is not sustainable is directly relevant to this claim. *See Safari Club Int'l v. Zinke*, 878 F.3d at 326-32.

As explained in Intervenor-Defendants' Motion for Summary Judgment (Doc. No. 125 at 16-22) and reply thereto (Doc. No. 131 at 3-6), CITES itself, the Resolutions adopted by the Parties to CITES, and the Service's regulations implementing CITES all support the need for holistic consideration of the effects of removing a species from the wild before it is traded. This holistic analysis stands in contrast to the unjustifiably narrow "transport only" analysis that Plaintiffs advocate for. As with Plaintiffs' narrow interpretation of "enhancement" that was rejected in *Zimbabwe I*, Plaintiffs' similarly crimped interpretation of the non-detriment standard likewise fails due to its failure to account for relevant legal requirements and factual considerations. Therefore, we respectfully request that this Court grant summary judgment in favor of Intervenor-Defendants and Federal Defendants on Count VIII of Plaintiffs' Complaint (Doc. No. 82).

### III.   Enhancement Findings for Trophy Imports Are Rules Requiring Notice and Comment

The D.C. Circuit ruled in *Zimbabwe I* that "the Service erred in adopting the [2014 and 2015 Zimbabwe elephant trophy enhancement] findings without first following the notice-and-comment rule-making requirements of the APA" explaining these findings "fit [the] definition[] of [a] 'rule' . . . ." *Safari Club Int'l*, 878 F.3d at 321. This holding is dispositive on the merits of Counts III and VI of Plaintiffs' Complaint (Doc. No. 82) in the Tanzania case.[2]

---

[2] While the *Zimbabwe I* decision is dispositive as to these claims, Intervenor-Defendants do not necessarily agree with Plaintiffs as to the appropriate remedy for Counts III and VI of their complaint. Intervenor-Defendants note this same claim is also raised in their related case regarding the Service's enhancement findings authorizing the import of African elephant and lion trophies from Zimbabwe in 2016-2018 (Case No. 1:17-cv-02504-RCL, Doc. No. 25, "*Zimbabwe II*").

Under the Administrative Procedure Act, a rule is "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). An adjudication is an "agency process for the formulation of an order." *Id.* § 551(7). "As a general matter, agencies employ rulemaking procedures to resolve broad policy questions affecting many parties and turning on issues of 'legislative fact.' Adjudicatory hearing procedures are used in individual cases where the outcome is dependent on the resolution of particular 'adjudicative facts.'" *Indep. Bankers Ass'n of Ga. v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1206, 1215 (D.C. Cir. 1975); *Neustar, Inc. v. FCC*, 857 F.3d 886, 894 (D.C. Cir. 2017) ("Rulemaking scenarios generally involve broad applications of more general principles rather than case-specific individual determinations"). In concluding that the 2014 and 2015 enhancement findings prohibiting the importation of elephant trophy imports from Zimbabwe were rules, the D.C. Circuit in *Zimbabwe I* highlighted two considerations: "First, most legislative rules are generally applicable." *Safari Club Int'l*, 878 F.3d at 332. "Second, rules generally have only 'future effect' while adjudications immediately bind parties by retroactively applying law to their past actions." *Id.* at 333.

The enhancement finding at issue in the Tanzania case evaluates the status of elephants in the range country along with that country's elephant management plan and regulatory regime to determine whether trophy hunting may enhance a species' population. That finding is one of general applicability because it "applies to all potential imports of [hunting trophies from a particular country], not to any individual parties." *Safari Club Int'l*, 878 F.3d at 333. Enhancement findings for trophy imports have general applicability by definition because the regulatory criteria the Service must apply in making these enhancement findings "involve broad applications of more general principles." *Neustar, Inc.*, 857 F.3d at 893. Indeed, the Service's permitting regulations dictate that in making such enhancement findings, the Service considers: the impact of hunting "on the wild populations of the wildlife sought

to be covered by the permit;" any "conflict with any known program intended to enhance the survival probabilities of the population;" and whether hunting is "likely to reduce the threat of extinction facing the species of wildlife sought to be covered by the permit." 50 C.F.R. § 17.32(a)(2). These are considerations that go beyond any one permit application as they address the status of the species on the ground and the broader management of that species.

Moreover, despite enhancement findings being characterized as a part of the permitting process by the Service, as *National Association of Home Builders v. U.S. Army Corps of Engineers* illustrates, even when an agency calls its action "permitting," it nevertheless still may qualify as a rule under the APA. 417 F.3d at 1285. This is the situation where the agency "bases enforcement actions on the policies or interpretations formulated in the document" or "if it leads private parties or State permitting authorities to believe that it will declare permits invalid unless they comply with the terms of the document . . . ." *Id.* (citing *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000)). The Service's enhancement finding for elephant killed in Tanzania in 2014 was not part of the permitting process, but instead guides the permitting process by making broad pronouncements regarding the status of the species in a particular range country as well as conditions on the ground.

Further, the 2014 enhancement finding for Tanzanian elephants was by nature forward-looking (indeed, the 2014 finding bound the Service for that whole year and similar findings reiterated the conclusions drawn in 2014 through 2017). As with the 2014 and 2015 Zimbabwe elephant enhancement findings at issue in *Zimbabwe I*, the 2014 Tanzania enhancement finding was "meant to bind hunters in future permitting . . . regardless of when they actually harvested their elephant trophy." *Safari Club Int'l*, 878 F.3d at 333. Once the 2014 Tanzania elephant enhancement finding was made, that finding constituted the agency's pronouncement on the status and management of the species in that country and prescribed the denial of ESA trophy import permits, thus operating as a rule. *See,*

*e.g.*, *Thomas v. New York*, 802 F.2d 1443, 1446-47 (D.C. Cir. 1986) ("Clearly, an agency [endangerment] statement that bound subsequent EPA Administrators to issue SIP revision notices would be a statement of 'future effect designed to implement . . . law or policy,' and thus a rule" (quoting 5 U.S.C § 553(b)(A))).

Enhancement findings for trophy imports – which include pronouncements on various biological, political, social, and economic factors – stand in contrast to the factors considered during an adjudication, which "are likely to be specific to individuals or entities . . . ." *Neustar, Inc.*, 857 F.3d at 896 ("We reiterate that adjudications by nature are likely to be specific to individuals or entities, while rules tend to be matters of more general application" (internal citation omitted)). Such broad pronouncements, which are based on facts unlikely to change during the course of several months or even years, and which dictate the agency's path for lengthy periods of time, therefore require public notice and the opportunity for comment.

## IV.     Results and Remedy

The Supreme Court has indicated that threatened species, such as African elephants, are to be given the benefit of the doubt. *TVA v. Hill*, 437 U.S. 153, 194 (1978) (through the ESA, "Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities, thereby adopting a policy which it described as 'institutionalized caution.'"). Thus, for the protective measures at issue in the Tanzania case and *Zimbabwe I*, remand of the enhancement findings without vacatur is appropriate. *Safari Club Int'l*, 878 F.3d at 335 (D.C. Circuit finding that the Service's procedural errors in issuing the 2014 and 2015 Zimbabwe enhancement findings were not harmless, a finding that often supports vacatur of the agency decision, but declining to issue an order vacating those findings); *Pollinator Stewardship Council v. U.S. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (remand without vacatur is generally only

appropriate when vacatur would result in environmental harm); *Humane Soc'y of the U.S. v. Kempthorne*, 579 F. Supp. 2d 7, 21 (D.D.C. 2008) (relying upon "the ESA's preference for protecting endangered species" in crafting relief (internal citation omitted)). Regardless of whether the Court leaves the protective findings for 2014-2015 in effect, we ask the Court to order that the Service may not issue any permits authorizing the import of African elephant trophies from Tanzania or Zimbabwe unless or until the agency completes the requisite notice and comment rulemaking process to finalize any new enhancement findings under the Endangered Species Act.

## V.   **Conclusion**

For the reasons stated herein, Intervenor-Defendants respectfully request that this Court grant summary judgment for Intervenor-Defendants on Counts VII and VIII of Plaintiffs complaint and remand to the Service with an order making clear that no permits to import trophies of African elephants can be granted unless or until the Service issues an enhancement finding finalized through notice-and-comment rulemaking.

DATED:  March 2, 2018                     Respectfully submitted,

>          */s/ Anna Frostic*
> Anna Frostic (D.C. Bar No. 977732)
> The Humane Society of the United States
> 1255 23rd Street NW, Suite 450
> Washington, D.C. 20037
> Phone: 202-676-2333
> afrostic@humanesociety.org
>
> Tanya Sanerib (D.C. Bar No. 473506)
> Center for Biological Diversity
> 2400 NW 80th Street, #146
> Seattle, WA 98117
> Phone:  206-379-7363
> tsanerib@biologicaldiversity.org
>
> Sarah Uhlemann (D.C. Bar No. 501328)
> Center for Biological Diversity

2400 NW 80th Street, #146
Seattle, WA 98117
Phone:  206-327-2344
suhlemann@biologicaldiversity.org

*Attorneys for Intervenor-Defendants*