**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL, et al.        ) | |
| ) | |
| Plaintiffs,        ) | Civ. No. 14-cv-00670-RCL; |
| ) | 15-cv-01026-RCL (consolidated) |
| v.        ) | |
| ) | |
| RYAN ZINKE, et al.        ) | |
| ) | |
| Defendants.        ) | |
| _____  ) | |

**SAFARI CLUB INTERNATIONAL AND NATIONAL RIFLE ASSOCIATION OF AMERICA'S OPENING BRIEF ON REMEDY FOR ZIMBABWE CLAIMS**

**I.   INTRODUCTION**

Plaintiffs Safari Club International and the National Rifle Association of America ("SCI/NRA"), by and through their counsel, file this brief to address the remedies on remand from the U.S. Court of Appeals for the District of Columbia Circuit. Because the D.C. Circuit ruled that the Defendant U.S. Fish and Wildlife Service ("Service") was required to conduct rulemaking prior to adopting the 2014 and 2015 enhancement findings for Zimbabwe elephants, this Court should vacate those findings, reinstate the preexisting enhancement finding for Zimbabwe elephants, and remand the matter to the Service for any necessary further proceedings.

After decades of allowing the importation of sport-hunted African elephants from Zimbabwe, on April 4, 2014, the Service abruptly and without warning prohibited such imports. It did so by adopting a negative "enhancement finding" based on its conclusion that it lacked sufficient information to make a positive finding. This Court previously ruled that the Service illegally failed to publish notice of the negative enhancement finding in the Federal Register until

1

May 12, 2014. Because the Service failed to fulfill its own binding commitment not to change its previous positive enhancement finding (from 1997) until the Service properly published that notice, this Court ruled that the finding did not go into effect until May 12, 2014. ECF 100, at 35-42 (Sept. 30, 2016). The 1997 enhancement finding then governed importation through May 11, 2014.

The Service made two additional similar negative enhancement findings in July 2014 and March 2015. The Service did not conduct rulemaking under the Administrative Procedure Act for any of these subsequent enhancement findings.

On December 22, 2017, the D.C. Circuit ruled that these three enhancement findings were rules that could only be adopted through rulemaking. *Safari Club Int'l v. Zinke,* 878 F.3d 316, 331-36 (D.C. Cir. 2017). The D.C. Circuit recently issued its mandate and returned the case to this Court.

## II.     ARGUMENT

### 1.     Remand With Vacatur is the Appropriate Remedy

Remand with vacatur is the regular, proper approach to address illegal agency action. This Court should take that approach here. An agency's "[f]ailure to provide the required notice and to invite public comment ... is a fundamental flaw that normally requires vacatur of the rule." *Heartland Reg'l Med. Ctr. v. Sebelius,* 566 F.3d 193, 199 (D.C. Cir. 2009). When notice-and-comment is absent, the Circuit has regularly opted for vacatur. *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 853 F. Supp. 2d 138, 144 (D.D.C. 2012), *aff'd,* 751 F.3d 629 (D.C. Cir. 2014), and *aff'd,* 751 F.3d 629 (D.C. Cir. 2014) (quoting *AFL–CIO v. Chao,* 496 F. Supp. 2d 76, 91 (D.D.C. 2007)). In the *Long-Distance Tel. Serv.* case, the district court "agree[d] with the plaintiffs that the defendant's 'failure to comply with the APA's notice-and-

comment requirements is unquestionably a "serious" deficiency'" requiring vacatur. *Id.; see also Heartland Reg'l Med. Ctr.*, 566 F.3d at 199 ("deficient notice is a 'fundamental flaw' that almost always requires vacatur").

The lack of rulemaking is a particularly serious deficiency here because the Service made its findings based on a "lack of information." The May 12, 2014 Federal Register Notice stated, "we recognize that our inability to make a finding is based primarily on a lack of information …." 79 Fed. Reg. at 26,987; *see* Memorandum Opinion (Sept. 30, 2016), ECF 100 at 40 (quoting passage). Public notice and comment rulemaking would have provided the Service with more of what it admitted it needed—information about how hunting enhances the survival of the species.

With the vacatur of the 2014 and 2015 findings, the Court should order that the 1997 enhancement finding goes back into effect. Vacatur of an agency action results in the reinstatement of the status quo ante, here the enhancement finding that was in effect at the time the FWS illegally attempted to adopt a new finding. *See Action on Smoking & Health v. C.A.B.*, 713 F.2d 795, 797 (D.C. Cir. 1983) ("by vacating or rescinding the [challenged action], the judgment of this court had the effect of reinstating the rules previously in force, ….); *Mobile Oil Corp. v. U.S. EPA*, 35 F.3d 579, 584 (D.C. Cir. 1994) ("[t]o 'vacate,' ... means to 'annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; ... to set aside ….'" If the agency "wished to rescind the [rules it replaced illegally], it would have to do so through a new rulemaking.") (internal citation omitted). As this Court explained in remedying the Service's failure to publish notice of the new finding in the Federal Register until May 12, 2014, "[t]he result is that trophies from elephants sport-hunted in Zimbabwe from April 4, 2014 to May 11, 2014 may proceed." ECF 100 at 42.

Based on this Court's and the D.C. Circuit's rulings in the Zimbabwe case and the relevant case law, the Court should vacate the 2014 and 2015 enhancement findings, reinstate the 1997 enhancement finding, and remand the matter to the Service.

### 2. The Factors Do Not Support Remand Without Vacatur

This case does not present the rare situation in which remand without vacatur is the proper remedy. The exception might apply when "vacatur would lead to disruptive consequences," i.e., "it's too late to reverse course." *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) (citing *Heartland Reg'l Med. Ctr.*, 566 F.3d at 199). Whether to apply this exception depends on "(1) the seriousness of the ... deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur." *Heartland Reg'l Med. Ctr.*, 566 F.3d at 197; *see also Sugar Cane Growers Co-op. of Fla. v. Veneman,* 289 F.3d 89, 98 (D.C. Cir. 2002).

As explained above, the D.C. Circuit courts generally consider the failure to conduct required rulemaking as unquestionably a "serious deficiency." The very purpose of rulemaking is to ensure that the agency has the information before it needed to make a proper and informed decision. When rulemaking did not occur and the public was excluded from the process, the agency's purpose is not to "justify" its previous decision, but make a new, fully informed decision.

The Service likely or at least possibly will reach a different result following rulemaking. The Service will have to consider new and different information than the limited information it had in 2014 and 2015, which the Service admitted was inadequate. Populations studies completed in 2015 confirm that Zimbabwe's population numbers have been stronger than the Service believed and are consistent with Zimbabwe's elephant harvest quota. The Service can

also assess the actual offtake from hunting, instead of assuming that the full 500-animal quota would be harvested (which the administrative record indicates was not the case).  These strong population numbers and lower actual hunting offtake confirm that Zimbabwe's management of the elephants in 2014 and 2015 was sufficient to conserve the elephant population, contrary to the Service's claim that it lacked information about the country's management plan.  Finally, the Service will have access to more evidence of the conservation benefits from hunting from these time periods.  While only the actual rulemaking will reveal whether the Service can make a different finding following rulemaking, the Service likely will be able to make a positive finding for one or both years.

In addition, vacating the 2014 and 2015 findings would not lead to disruptive consequences.  This is not a case in which the "egg has been scrambled," and it is too late to reverse course.  *Allina Health Servs.*, 746 F.3d at 1110–11 (quoting *Sugar Cane Growers Co-op. of Fla.,* 289 F.3d at 97).  Vacatur will simply mean that the 1997 finding will apply to any application to import an elephant harvested in Zimbabwe after May 11, 2014.  As noted above, this Court determined that reinstatement of the 1997 enhancement finding is the appropriate remedy to address the Service's illegal conduct.  *See* ECF 100 at 42.  Any new rulemaking could only apply to permit application decisions made after adoption of the rule, as the rulemaking can be prospective only; the new rulemaking would not disrupt previously issued permits.  *See Safari Club Int'l,* 878 F.3d at 333-34 (findings could only apply to importation decisions "going forward" and would "be applied to future requests to import certain sport-hunted elephants").

### III.   CONCLUSION

For all these reasons, SCI/NRA ask the Court to vacate the 2014 and 2015 enhancement findings, reinstate the 1997 finding, and remand the matter to the Service for further proceedings.

Dated:  March 2, 2018.

                Respectfully submitted,

                /s/Douglas S. Burdin
                Anna M. Seidman
                D.C. Bar No. 417091
                Douglas Burdin
                D.C. Bar No. 434107
                501 2nd Street NE
                Washington, D.C.
                Tel: 202-543-8733
                Fax: 202-543-1205
                aseidman@safariclub.org
                dburdin@safariclub.org

                *Counsel for Plaintiff*
                *Safari Club International*

                /s/ Christopher A. Conte
                Christopher A. Conte (DC Bar No. 43048)
                National Rifle Association of America/ILA
                11250 Waples Mill Rd., 5N
                Fairfax, VA 22030
                Telephone: (703) 267-1166
                Facsimile: (703) 267-1164
                cconte@nrahq.org

                *Counsel for Plaintiff*
                *National Rifle Association of America*